1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    --------------------------------x

5         In the Matter

6              of                     Case No.
                                      01 B 14312

7    MAGNESIUM CORPORATION
     OF AMERICA,

8

                         Debtors.

9    --------------------------------x

10
                              February 14, 2003

11
                              United States Custom House

12                            One Bowling Green
                              New York, New York 10004

13

14        Motion of Ad Hoc Committee for the
     Appointment of a Trustee or Alternatively

15   Conversion of this Case to Chapter 7.

16
     B E F O R E:

17
                    HON. ROBERT E. GERBER,

18
                         U.S. Bankruptcy Judge.

19

20

21

22

23

24

25

```
 1

 2   A P P E A R A N C E S:

 3        CHADBOURNE & PARKE, LLP
                   Attorneys for the Debtor
 4                 30 Rockefeller Plaza
                   New York, New York 10112
 5
          BY:    JOSEPH H. SMOLINSKY, ESQ.,
 6                              of Counsel

 7

 8        GOLENBOCK, EISEMAN, ASSOR, BELLE & PESKOE,
     ESQS.
 9                 Attorneys for Ad Hoc Committee of
                   Senior Noteholders
10                 437 Madison Avenue
                   New York, New York 10022
11
          BY:    JANICE B. GRUBIN, ESQ., of Counsel
12

13

14        SHIPMAN & GOODWIN, ESQS.
                   Attorneys for the Indentured
15                 Trustee for the Official Committee
                   of Unsecured Creditors
16                 One American Row
                   Hartford, Connecticut 06103
17
          BY:    MARIANNE WALLACE, ESQ., of Counsel
18

19

20        CHAPMAN & CUTLER, ESQS.
                   Attorneys for the Official
                   Committee of Unsecured Creditors
21                 111 West Monroe Street
                   Chicago, Illinois 60603
22
          BY:    FRANK TOP, ESQ., of Counsel
23                 (Via phone)

24

25
```

```
 1

 2     A P P E A R A N C E S  (Continued):

 3

 4          EDWARD CHANG, ESQ.
            MARK ELMER, ESQ.
 5          United States Department of Justice
            United States Attorney's Office
 6          Southern District of New York
                 100 Church Street
 7               New York, New York 10007

 8

 9          CAROLYN S. SCHWARTZ, ESQ.
            United States Trustee
10               33 Whitehall Street
                 New York, New York 10004
11     BY:       TRACY HOPE DAVIS, ESQ., of Counsel
                         -and-
12               GREG M. ZIPES, ESQ., of Counsel

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        Magnesium Corporation of America

2              P R O C E E D I N G S

3              THE COURT:  Good morning, please be

4    seated.  Okay, Magnesium Corporation of America.

5              Can I get everybody who wants to be

6    heard on that one up at the counsel tables, please?

7    I gather there may be some people on the phone.  I

8    want everybody to identify themselves on the record

9    both in the courtroom and then on the phone.  And I

10   want you to sit down, I have some comments I want

11   to say.

12             For the Debtor I see Mr. Smolinsky;

13   for the movants, Ms. Grubin; and Ms. Davis for the

14   U.S. Trustee.

15             Are you also here to appear for the

16   U.S. Trustee?

17             MR. CHANG:  Yes, although I'm here

18   to observe only.

19             THE COURT:  Anybody else in the

20   courtroom?

21             MR. SMOLINSKY:  Your Honor, I would

22   ask if your Honor is agreeable to find out who is

23   in the courtroom today, even if they are not

24   planning on speaking and to find out which parties

25   they represent.

1          Magnesium Corporation of America

2               THE COURT:  Is there anybody here

3    who is a counsel for another party who is in the

4    courtroom?  I don't think it's appropriate for me,

5    Mr. Smolinsky, to ask if anybody is in the press or

6    anything who is observing the proceeding.

7               Who is on the phone?

8               MR. TOP:  Your Honor, Frank Top from

9    Chapman & Cutler on behalf of the official

10   committee.

11              THE COURT:  Good morning.

12              MR. TOP:  Good morning to you.

13              MS. WALLACE:  Marianne Wallace from

14   Shipman & Goodwin on behalf of the Indentured

15   Trustee, U.S. Bank National Association.

16              THE COURT:  Yes, I read your

17   signature.

18              Anyone else?  Okay, fair enough.

19              As is usual in my Court, when it's

20   time to make your presentations, I want you to make

21   them as you see fit.  But I had problems with both

22   sides' briefs that were submitted on this motion of

23   a failure to drill down as to what I see as the

24   real issues on this.

25              Some of my comments are obviously

1           Magnesium Corporation of America

2   going to be directed toward the movants, others,

3   roughly an equivalent number, are going to be

4   directed toward the debtor.

5           My general view is that where

6   there's no debtor misconduct or incompetence, and

7   we haven't had any indications of that here,

8   although obviously I'm aware of the conflicts in

9   this case of interest that have been alleged by the

10  movant, that you get the most money into the

11  pockets of creditors by keeping or preserving the

12  benefits of the debtor in possession and the debtor

13  in possession's counsel.  And dealing with conflict

14  type issues by the issuance of an STN or Commodore,

15  Housecraft type of order.

16          The issue in this case is whether a

17  Commodore, Housecraft, STN type order is going to

18  skin the cat or not or whether the interests, the

19  needs of the creditors, require more than that.

20          I was puzzled by the fact that

21  neither side in its brief addresses what I think is

22  key; and although it appeared in nobody's brief, it

23  appeared in a letter that was attached to the

24  movant's reply.

25          The creditors may want to make a 108

1          Magnesium Corporation of America

2    argument for the next couple of years, reach back

3    and bring on any kinds of avoidance actions, which

4    when you are talking about events that took place

5    in 1996, might be significant, at least if, and to

6    the extent, that New York statutes of limitations

7    apply, which normally don't go beyond six years,

8    except in the case of fraud length concealment.

9              I was really, really surprised that

10   Ms. Grubin -- that the bondholders cited

11   Cybergenics for a host of reasons, not just that

12   it's vacated, not just that it's been so widely

13   criticized by just about everybody, other than the

14   panel of the three judges in the Third Circuit who

15   issued that decision, but most fundamentally,

16   because we are in the Second Circuit where STN,

17   Commodore and Housecraft are the controlling

18   authority on me.

19             I have zero doubt that I can vest in

20   the Creditors Committee, the power to fully

21   prosecute the kinds of actions that we are talking

22   about.  And I have almost as much certainty that I

23   can authorize the bondholders to do it as well.

24             So the issue in my mind is whether,

25   with that power, it's better for creditors to give

1                Magnesium Corporation of America

2    them the STN, Commodore authority, on the one hand,

3    or to additionally appoint a Trustee.  And I was

4    surprised and a little disappointed that the

5    movant's papers didn't address what I think may be

6    the things that we're going to be hearing from Mr.

7    Smolinsky, as to the interest of creditors is

8    better served in doing battle with PacificCorp and

9    dealing with the needs and the concerns of the EPA

10   to keep incumbent counsel or management in place

11   where they have issues.

12                Mr. Chang's letter underscored that,

13   which if accepted by the Utah courts or the Utah

14   PSC or by entities other than me, could give rise

15   to very substantial administrative costs, that

16   would ensure that nothing is left for the

17   unsecureds.

18                I also do not believe that in any

19   way, shape or form this case is a Hampton Hotel

20   case.

21                Now, with that said, Mr. Smolinsky,

22   you acknowledge, as you must, that at least an STN

23   order is appropriate here.  But I have some

24   difficulty in seeing how I can deprive the

25   bondholders the ability to argue the 108 point, if

```
 1                    Magnesium Corporation of America
 2     any, that they can squeeze out a little extra time
 3     on the statute of limitations on the 108 or if they
 4     want to try to make an argument of that character.
 5                    I haven't focused on the 108 point
 6     in several years.  And the last time that I focused
 7     on it, and I recognized that my learning on this is
 8     very stale, I recall then that the applicability of
 9     108 was a matter of debate and that there was a
10     conflict in the cases on that point.
11                    It seems to me that is one of, at
12     most, two ways of getting money into the pocket of
13     the estate, and therefore, into the pockets of the
14     creditors, I have difficulty seeing how I can
15     deprive the creditors to have the opportunity to
16     make their 108 argument without prejudging how I
17     would decide the 108 actions once they were made.
18                    So, if that is the case, that tilts
19     in favor of me appointing a Trustee of one type or
20     another under 1107, even though in the perfect
21     world, I would like to keep the incumbency we're
22     dealing with to the PacificCorp issues, and to the
23     extent relevant or appropriate, the EPA issues.
24                    The second point that you make,
25     which is that there is potential money on the
```

1              Magnesium Corporation of America

2      table, but only if the outcome of this hearing is

3      favorable, in what I think was articulated in one

4      or another of the papers as the sole discretion of

5      one of the other -- of the debtor's affiliates,

6      strikes me as heavy-handed.  Saying that there

7      might be some kind of money to throw in the pot to

8      meet administrative expenses if somebody is pleased

9      with the outcome of this hearing is, and I don't

10     think it's just a matter of my ego, offensive to

11     me.  It's not a bribe, of course, at least it's not

12     a bribe of me, but why in a thousand years should I

13     let a veiled threat like that one influence the way

14     I decide things today.

15              The only issue, as far as I'm

16     concerned -- and I think you can see why I was

17     troubled by the failure of the papers to really get

18     their arms around this issue -- is what's going to

19     put more money into the pockets of creditors,

20     administrative creditors and, perhaps

21     unrealistically, unsecured creditors by the amalgam

22     of reducing administrative claims against the

23     estate and by any accretion into the estate that

24     might occur as a consequence of litigation against

25     a third party, which might ultimately turn out to

1            Magnesium Corporation of America

2    be successful, and that's what I need both sides to

3    focus on in their arguments.

4            I also did not see, and it may be

5    because nothing was filed or it may be because

6    something got lost out of my statement, of views

7    from the U.S. Trustee; but, Ms. Davis, if you have

8    any views, I would be very interested in hearing

9    what views you have.

10            MS. DAVIS:   Thank you, your Honor.

11            THE COURT:   Ms. Grubin, I would like

12    you to start up, and come up to the main podium so

13    everybody can hear.

14            MS. GRUBIN:  Very good, your Honor.

15    Your Honor, Janice Grubin here from Golenbock,

16    Eiseman, Assor, Belle & Peskoe.  And as the court

17    knows, we are co-counsel and we are here on behalf

18    of the Ad Hoc Committee of senior noteholders.   And

19    it is our motion for the appointment of a Trustee

20    in the Chapter 11 here in these cases, or

21    alternatively, the conversion of this case to a

22    Chapter 7.  I have in the courtroom two

23    representatives of this committee.   The AIG

24    Investment Corp., as well as Ramius Capital Corp.

25    and I might say one of those two persons has to

1              Magnesium Corporation of America

2      leave a little earlier, and I apologize for any

3      disruption that will cause.

4              Your Honor, I will obviously direct

5      my argument to the court's concerns and dispense

6      with laying the foundation that I was prepared to

7      argue this morning and will simply incorporate by

8      reference, all of the arguments and statements and

9      representations made in both our motion as well as

10     in our reply that was filed and served yesterday.

11     We would incorporate obviously by reference all of

12     the arguments made.

13              I would also note, your Honor, this

14     is not a contested hearing.  There are no facts

15     that appear to be at issue, and this is appearing

16     to be a legal argument here.  And we believe we

17     have met all the facts on the legal cause under

18     1104 as well as 1112(b).

19              With respect to our view as to what

20     will put the most money, cutting right to the

21     chase, what will put the most money in the pockets

22     of the creditors here, not surprisingly, your

23     Honor, it is our view that either a Chapter 11

24     Trustee or a Chapter 7 conversion will generate --

25     it has the potential to generate more recovery for

1        Magnesium Corporation of America

2   all creditors than if the case remains in the

3   Chapter 11 without a Trustee and continues its

4   winddown, presumably by some kind of a liquidating

5   plan.

6            We believe that the estates are

7   administratively insolvent, although the debtor has

8   not quite conceded to that, and you know, there

9   really is -- debtor's counsel has admitted that it

10  has about 300,000 dollars in unpaid fees.  The most

11  recent operating report indicated 245,000 dollars

12  in cash and cash equivalents.

13           THE COURT:  In the till you mean?

14           MS. GRUBIN:  Excuse me.  245,000

15  bucks in the till, yes, as of October 31, 2002.

16  And paragraph 11 of the debtor's objection

17  indicates that they have unpaid fees of

18  approximately 300,000 dollars.

19           THE COURT:  All to Chadbourne or are

20  there other folks who haven't been paid either?

21           MS. GRUBIN:  I believe it was only

22  to Chadbourne that was represented.

23           THE COURT:  Okay.

24           MS. GRUBIN:  And, you know, frankly,

25  your Honor, we don't understand how it is that the

1            Magnesium Corporation of America

2    debtor will be able to continue to fund this

3    litigation or whatever it needs to do with

4    PacificCorp or anything else in the case, absent

5    this proposed funding by the debtor's affiliate,

6    which seems to us to be very vague and oblique, and

7    we really don't understand the terms of that

8    funding.  It seems very unilateral.

9            We understand it may be presented to

10   the Court for approval, but we think it is another

11   evidence of control in this case by affiliated

12   parties, and including Mr. Rennert, and we don't

13   think it's appropriate.

14            For these reasons, we believe it is

15   appropriate for this Court to appoint a Trustee, or

16   perhaps convert this case.  It's in its discretion

17   the court can do that, the court knows that, and

18   get a Trustee on board who is aware of the risks in

19   this case and can bring in counsel who can conduct

20   the kind of investigation and possibly litigation

21   that the committee began so many months ago.

22            We really believe -- I know that my

23   clients have conferred with a number of counsel on

24   a variety of issues, including the statute of

25   limitations issues under 108(a), and they have

1          Magnesium Corporation of America

2    concluded, particularly the law firms whose papers

3    we have attached to our reply, that there are

4    viable causes of actions here that they are

5    prepared, after a brief investigation, to

6    prosecute.

7                    And this is an experienced firm that

8    does a lot of contingency work in bankruptcy.  They

9    spent 60 to 80 hours reviewing the various files in

10   this case, and it is their considered opinion that

11   there are viable causes of action here.  And they

12   have asked and are concerned about the fact that

13   while we are in the Second Circuit, and, your

14   Honor, the trilogy of decisions, STN, Commodore and

15   Housecraft, indicate that this Court has the

16   ability to approve an agreement between counsel and

17   -- the debtors and the creditors authorizing such

18   creditors either in the capacity of a committee or

19   sole creditors such as, for instance, this

20   bondholder committee to prosecute avoidance causes

21   of action.  There is still some uncertainty if down

22   the road Cybergenics has been vacated, but the

23   hearing on that will be reheard this month, I

24   believe.

25                    THE COURT:  What difference would

1             Magnesium Corporation of America

2   that make, Ms. Grubin --

3             MS. GRUBIN:  The difference --

4             THE COURT:   -- for a bankruptcy

5   judge who considers the Second Circuit binding upon

6   him.

7             MS. GRUBIN:  If the Third Circuit

8   issued its ruling whichever way, it's clear to me

9   that it would be appealed.  And if the Supreme

10  Court granted cert and then it heard argument and

11  issued an opinion, if that opinion embraced a

12  position that was contrary to the established

13  practice in this district --

14            THE COURT:  This circuit?

15            MS. GRUBIN:  Excuse me, your Honor,

16  yes, in this circuit.

17            THE COURT:  And every circuit other

18  than the Third, insofar as I'm aware.

19            MS. GRUBIN:  Yes, your Honor, that's

20  correct.  But because of that uncertainty, we are

21  here before you to argue for the assignment of a

22  Trustee under 1103 -- or 1104.

23            Truthfully, we have had

24  conversations with Mr. Smolinsky under an STN like

25  the Commodore, Housecraft stipulation, but we just

1            Magnesium Corporation of America

2    couldn't get there.  My clients could not.

3                  THE COURT:  Well, the sticking point

4    is you need 108 to bootstrap, don't you?

5                  MS. GRUBIN:  Yes, we do.  And we are

6    also concerned under 546(a), that the two-year

7    period is going to run out this August.

8                  And again, your Honor, I am not as

9    close to the analysis of these claims because I was

10   brought in as bankruptcy counsel to argue this

11   motion and to draft this motion, but -- and I've

12   been told the contemplated investigation is not

13   going to be extensive to determine whether or not,

14   finally, there should be prosecution of these

15   claims avoidance actions under 546(a) that time

16   period runs August -- August 27th, so we are

17   concerned about that.

18                  THE COURT:  Talk about their point

19   concerning the benefits of the learning curve in

20   dealing with issues raised by PacificCorp and by

21   the EPA.

22                  MS. GRUBIN:  Admittedly, there is a

23   learning curve that's going to have to be utilized

24   by a Chapter 11 Trustee or a Chapter 7 Trustee and

25   that's -- perhaps that's why a Chapter 7 would have

1          Magnesium Corporation of America

2    to be utilized here because then you won't have to

3    have a plan process to be conducted and you would

4    have no need for a committee and you would

5    automatically eliminate a whole host of

6    professionals.  I am confident that counsel can be

7    appointed just as efficiently as Mr. Smolinsky's

8    firm is.

9          THE COURT:  Would a Chapter 7

10   Trustee or, for that matter, a Chapter 11 Trustee,

11   be able to use Mr. Smolinsky as counsel for special

12   purposes to deal with that?

13         MS. GRUBIN:  I think it would be

14   considered if it was.

15         THE COURT:  Don't the talk quite so

16   much as considered.  Are you aware of any legal

17   impediment to that?  Yes or no.

18         MS. GRUBIN:  I am not.

19         THE COURT:  Continue, please.

20         MS. GRUBIN:  Your Honor, as the

21   court knows, there is an overwhelming majority of

22   creditors who joined in this motion and we have see

23   motions in support of this, as well as the debtor

24   and the trustee, and both of them are on the phone,

25   and the only motion that's objected to is the

1    Magnesium Corporation of America

2    debtors.  I submit that we have submitted the

3    standards of cause under 1104 as well as under

4    1112(b), and the only issues really is under that

5    section.  We will ask the court to grant the

6    appointment of a Trustee here.

7         We would point the court to the

8    authority cited in our motion, particularly the

9    Intercad case, the PSR Insurance case, the Corville

10   William Vaughn and L.S. Good cases, which all of

11   them acknowledge there are potentially causes of

12   interest that constitutes cause alone under 1104,

13   (2), and possibly (1), cause the appointment of a

14   Trustee.

15        THE COURT:   I'll hear the (a)(2)

16   argument.  I have yet to hear anything that leads

17   me to -- there is cause under (a)(1).  I can see

18   why you do believe -- I don't want to under

19   strength the point of the issue, and vis-a-vis the

20   conflicts case, makes it in the interest of

21   creditors to appoint it, but I have to find a lot

22   more under fraud or mismanagement.  I need to see a

23   lot more.

24        MS. GRUBIN:   Under 1102, we believe

25   the conflicts situation has been created by what we

1          Magnesium Corporation of America

2     understand to be the kind of salient presence of

3     Mr. Rennert and his affiliates throughout these

4     cases to constitute cause under 1104(a)(2), such as

5     it would be in the best interest of the creditors,

6     in this case or in the interest of creditors that a

7     Trustee be appointed and that the court appoint a

8     Trustee.

9                 We don't think that the interest of

10    equity should be considered because we believe that

11    they have no stake left in these cases since the

12    cases are administratively insolvent and I would

13    submit to you, your Honor, that it's in the

14    McCorville Publishing case and that's a Southern

15    District case, where there are interests and the

16    principles occupy conflicting positions in the

17    transferee positions, a trustee should be appointed

18    in order to investigate the financial affairs of

19    the company and it certainly will warrant cause,

20    which we also talk about in our case, that on the

21    basis of a failure for the avoidance of a transfer

22    to the tread, and the S.L.S. Good case talks about

23    a specific, very wig good the action is all

24    unsecured had can hope to realize.  Which is really

25    the situation here.

1        Magnesium Corporation of America

2            In all candor, there is nothing for

3    the unsecured unless and until there is an

4    appointment of some kind of recovery in avoidance

5    and other causes of action, and we understand the

6    committee began an investigation on the claims and

7    causes of action.  It was preliminary, and they

8    were focused on officially trying to bring a non

9    affiliated buyer to the table which would

10   ultimately bring funds to the creditor; and there

11   was a sale to U.S. Mag in June, which closed the

12   end of June, and the case has been fairly

13   relatively quiet since then.

14           And now it's eighteen months after

15   the filing, your Honor, and we would say that there

16   needs to be, in the best interest of the creditors,

17   under 1104(a)(2), that a trustee needs to be

18   appointed to complete the investigation that the

19   committee began and determine once and for all

20   whether there are viable claims here to prosecute

21   those claims and see where that goes.

22           THE COURT:  Okay, Mr. Top, if you

23   have anything substantive to add to what Ms. Grubin

24   has said.

25           MR. TOP:  Thank you, your Honor.  I

1              Magnesium Corporation of America

2    just want, again, to support Ms. Grubin's efforts

3    and the efforts of the Ad Hoc Committee and just

4    reiterate what she said.  You know, when we came on

5    board, frankly, after the bankruptcy was filed in

6    late November, early December, we were kind of

7    thrown into a position where the primary bulk of

8    our time and efforts were spent on trying to find

9    different alternatives to deliver value for

10   unsecured creditors.  Unfortunately, that did not

11   bear any fruit.

12             We did take a preliminary look at a

13   number of avoidance actions, and obviously we have

14   been able to give our financial advisers

15   information about detailed insurance transfers that

16   were made, and frankly, under state law type of

17   avoidance action, we wouldn't have any presumption

18   of solvency or anything of that nature.

19             So while we have provided the Ad Hoc

20   Committee with a list of certain transfers that

21   were made that, frankly, I think even the debtors

22   would admit to having occurred, there needs to be

23   some investigation as to whether other elements of

24   various state law type avoidance actions and the

25   statutes request can be met, particularly as it

1          Magnesium Corporation of America

2     relates to the solvency and the like.

3                    And, you know, unfortunately the

4     debtor for this case asserts it would be very hard

5     for the committee to engage a professional to

6     undertake a lot of the investigation that would

7     need to take place before we would feel comfortable

8     filing a complaint ourselves, and that the

9     resolution has been to try to find someone to do a

10    lot of this work on a contingency basis, and the

11    committee is supportive of allowing that to take

12    place.

13                    THE COURT:  Okay, thank you.  Ms.

14    Wallace, do you want to add anything?

15                    MS. WALLACE:  Your Honor, no, I have

16    nothing to add to what's been stated by the

17    previous two counsel.

18                    THE COURT:  Okay.  Before Mr.

19    Smolinsky gets to speak, I want to give Ms. Davis a

20    chance to give me her views and I want to give Mr.

21    Chang another opportunity to speak if he wants to.

22                    MS. DAVIS:   Your Honor, while your

23    Honor has an order in which you want to hear from

24    the parties, I would very much appreciate hearing

25    from debtor's counsel before I have an opportunity

1           Magnesium Corporation of America

2     to express my view.  I think my comments will be a

3     little more contributory if I hear from him first.

4                 THE COURT:  That's agreeable to me.

5     Fair enough.  Mr. Chang, I don't know if you want

6     to speak now or not.

7                 MR. CHANG:  Very briefly, your

8     Honor.

9                 THE COURT:  Sure.

10                MR. CHANG:   I simply wanted to

11    address one of the issues raised by the court,

12    which, unfortunately, I didn't pick up in the

13    papers.  But the issue -- I'm not as prepared as I

14    might be, but the issue is if the appointment of an

15    trustee might ramble up on the litigations.

16                THE COURT:  Well, maybe that's

17    another way of saying it.  You have a plenary

18    litigation, your EMA client has plenary litigation

19    pending out in Utah which I will not be the

20    decision-maker on.  But if your client is

21    successful, you are going to have a whopping admin

22    claim, as I think you stated in your letter.

23                Now, in some sense you've got a

24    different perspective, and a kind of conflict with

25    the other creditors, because if you are successful,

1          Magnesium Corporation of America
2     you are going to take money out of the bondholders
3     pockets, which may be what federal law says is the
4     appropriate result, and I take no view on that.
5               But if I'm going to look at
6     everybody's interest, other than the EPA's,
7     obviously they have an interest in your client
8     being unsuccessful, so that whatever scarce
9     resources, or maybe not so scarce resources, go to
10    their pockets, rather than the Federal Government's
11    pockets, which is not an uncommon situation, but I
12    would like to get your views.  But I've also got to
13    tell you that I look at it in that context.
14              MR. CHANG:  I understand, your
15    Honor.  I wasn't actually intending -- I think the
16    Government's position on the trustee is, as we
17    stated, we are taking no position.  The only reason
18    I came to speak is because I thought I understood
19    the court to have a concern that putting a trustee
20    in position at this point, because of the ongoing
21    EPA litigation, might cause difficulties,
22    because --
23              THE COURT:  Well, that's the
24    debtor's contention, that's right.
25              MR. CHANG:  And that's the reason

1              Magnesium Corporation of America

2     I'm coming up to speak.  To my knowledge, the EPA

3     litigation is not being handled directly by

4     Chadbourne and Parke.  It's being handled by the

5     law firm of Parsons and Bailey, and I don't know

6     anything about the litigation.  I don't know

7     anything about PacificCorp, but it seems to me the

8     appointment of the trustee wouldn't necessarily

9     require if trustee to come up on -- all the way up

10    to speed on the EPA action if it's simply

11    transferring it over to Parsons and Bailey.  It

12    wouldn't cause that much destruction, unless Mr.

13    Smolinsky can tell me what role Chadbourne & Parke

14    played in the litigation.

15             THE COURT:  Thank you, that's

16    helpful.

17             MR. CHANG:  Thank you.

18             THE COURT:  Okay, Mr. Smolinsky.

19             MR. SMOLINSKY:  Thank you, your

20    Honor.  Before I give my comments on the motion,

21    I'd like to provide your Honor with a very brief

22    status of the case.  We have been undertaking to

23    wind down the affairs until we received this

24    motion.  Obviously, we did not foresee an intensive

25    litigation proceeding.  So in that light, we have

1          Magnesium Corporation of America

2   filed for an administrative bar date.  I believe

3   the administrative bar date is actually today.

4   And, obviously, we were intending on reviewing

5   those claims and identifying how we would proceed

6   toward disbursing other remaining funds in the

7   estate.

8                THE COURT:  Mr. Smolinsky, what kind

9   of admin claims did we have, other than those in

10  the way of the 300,000 bucks or the stated 300,000

11  bucks owing to your firm from whatever the EPA can

12  recover?

13               MR. SMOLINSKY:  We have other

14  professional claims.  If your Honor would recall,

15  we had agreed at the hearing back in, I'll say,

16  November, with respect to the professionals

17  receiving 70 percent of their fees, to allow a bar

18  date to be filed so we could assess what the other

19  claims are.  So all of the professionals, I

20  believe, have claims outstanding.

21               THE COURT:  Not just your firm?

22               MR. SMOLINSKY:  Correct.

23               Chapman & Cutler, Peter Solomon on

24  behalf of the committee as financial advisers.  I

25  think, besides my firm, Chapman & Cutler and Peter

1          Magnesium Corporation of America

2    Solomon have the largest claims.

3               THE COURT:  What kind of order of

4    magnitude are we talking about here?

5               MR. SMOLINSKY:  I don't have that

6    information with me.  Perhaps Mr. Top would have

7    that figure.

8               THE COURT:  Okay, I don't want you

9    to interrupt yourself, but, Mr. Top, make a note to

10   see if you can fill that in when it's your turn.

11              MR. TOP:  Say that again, your

12   Honor, how much we are outstanding?

13              THE COURT:  Yes.

14              MR. TOP:  Less than 100,000 dollars,

15   I believe it's like between 50 and 75,000 dollars.

16              MR. SMOLINSKY:  I think the Peter J.

17   Solomon piece was larger than the Chapman & Cutler.

18   I don't recall if it was 150 or slightly more than

19   that.

20              THE COURT:  Okay, thank you.

21              Go on, Mr. Smolinsky.

22              MR. SMOLINSKY:  In addition, there

23   are reclamation claims in over the course of the

24   last couple of months, we have been in conversation

25   with the reclamation creditors over the amount of

1           Magnesium Corporation of America

2      their claims.  I actually have one or two

3      stipulations that I've been pressured over the last

4      couple of weeks to file, but I've chosen not to

5      because of this motion.  I didn't want to be

6      accused of having done something that a Chapter 7

7      trustee would want to take a second look at.

8                I've also been handling the

9      litigation  -- in addition to the EPA litigation,

10     there is the BLM litigation, the Bureau of Land

11     Management federal litigation pending in Utah and

12     Chadbourne and Parke had been consulting on that

13     also.

14               THE COURT:  That's the second of two

15     types of lawsuits that Mr. Chang addressed in this

16     lawsuit, allegedly the stealing of minerals.

17               MR. SMOLINSKY:  That's correct, your

18     Honor, and Chadbourne has been engaged in that

19     litigation --

20               THE COURT:  Wait.  Say that again

21     slower.  Your firm has been --

22               MR. SMOLINSKY:  We have been

23     involved in that litigation on behalf of the

24     debtors.  I have a stipulation on my disk which I

25     was about to sign which would allow the court in

```
 1              Magnesium Corporation of America
 2    Utah to rule on the motion for the stay relief.  We
 3    had initially opposed the judge in Utah in making a
 4    determination as to whether the stay applied to the
 5    BLM action at a hearing that I attended out in
 6    Utah.  The judge was clear that she wanted to
 7    exercise her jurisdiction, which she does have
 8    juridiction, which coincides with your Honor's.
 9              And at that point we decided to
10    allow the District Court to rule on the pending
11    motions.  It's a motion -- the case was dismissed
12    and there's a motion pending by the government to
13    reopen that case.  And there is one or two other
14    motions that the judge was prepared to rule on.
15              THE COURT:  Now, if that matter were
16    handled on the merits, I thought I heard you saying
17    you settle with stay type issues.  Is that
18    something that Chadbourne would be doing, or the
19    law firm that Mr. Chang identified would be doing?
20              MR. SMOLINSKY:  There was a law firm
21    that was representing Mag Corp prior to the
22    petitioner date in that litigation.  When the
23    filing happened, I reviewed the lawsuit and I
24    thought that it was fairly clear that the stay
25    applied with respect to that action.  In that
```

1                Magnesium Corporation of America

2    regard, I thought that it would be an unnecessary

3    expenditure of the estate assets to retain trial

4    counsel with respect to that action, even though

5    that counsel is probably the best suited to

6    represent the estate if the litigation goes forward

7    because the case --

8                THE COURT:  That's Utah, the law

9    firm in Utah?

10                MR. SMOLINSKY:  That's correct.

11    Because the case was dismissed, we thought we would

12    deal with it purely in a bankruptcy position until

13    such time the court in Utah decided to go forward

14    in the evidence hearing.

15                THE COURT:  You saw, as long the

16    stay remained, you saw no need for any further

17    education, or if does, to get further education on

18    the issues?

19                MR. SMOLINSKY:  That's correct, your

20    Honor, our involvement has been somewhat minimal.

21                THE COURT:  All right, continue.

22                MR. SMOLINSKY:  We have also been

23    working on the PacificCorp matter, and we have been

24    involved in analyzing the rate deference, although

25    we have regulatory counsel out in Utah that we've

1          Magnesium Corporation of America

2   been working with.  That is the status of the case,

3   until this motion was filed.

4          When the motion was filed, we

5   immediately recognized that we had no desire to

6   stop an investigation that any participant wanted

7   to conduct.  I think that's been our position

8   throughout the case.  I don't want to speak as to

9   the merits of the avoidance actions.  I do want to

10  make one or two comments so that it does not appear

11  that the debtors or the Creditors Committee in any

12  way shook their responsibilities with respect to

13  investigating a cause of action that could be worth

14  tens of millions of dollars.

15         The Creditors Committee did, as Mr.

16  Top stated, conduct a preliminary investigation.  I

17  think the -- I didn't go back to check, but I noted

18  in the reply papers of the movants, I think they

19  said that they spent only 87 hours of legal time in

20  analyzing the avoidance of legal actions.

21         I think Mrs. Grubin also mentioned

22  their contingency counsel has spent somewhat less

23  time than that, and concluded there are viable

24  causes of action.  In addition, Willkie Farr &

25  Gallagher conducted an investigation which the

1          Magnesium Corporation of America

2     debtors paid for prior to the bankruptcy case.   I

3     don't have the time records, so I can't speak as to

4     how much Peter J. Solomon investigated the case,

5     and their fees were substantial, although I'm not

6     privy to the level of investigation they did.

7                But coming out of these

8     investigations was the understanding that in 1996,

9     when these dividends were made, they were made as

10    disclosed in the prospectus which was disclosed for

11    the issuance of the bonds to the bondholders.   And

12    we presume that they made their own investigation

13    as to the solvency of the company at that time

14    after giving the effect of the dividends, and we

15    believe there is a defense on the part of Renco on

16    solvency throughout this period of time, and I

17    think we also understand that in the metal industry

18    there was a significant drop in prices that led to

19    the bankruptcies of many companies in this industry

20    in the late '90s and early 2000s.

21                That's all I'll say on the

22    substance, I just wanted to put that on the record,

23    because of the inference that we have somehow sat

24    on our hands or the committee has somehow sat on

25    their hands with this cause of action.

1          Magnesium Corporation of America

2                    With that said, we have in no way to

3     try to stop an investigation.  As a matter of fact,

4     I think Mrs. Grubin has indicated that we have been

5     in discussions with them, and I think the

6     purchaser, with respect to the these issues, I had

7     disbursed a commission to the Ad Hoc Committee,

8     seeking to provide them with as much comfort as I

9     could, that any investigation that would be

10    conducted by the Ad Hoc Committee would give them

11    comfort that they would not be giving up anything

12    of substance.

13                    I spoke to the Renco Group and

14    received their assurances that they would not raise

15    Cybergenics as a defense to any cause of action,

16    for instance.  With respect to the 108 issues, I

17    have not had the conversation directly with Renco

18    as to whether they would agree to the extent it's

19    necessary, to agree to toll a period that the

20    Chapter 7 trustee would have and an Ad Hoc

21    Committee would not.

22                    I don't know if there would be any

23    difference in the statute of limitations, whether

24    it's a Court issue or whether it's a private issue.

25    We discussed the issue in substance Wednesday

1              Magnesium Corporation of America

2     night, I believe at midnight, and I was at trial

3     all day yesterday, so I have not had a chance to

4     follow-up on that.

5              I would know that the Ad Hoc

6     Committee intends to use contingency counsel to

7     bring this action.  I'm not quite sure I understand

8     why the committee can't retain the same committee

9     in the contingency action to conduct the

10    investigation and bring the action.

11             Nevertheless, the stipulation I

12    provided would provide the Ad Hoc Committee of

13    bondholders would give the rights to pursue those

14    actions on behalf of the United States.

15             The only thing I wanted to -- I

16    wanted to add on a couple other things.  With

17    respect to the administrative expenses, I guess I

18    have a personal interest, I guess, the Creditors

19    Committee feels conflicted not to raise their --

20    weather they represent a group of creditors who are

21    entitled to an investigation, but I can say that we

22    have been proceeding down the path of anticipating

23    that the monies in the estate would be available

24    for distribution to administrative creditors.

25             I think the Creditors Committee, at

Magnesium Corporation of America

1    least the counsel, had made a determination that

2    they did not want to expend the remaining amounts

3    and gamble them on legal fees in connection with

4    the lawsuits on actions against affiliates.  But we

5    clearly were in the same big position.  We don't

6    want to stop the investigation, but we don't think

7    that we necessarily should finance it.

8         Contingency counsel, if it's fully

9    contingent, doesn't need the money that's at this

10   time sitting in the estate.  We would ask if the

11   court is inclined to convert the case, that at

12   least we are able to receive as much as we can from

13   the remaining assets of the estate in order to pay

14   outstanding and allowed fees.

15        In terms of the estate being

16   administratively insolvent, I would hope the test

17   is clear and show that the company is

18   administratively insolvent, but think, Mrs. Grubin,

19   if the case is successful, the estate won't be

20   insolvent, and that's a reason for keeping the

21   Chapter 11 open.

22        The added expense of doing a

23   liquidating plan versus conversion I don't think

24   necessarily goes in favor of a Chapter 7 trustee,

1           Magnesium Corporation of America

2    because ultimately, while you don't have to

3    negotiate a plan with the government, you still

4    have to reconcile claims.  And we would argue that

5    the debtors are in the best position to reconcile

6    those claims to make sure, if there is money, to

7    distribute it pro rata in the proper creditor

8    claims.

9           THE COURT:  At that last point you

10   are not talking about Chadbourne, you are talking

11   about your client?

12          MR. SMOLINSKY:  Yes, the officers

13   are still working.

14          THE COURT:  You still have a

15   skeleton crew?

16          MR. SMOLINSKY:  We have no

17   employees.  We are compensating Michael Legge, the

18   CEO of the company; Todd Haggard, the CFO; and Lee

19   Brown, who is the head of the administration, who

20   have been assisting me in the winddown affairs, and

21   presumably, if this case continues would continue

22   to assist Chadbourne & Parke in helping with the

23   affairs in doing whatever is necessary.

24          THE COURT:  To what extent would

25   they be available or unavailable if we went either

1          Magnesium Corporation of America

2     with an 11 trustee or a 7 trustee?

3               MR. SMOLINSKY:  I've not had that

4     conversation with them.  Obviously, it would be

5     within their rights to resign from those officer

6     positions.

7               THE COURT:  Except I think there's a

8     duty in Chapter 7 to cooperate with the Chapter 7

9     trustee.

10              MR. SMOLINSKY:  I would have no

11    doubt that they would cooperate with a Chapter 7

12    trustee the best they can.

13              THE COURT:  Okay, keep going.

14              MR. SMOLINSKY:  Your Honor noted the

15    STN issue, and I was advised that I had not offered

16    up that as a conclusion, and I think the record is

17    clear that I had; and I do think it's appropriate.

18              The 108 point, I'd like to think

19    more about that in terms of how we get someone

20    comfortable in an investigation that they would not

21    lose any rights that a Chapter 7 trustee would

22    have.  Certainly, it's not the intent of the

23    debtors to have anyone waive any rights that the

24    Chapter 7 trustee would have; and I would endeavor

25    to provide that, and if I were to provide that,

1         Magnesium Corporation of America

2    then perhaps your Honor would move toward Chapter 7

3    in order to resolve that issue.

4              In terms of the funding that we had

5    raised in our papers, the debtor certainly didn't

6    intend to be heavy-handed.  We simply noted in the

7    draft papers that we were intending to file, that

8    the funding terminated upon the appointment of a

9    Chapter 11 trustee or Chapter 7 trustee, which

10   every loan document that I've seen contains that

11   proviso.

12             And what we tried to accomplish is a

13   funding mechanism where U.S. Mag has an economic

14   interest in certain of the litigations and they

15   would fund the estate, which would also allow us to

16   conduct a winddown that would essentially reduce

17   the administrative expenses that currently exist

18   against the estate by dealing with the fees that

19   have been incurred since the sale when U.S. Mag

20   took over operations of the business, which would

21   certainly reduce my fees.  So it's somewhat

22   self-serving, but it would also reduce the

23   administrative expense claims that have been

24   asserted against the remaining funds in the estate,

25   which would be better for all other administrative

1           Magnesium Corporation of America

2    creditors.

3               It would also allow us to keep open

4    the bankruptcy case without cost for the

5    administration of the estate while the

6    investigation proceeds.  I can't say that the

7    funding will last forever, but to the extent -- I

8    would anticipate that the investigation would be

9    conducted by the Ad Hoc Committee or Creditors

10   Committee in short order, and at that time we would

11   know whether the grounds still exist for

12   commencement of an action.  And if it does, then

13   that action would be commenced.

14               We also provided in our stipulation,

15   our STN stipulation I'll call it, to the extent the

16   parties believe at any time in the future that they

17   are not getting under the stipulation what a

18   conversion to Chapter 7 or what a Chapter 11

19   trustee would have, that they would have the right

20   to renew their motion.

21               MS. GRUBIN:  Your Honor, I would

22   think that these are settlement negotiations that

23   fall within 408.

24               THE COURT:  Sustained.

25               MR. SMOLINSKY:  I apologize, your

Magnesium Corporation of America

1   
2   Honor, I didn't intend to get into the settlement

3   discussions.  I would state on the record that the

4   debtors, in connection with any order that your

5   Honor entered with respect to an alternative, other

6   than conversion or the appointing of a Chapter 11

7   trustee, that we would certainly understand that

8   that order reserved the rights without prejudice to

9   a party coming in and seeking to reassert the

10   motion at any time.

11         I apologize for getting into the

12   settlement; was simply talking about the debtor's

13   position with respect to make a wind down conducted

14   and finalized.

15         I think that's all I have on the

16   issues, your Honor.  If your Honor is inclined to

17   convert the case because your Honor believes that

18   we cannot afford proper investigation without a

19   Chapter 7, I would ask for the opportunity to

20   withdraw the debtor's objection as opposed to

21   having it overruled.  But I would like to hear your

22   Honor's thoughts on our positions here today.

23         THE COURT:  All right.  Ms. Davis, I

24   think the spirit of what you requested a minute ago

25   would be best served by giving Ms. Grubin a chance

1          Magnesium Corporation of America

2    to reply and then speak, unless you would like to

3    waive that.

4                    MS. DAVIS:   That's fine, your

5    Honor.  I would just ask in speaking, I'm a little

6    ignorant to the facts here because this is a case

7    that's one of my colleagues, Brian Masumoto, if we

8    could have means with the respect to the fraudulent

9    conveyance, I needed to know that number and if it

10   can be representation to the aggregate

11   administration expenses that are required.

12                   THE COURT:   Good, that's a good

13   reason for you to defer for your comments till you

14   get that information.

15                   THE COURT:   Ms. Grubin, some of that

16   may be in your lap and some of that may be in Mr.

17   Smolinsky's lap.

18                   MS. GRUBIN:   That's correct, your

19   Honor.  First, while it's still fresh in our minds,

20   we believe that there may be up to and in excess of

21   90 million dollars --

22                   THE COURT:   90?

23                   MS. GRUBIN:   90, yes.  And in our

24   motion, and if I might direct Ms. Davis' attention

25   to -- bear with me, please.

1         Magnesium Corporation of America

2              THE COURT:  The prospectus.

3              MS. GRUBIN:  The prospectus.

4              THE COURT:  I must say I missed it,

5    just like Ms. Davis did.

6              MS. GRUBIN:  I would actually direct

7    Ms. Davis' attention to footnote 1A point 4 of our

8    motion, which speaks about $8.5 million of the net

9    proceeds from the note issuance used to redeem

10   preferred stock from the group and, additionally,

11   46.2 million of the proceeds plus cash of 34.8

12   million was distributed as a dividend group and to

13   compensate certain Mag Corp executives so right

14   there you have 89 million.  And also, your Honor, I

15   would suggest that, and it speaks about that in

16   footnote 2, page 5, it talks about there may indeed

17   be --

18             THE COURT:  Avoid management fees?

19             MS. GRUBIN:  Correct, your Honor, of

20   100,000 dollars a month, and that dated back a

21   number of months before the August '01 filing of

22   the petition.  And then we also understand --

23             THE COURT:  The multiplier could be

24   significant.  How many months are we talking about?

25             MS. GRUBIN:  Your Honor, I couldn't

1                Magnesium Corporation of America

2    answer the court at this point.  I don't think it's

3    more than 12 prepetition, but --

4                THE COURT:  What?

5                MS. GRUBIN:    -- we could submit

6    that subsequent to today.

7                THE COURT:  But if it is 12, and I

8    recognize that you carefully did make

9    representations where you didn't know, we may be

10   talking about 12 times 100,000.

11               MS. GRUBIN:  That's correct, your

12   Honor.

13               THE COURT:  Okay.

14               MS. GRUBIN:  And then, finally,

15   there are also -- there is a potential cause of

16   action for breach of fiduciary duty, and I confess

17   not to be a bankruptcy tax expert, your Honor, but

18   there may be some valid causes of value to tax

19   benefits to related entities due to financial

20   losses sustained by the debtors, because the

21   debtors, as I understand it, reported on a

22   consolidated basis.  And the motion does speak to

23   that sort of -- doesn't really elaborate on it too

24   much, but that is a possible related cause of

25   action that I couldn't put a number on at this

1           Magnesium Corporation of America

2   point in time.

3           THE COURT:  Okay.

4           MS. GRUBIN:  And I think that Mr.

5   Smolinsky is more versed -- well versed in the case

6   to, perhaps, speak to the admin expenses.  But I

7   would just like to point out of these fees that are

8   unpaid in this case, my understanding is that the

9   fee orders in this case, other than with respect to

10  Willkie Farr & Gallagher, have all been interim fee

11  orders so that there have been no final allowable

12  final fee amounts in this case.

13           I just want to make sure everyone is

14  aware of that.  Your Honor, I really will just

15  reiterate what we said in our motion and reply, but

16  I would like to respond to a few points that were

17  raised.

18           I would point out that counsel has

19  made itself available on a contingency basis to a

20  trustee and had spent about 60 to 80 hours

21  reviewing various documents in the file of the

22  bankruptcy to determine that there were indeed

23  valid -- in their opinion, valid and viable causes

24  of action.

25           I think Mr. Smolinsky mentioned a

1              Magnesium Corporation of America

2    number -- a smaller number than that; and that is

3    in comparison to what they understood Chapman and

4    Cutler's time of about 82 hours.   I would also note

5    that this identifies an available contingency

6    counsel will not be available unless there is a

7    trustee appointed in this case.   And that is --

8              THE COURT:   I saw that, although

9    only in the letter, and presumably that's because

10   he wants the benefit of whatever 108 arguments he

11   can make.

12             MS. GRUBIN:   That's correct, and he

13   wants to make sure there is no underbrush of

14   uncertainty and his firm can move forward with the

15   substantive portions of the lawsuit.   And that to

16   us is fairly significant, because that is why we

17   need a trustee in our opinion here, and that's why

18   we're asking for a trustee, because while there may

19   indeed be other counsel out there, and I understand

20   my clients did speak to a number of other firms,

21   there may be some time delay and perhaps even

22   availability concerns of other contingency counsel.

23   I would also point out that the Peter J. Solomon

24   firm that it was -- excuse me, the FS to the

25   committee, my understanding, and I think Mr. Top

47

1          Magnesium Corporation of America

2     can affirm this, is that they did spend a great

3     deal of time trying to bring a buyer to the table,

4     but they did not undertake any solvency or

5     insolvency analysis or any of the other kinds of

6     detailed analysis that would be necessary to

7     preclude a cause of action, particularly fraudulent

8     conveyance causes of action.

9               Your Honor, I would also say that

10    there will be -- there does not seem to be funds in

11    the estate to fund the committee's prosecution of

12    these causes of action for them to have completed

13    their investigation, and it seems to me where there

14    is identified contingency counsel who is available

15    to investigate and prosecute and pick up the tab on

16    these expenses, that that is something that the

17    court should consider in reviewing whether or not

18    to grant our motion.

19               I would point out that whether one

20    is hopelessly or unhopelessly administratively

21    insolvent, one is invariably insolvent, and I would

22    also hope that the three employees would be out in

23    Utah, as your Honor suggested, to assist the U.S.

24    trustee to reconcile claims administration or

25    various litigations in this case.

1           Magnesium Corporation of America

2                One other thing I'd like to point

3     out to the court, is that we would ask that the

4     court rule as swiftly as possible on our motion

5     because we are looking at, as I said before, the

6     546(a) which is two years, and runs out this

7     August.

8                That's all I have, your Honor,

9     unless the court has questions.

10               THE COURT:  No, I don't.

11               MS. GRUBIN:  Thank you, your Honor.

12               THE COURT:  All right, Mr. Top, Ms.

13    Wallace, anything to add, to that?

14               MS. WALLACE:  No, your Honor.

15               MR. TOP:  Your Honor, I guess just

16    to relate to what Ms. Grubin said relating to Peter

17    J. Solomon; obviously they conducted financial

18    reviews during the relevant period of time during

19    the bankruptcy and issues of how much financing was

20    needed and what are the assets and liabilities are

21    for purposes of providing that information to the

22    committee as well as making that information

23    available to various buyers.  I'm not aware of any

24    analysis they completed to prior periods, except to

25    the extent they looked at whatever had been

1           Magnesium Corporation of America

2     available to Renco and Mag Corp during the prior

3     periods.

4               I will say, although, that they did

5     spend some time reviewing transfers and the like,

6     and I think we had, and we provided to the Ad Hoc

7     group, what we thought were transfers, but to the

8     best of my knowledge, your Honor, that's pretty

9     much the extent of their solvency type analysis

10    with respect to the debtors.

11               THE COURT:  Thank you, Mr. Top.

12               Mr. Seidel, would you like to be

13    heard?

14               MR. SEIDEL:  Yes, your Honor, just

15    briefly.  Barry Seidel from Cadwalader, Wickersham

16    & Taft.  Your Honor, I rise today only to comment

17    with respect to the discretionary nature of the

18    funding referred to in the debtor's papers.

19               Just so it's clear, it was partially

20    discretionary and partially committed.  It was a

21    500,000 dollar facility that we had offered.  The

22    initial 250,000 dollars of that was to be spent, it

23    was committed.  The balance, as of the time we

24    negotiated that, we didn't know what was down the

25    road in this Chapter 11 case.  We didn't said we

1          Magnesium Corporation of America

2     wanted approval so we wouldn't have to incur the

3     expense twice and the Renco group would be  -- the

4     agreement was subject to getting a Court order and

5     documents in the transaction, but that was

6     concerning discussions we had with Mr. Smolinsky

7     six, seven months ago.

8               THE COURT:  Long before you had a

9     motivation to bribe me.

10              MR. SEIDEL:  Your Honor, it had

11    nothing to do with influencing the outcome here.

12    Mr. Smolinsky has addressed the draft stipulation.

13    I cannot tell your Honor why it wasn't filed all

14    these months, but it hadn't been, and the reason it

15    was negotiated at all was because of Mr.

16    Smolinsky's concern that the estate would end up

17    administratively insolvent.

18              This was a financing vehicle to

19    allow the estate to continue and wind up and this

20    was not necessarily a situation where we would

21    substitute the Renco Group as the unpaid advocate,

22    because there were recognitions in there that would

23    allow for the payment of indebtedness only from

24    assets recovered, so we are not going to burden the

25    estate.

1               Magnesium Corporation of America

2                    THE COURT:  You are not becoming a

3       new DIP lender, that would be taken care of?

4                    MR. SEIDEL:   That's correct, your

5       Honor.

6                    THE COURT:  Could you, please, I

7       thought debtor's counsel was going to address that

8       issue.

9                    MR. SEIDEL:  Of course, I just

10      wanted to make sure people who wanted to be heard

11      would have an opportunity.

12                   THE COURT:  Mr. Smolinsky, do you

13      want to be heard?

14                   MS. DAVIS:  Your Honor, can I ask

15      whether it was in the original DIP order there was

16      a carveout for the Chapter 7 Trustees?

17                   THE COURT:  There was a DIP order

18      and the department was paid off.  It is usually my

19      practice to require a carveout, but I don't

20      remember whether I was doing that when this case

21      was filed, Mr. Smolinsky, you can address that.

22                   MR. SMOLINSKY:  In this issue I

23      think there was a 50,000 dollar carveout, it might

24      have been 100,000 for a Chapter 7 trustee, but as

25      your Honor noted, as part of the sale, the DIP

1          Magnesium Corporation of America

2     financing was satisfied.  I don't know what the

3     status of that carveout is.

4               THE COURT:  Okay.  Go ahead with

5     your other points.

6               MR. SMOLINSKY:  I was only going to

7     comment on the question raised by the U.S. Trustee

8     regarding the management fees, and it's really

9     testing my memory, but I believe the management

10    fees ceased at some time substantially prior to the

11    filing.  The company did not have the cash

12    available to pay those fees.  I don't remember

13    whether it was nine months before the filing or

14    sometime before or after that, but it's not the

15    full 12 months within the, I guess, the preference

16    period, if that's what you are looking at, before

17    the year of the filing.

18               THE COURT:  Well, I'm not going to

19    lawyer for the bondholders, but from time to time

20    creditors have asserted that management fees of

21    these characters are fraudulent conveyances and not

22    just preferences.

23               MR. SMOLINSKY:  Correct.  On the

24    issue of administrative expenses, I was trying to

25    get from Bankruptcy Services, Inc., who is our

1          Magnesium Corporation of America

2    claims agent, a schedule, a register of the admin

3    claims.  I didn't get it prior to leaving for Court

4    this morning.  So I can't report to you today on

5    what the claims register looked like.

6               I'm not aware of any claims, other

7    than the ones that I've talked about here today.

8    And if your Honor is inclined to put this over to

9    see whether the financing makes sense at some

10   future date, I could be prepared to give your Honor

11   a full report on the status of that.

12              In terms of the issue of whether

13   this issue needs to be decided today, I would only

14   note, I believe that under 546, a one year period

15   would start upon the agreement of a Chapter 7

16   trustee, whether it's converted today or tomorrow.

17   As long as the conversion happens before August,

18   there would be a one-year period, I don't think

19   there's a tag on for the five months between now

20   and August, and then you would add a year to that.

21              So I think as long as the this Court

22   orders conversion before August, I think the result

23   is the same, the trustee would have a one-year

24   period.

25              I would also note that I don't know

1          Magnesium Corporation of America

2   whether a Chapter 11 operating trustee makes sense

3   here.  I think if we're going to change the nature

4   of this case, I would think that for administrative

5   costs, I think a Chapter 7 trustee would avoid the

6   cost of an ongoing committee and receive money on

7   quarterly fees and avoid the expense of preparing

8   operating reports and the like, I would just note

9   that for the record.

10          THE COURT:  What I think, and this

11   is for the benefit of all, that when I talked about

12   an issue as to the applicability of 108 in terms of

13   situations of this type, I was really thinking

14   about what you just said, Mr. Smolinsky, which is

15   546(a)(1).

16          In the fact of whether a debtor in

17   possession is deemed for some purposes to be a

18   trustee, whether that would be the first trustee

19   appointed, and that's the conflict in the cases

20   that I was referring to at the time I looked at it,

21   I'm not expressing a view on the issue.  But that

22   was a matter of concern to me.

23          MR. SMOLINSKY:  And I think that's

24   resolvable within the confines of an STN type

25   order.

1          Magnesium Corporation of America

2              THE COURT:  All right anything else,

3   anybody, before Ms. Davis?  Okay Ms. Davis.

4              MS. DAVIS:   Yes, good morning, your

5   Honor.  Tracy Hope Davis, for Carolyn Schwartz, the

6   U.S. trustee.  I actually had an opportunity to

7   review a memo my colleague, Brian Masumoto,

8   prepared in connection with this hearing.  I'm

9   going to share some of his comments and a few of my

10  own, based upon what the parties said today.

11             Mr. Masumoto had advised me that it

12  was the U.S. Trustee's pictures that we didn't have

13  an objection to the appointment of a Chapter 7

14  trustee.

15             MR. TOP:  This is brought to the --

16   I'm having a hard time hearing.

17             MS. DAVIS:   I have a follow up.  As

18  I said, I conferred with my colleague, Brian

19  Masumoto, who is the attorney assigned to this case

20  who understood and voiced to me that the U.S.

21  trustee had no objection to the conversion of this

22  case.

23             Our concern was that there might be

24  duplication with respect to the work that had

25  already been done by the lawyers who had commenced,

1              Magnesium Corporation of America

2      I guess, the investigation with respect to whether

3      there was going to be a preference or whether there

4      were preference or avoidance actions to be pursued.

5      It's my observation, in speaking with the parties,

6      that while the grounds for cause to convert this

7      case might be insolvency or issues of a conflict, I

8      think the issue of insolvency is more important and

9      goes toward whether the court should grant the

10     conversion of this case.

11              The issues of the insolvency,

12     however, cannot be resolved, I think at this point,

13     at this moment, and that means today.  And I think

14     the court would be assisted with the results from

15     the bar date that has already been requested, and I

16     believe that the date does not expire today, but it

17     might expire early next week.  Those results might

18     be important to the court to determine whether the

19     debtor is actually administratively insolvent or

20     not.

21              Based upon the comments of the

22     parties today, the court may accept those

23     representations as useful, but I think that a

24     response from the debtor, perhaps in a written

25     submission or otherwise, with respect to the amount

1                    Magnesium Corporation of America

2      of administrative claims outstanding, would be

3      guiding to the court and definitely would be

4      important to the Office of the U.S. trustee.

5                    THE COURT:  The one problem I have

6      is people will put in whatever they will put in by

7      the bar date, as you note, but why would a wild

8      card, to the extent to Mr. Chang's folks won in

9      Utah, if they are successful, whatever was filed by

10     the bar date would be swamped by the liability to

11     the United States of America.  And I haven't seen

12     what the United States filed.  But I would suspect

13     that they would have filed the administrative

14     equivalent of what the proof of claims says, we got

15     this thing out there and we think we are entitled

16     to this.

17                    But, in any event, we would want the

18     claim favor to whatever we derive.

19                    THE COURT:  I'm going to invite Mr.

20     Chang to comment when you are finished.

21                    MS. DAVIS:  Sure.

22                    THE COURT:  If they did that, I

23     would hardly be surprised if they had -- we are not

24     going to get as much information because so much is

25     going to be determined by the folks in Utah.

1          Magnesium Corporation of America

2                MS. DAVIS:   Your Honor, forgive me.

3      I'm not sure what the status of this litigation is.

4                THE COURT:   I don't know if we know

5      that or not.   I think Mr. Chang said matters were

6      adjudicated and he didn't hold out on that, and

7      he's the best person to speak on that.

8                MS. DAVIS:   Obviously, the debtors

9      are facing administrative insolvency.   Ultimately

10     an insolvent debtor calls for a Chapter 7 trustee

11     or a conversion of the case, which immediately

12     relieves that issue.

13               Your Honor, to answer a couple of

14     questions you had with respect to whether a Chapter

15     7 trustee would continue with the professionals

16     that have been retained by the debtors thus far in

17     this case, it's more than likely the Chapter 7

18     Trustees do not like to reinvent the wheel and I'm

19     sure your Honor would make a recommendation

20     immediately with respect to whether they should or

21     should not, and we would advise whoever is

22     appointed that it would be likely for them to

23     continue with whoever is on board.   But at some

24     point, you have to stop the bleeding and with the

25     professionals, the Chapter 7, the United States

1          Magnesium Corporation of America

2     trustee quarterly fees accruing, it would appear

3     that the bleeding should stop at this point.

4               Your Honor, I had a couple other

5     points.  As your Honor is aware, a Chapter 7

6     trustee has the requirement to marshal assets for

7     the benefit of all creditors, and it would appear

8     to me, your Honor, that the continuation of these

9     proceedings in Chapter 11 would only really inure

10    the benefits of the economic benefits of the

11    professionals retained thus far, and I don't really

12    see how all creditors would benefit,

13    notwithstanding the fact that we have the ETPSA

14    litigation in Utah.

15              The other point, your Honor, I

16    believe Mr. Smolinsky made a request that your

17    Honor, perhaps, have a hearing on final fees and

18    allowable fees at this point.  Typically, in many

19    cases, as your Honor is aware, the court will make

20    a final ruling on professional fees before the

21    court converts the case.  I don't really know if

22    that is that's appropriate at this time.

23              I don't know whether there's been a

24    finding of any wrongdoing by counsel or not, but

25    perhaps, again, if the case is converted, a Chapter

1              Magnesium Corporation of America

2      7 trustee can get his arms around all the

3      administrative fees that are outstanding.

4                   And, let me think of what else, I

5      echo the response of Ms. Grubin, in that any

6      officers or directors that are working currently

7      with the debtor would have an obligation to do the

8      same thing with a Chapter 7 trustee.  That's it.  I

9      hope my comments have been helpful to your Honor.

10                  THE COURT:  Yes, they have, thank

11     you.

12                  MS. DAVIS:   Thank you.

13                  THE COURT:  Mr. Chang, were my

14     adoptions correct or incorrect?

15                  MR. CHANG:  Don't worry.

16                  THE COURT:  Don't worry about being

17     diplomatic.

18                  MR. CHANG:  It is correct.  We

19     intend to file an administrative claim with the EPA

20     lawsuit, and the government may also file a claim

21     of reclamation with a claim previously leased by

22     Mag Corp.  On the issues that was what raised was

23     the states of what I regard as the regular lawsuit,

24     the EPA lawsuit, as I stated in the letter, there

25     are motions for summary judgment, and we have no

```
 1              Magnesium Corporation of America
 2    way of knowing whether they would be ruled on, and
 3    even if they were ruled on, I don't think it will
 4    dispose of the case entirely, but certainly it may
 5    go a long way to settling if there is a great deal
 6    of uncertainty even if there were a decision on the
 7    motions.
 8              THE COURT:  Thank you.
 9              MS. DAVIS:   Excuse me, your Honor.
10    I have one problem.  I have a conference on
11    Adelphia, I was supposed to be on at 11, I need to
12    call my office.
13              THE COURT:  You are excused for that
14    purpose, and I will tell you what I'm going to do
15    is I'll take a recess to about quarter of 11 and
16    then I'm going to give you at least some thoughts.
17    And so we're in recess until 11:15.
18              (Recess taken.)
19              MS. GRUBIN:  Thank you, Judge.
20              MR. TOP:  Your Honor, we'll keep the
21    line open.
22              THE COURT:  I would recommend that.
23              (Recess taken.)
24              THE COURT:  Have a seat.  At the
25    outset I want to talk about what this case is not.
```

Magnesium Corporation of America

1

2   This case is not, at least on the record presented

3   to me so far, a case about fraud or mismanagement

4   about an incumbent debtor or its counsel.  It's not

5   a Hampton Hotel case, where a year or two ago I

6   granted a motion by the U.S. trustee to convert a

7   case based on the misconduct of the debtor in

8   possession.  It's not even, in my view, a bleeding

9   case where I think that since the time of the sale

10   the debtor has been very conscientious in trying to

11   keep costs under control.

12            What is more important, in my view,

13   is the inherent conflict that needs to be addressed

14   by one means or another to insure that the claims,

15   if any, and I underscored the if any, that

16   bondholders or creditors might generally have, are

17   properly investigated and prosecuted.

18            And the uncertainty with respect to

19   administrative claims, and the potential, not the

20   certainty, the potential that the United States or

21   the EPA do prevail in Utah and have administrative

22   claims that could swamp the others.

23            In other words, this case, if

24   anything, is much more like the PSINet Consulting

25   case, where there was no indication that the

1          Magnesium Corporation of America

2   management of PSINet had improperly captained the

3   PSINet Consulting's ship, but the company claims

4   were such that the thought a trustee was required

5   to insure that any identifiable claims against the

6   corporate parent or the other entities in the

7   corporate family could be properly addressed.

8          I usually prefer STN or Commodore

9   orders to deal with conflicts of that character.  I

10  think that more precisely, and in a less

11  heavy-handed way, deal with the concerns that need

12  to be addressed.  Here, however, I have unique

13  needs.  I have the need not to foreclose creditors

14  from making a 108 argument or a 546(a)(1)(b)

15  argument, although I don't want to pre-judge that

16  in any way.

17          And, frankly, and I want to try to

18  say this as antiseptically as I can, I prefer,

19  frankly, to have an independent trustee consider

20  whether or not to bring claims against the debtor's

21  affiliates or others, rather than the movants, or

22  at least in terms of having the movant's captaining

23  the ship, where some of the claims that they might

24  wish to assert, although they should certainly have

25  the right to assert them, because they go back so

1          Magnesium Corporation of America

2     far and/or because they relate to a debatable issue

3     of insolvency, are not by any means slam-dunks.

4               My discretion in that regard is

5     formed in part by the fact that the two counsel for

6     the Creditors Committee, Willkie Farr and

7     Gallagher, Chapman and Cutler, both are very

8     capable law firms.  The matters of the dividends

9     and even the management fees are matters that were

10    of public record for a long, long time.

11              And the fact that they did not feel

12    compelled immediately to take action causes me to

13    wonder whether the claims -- again, I'm certainly

14    not pre-judging them -- are not necessarily the

15    slam-dunks that somebody might perceive that they

16    are and the amount potentially to be recovered is

17    very large, any equation that takes into account

18    the likelihood of recovery also must take into

19    account the likelihood of success, which is

20    something that I'm not in a position to pre-judge.

21              With all of those things said,

22    subject to what I'm going to say in a minute, I

23    believe that we are going to need, and I say this

24    reluctantly because I think the debtor's counsel

25    has done a very good job in this case and has tried

1          Magnesium Corporation of America

2    very hard to maximize value, has tried very hard to

3    get value, other than a deal with what turned out

4    to be an affiliate.

5               We are going to need an independent

6    captain of the ship.  And I don't believe that an

7    STN Commodore order, notwithstanding my usual

8    predilection for entering them, would skin the cat

9    here.

10              My judgment in this regard is also

11   informed by the fact that the two main battles that

12   would be fought, if the estate had to fight them

13   one with the EPA and the United States government

14   and the other with PacificCorp, would be handled by

15   Utah counsel or regulatory counsel, respectively,

16   rather than Chadbourne in any material respect.

17   And, therefore, I would not have the usual need to

18   get the benefit or utilize the benefit of

19   Chadbourne's learning.  And if I or a trustee were

20   to conclude otherwise, I think we all agree that

21   Chadbourne could continued to serve under 237(e)

22   for a limited purpose to accomplish those goals, if

23   needed.

24              I must say, by the way, that with

25   respect to any claims that might be asserted,

1                Magnesium Corporation of America

2    because of my uncertainties, again without

3    pre-judging, as to their ultimate strength and

4    because of the liquidity condition of this estate,

5    I almost certainly will not approve any legal fees

6    for either litigating or even investigating those

7    claims, unless they are on a contingent fee basis.

8    Therefore, I believe that I need independent and

9    objective review and management of this case with a

10   trustee, which in the first instance could be

11   either under 11 or 7.

12                I believe that the grounds for both

13   are shown, although I think my earlier comments

14   made clear that we are not talking about an (a)(1)

15   to mismanagement, we are solely talking about

16   what's in the interest of creditors.  And I think

17   that the discretion, including but not limited to,

18   that I have vis-a-vis conversion, and

19   uncertainties, even though I have no knowledge as

20   to the possibility of the administrative

21   insolvency, provide like basis under 1112.

22                I am very mindful of the ways by

23   which the Chadbourne firm has acted responsibly up

24   to this date and has continued to act responsibly,

25   even through this argument, and what Mr. Smolinsky

1            Magnesium Corporation of America

2    said about wanting to be given an opportunity to

3    consider whether he would withdraw this opposition.

4    I'm going to give you a week to decide that, Mr.

5    Smolinsky.

6            Likewise, I'm going to give you that

7    same week to caucus with Ms. Grubin and Mr. Top and

8    the U.S. trustee, and if the Indentured trustee

9    wants to be heard, I'm not even going to keep the

10   Indentured trustee out of that discussion, to

11   consider whether 11 is superior to 7, although I

12   must say that my inclination is to say that the 7

13   is the more appropriate vehicle under these

14   circumstances.

15           If there is a consensus or agreement

16   that an 11 trustee more appropriately addresses the

17   needs of creditors, than is the 7 trustee, I would

18   not be of a mind to veto that.  In the inability to

19   agree, I think I would more likely come out with

20   the view that the 7 trustee is more appropriate.

21           I see that Mr. Zipes has come in and

22   is now representing the interests of the U.S.

23   Trustee, rather than Ms. Davis.

24           Mr. Zipes, I know the U.S. trustee

25   has a normal preference under circumstances like

1           Magnesium Corporation of America

2       this when a judge believes that a Chapter 7

3       conversion is ultimately going to be appropriate or

4       judges act without delay here; however,

5       notwithstanding that preference which I share, this

6       is not a case of fraud or mismanagement, this is

7       not a case of bleeding, this is not a case of a

8       fire that needs to be put out within the next

9       couple of days.  I would rather permit the

10      thoughtful efforts by the parties in interest to

11      arrange a smooth conversion, and that risks that

12      one sometimes encounters, like in a Hampton Hotel

13      situation, where immediate conversion is

14      appropriate, are not my view presently here.

15              This is not a case of a corrupt

16      debtor, it is a case where the debtor, no matter

17      how hard it tries, has certain realities with which

18      it has to confront itself.

19              Not by way of reargument, but I will

20      take questions.  Obviously, what is contemplated in

21      this is I need Mr. Smolinsky to caucus with his

22      folks and to give thought to what he wants his

23      position to be, and to caucus with Ms. Grubin about

24      implementing mechanics.

25              In the event of a failure to agree,

1              Magnesium Corporation of America

2     I will arrange at your option, either a conference

3     call for or a hearing to perceive how we proceed

4     next.  But everybody here is a responsible lawyer,

5     and I think that we can probably achieve much of

6     this by consensus.

7              Mr. Smolinsky, are you about to

8     rise?

9              MR. SMOLINSKY:  Yes, sir.  I do have

10    one question that would help us.  We'll obviously

11    undertake to have those conversations with all

12    parties.

13              The one question I have that would

14    provide us guidance, you had mentioned that you

15    were uncomfortable putting the Ad Hoc Committee in

16    the place of the examiner, per se, to investigate

17    the matter.

18              THE COURT:  I didn't use the word

19    examiner, I think we are talking about a trustee.

20              MR. SMOLINSKY:  Yes, one of the

21    differences between a Chapter 11 trustee and a

22    Chapter 7 trustee, in the Chapter 11 Trustee, it

23    would be your Honor's determination as to who the

24    trustee would be, I believe --

25              MR. ZIPES:  That's not right.

1          Magnesium Corporation of America

2              MR. SMOLINSKY:  It's not?

3              THE COURT:  No.  My understanding is

4    I will decide there will be a Chapter 7 trustee,

5    and then that the U.S. Trustee's Office appoints

6    one of a consulting parties in interest, but I'm

7    certainly going to give Mr. Zipes an interest and

8    I'm, hopefully, if you would be yielding to Mr.

9    Zipes, which might be better to yours or mine.

10             MR. SMOLINSKY:   I would just like

11   to point out that in a Chapter 7, you would have a

12   panel appointed and the creditors would be able to

13   elect their own trustee.  And that may be a

14   consideration in our discussions with regard to how

15   we fashion an order that would fulfill your Honor's

16   issue that you are looking for someone who is truly

17   independent.

18             THE COURT:  Mr. Zipes, would you

19   like to comment?  I know this puts you into the

20   middle of something without a whole lot of

21   preparation.

22             MR. ZIPES:  This is the Achaian of

23   1210, 1107 and 1104.  Your understanding is correct

24   and Mr. Smolinsky's is correct as well.  In a

25   Chapter 11 situation, we would appoint a panel

1              Magnesium Corporation of America

2     under 701 and there would be a creditors meeting,

3     at which point there would be an election with the

4     creditors, so if the creditors had the votes, they

5     would vote to appoint a trustee.  In a Chapter 11

6     situation, I've never seen that occur where there's

7     an election, and I don't believe it's the same

8     statute, although I'm just speculating.  I believe

9     1104 we would just appoint the Chapter 11 trustee.

10              THE COURT:  Those facts would

11    influence by judgement.

12              MR. ZIPES:  I'm more confident with

13    an 11 than a 7.

14              THE COURT:  I really would like

15    independence in this investigation.  All right, I

16    don't know, though, that that goes to the level of

17    a ruling.  If that can't be consensually resolved,

18    I know that the 11 trustee was the Ad Hoc

19    Committee's first request.  If you guys can't

20    resolve that consensually, then I will deal with it

21    in about a week's time.

22              Anything else, anybody?

23              Okay, thank you.  We're adjourned.

24              I want to apologize to the people

25    who have been waiting for the subsequent matters on

1                    Magnesium Corporation of America

2      the calendar.

3                    MR. SMOLINSKY:    Thank you very

4      much, your Honor

5                    MR.   TOP:   Thank you, your Honor.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

## C E R T I F I C A T E

3   STATE OF NEW YORK     )
                          )      ss.:
4   COUNTY OF WESTCHESTER )

5          I, Denise Nowak, a Shorthand Reporter

6   and Notary Public within and for the State

7   of New York, do hereby certify:

8          That I reported the proceedings in

9   the within entitled matter, and that the

10  within transcript is a true record of such

11  proceedings.

12         I further certify that I am not

13  related, by blood or marriage, to any of the

14  parties in this matter and that I am in no

15  way interested in the outcome of this

16  matter.

17         IN WITNESS WHEREOF, I have hereunto

18  set my hand this 21 day of February,

19  2003.

20

21              _Denise Nowak_

                DENISE NOWAK
22

23

24

25

## Miscellaneous:

01-14312-reg Magnesium Corporation of America

Notice of Electronic Filing

The following transaction was received from entered on 2/26/2003 at 9:00 AM and filed on 2/24/2003

**Case Name:** Magnesium Corporation of America
**Case Number:** 01-14312-reg
**Document Number:** 385

**Docket Text:**
Conventional Filing *of Transcript of Hearing held on February 14, 2003 re: Motion of Ad Hoc Committee for the Appointment of a Trustee or Alternatively Conversion of this Case to Chapter 7,* filed by Clerk's Office of the U.S. Bankruptcy Court. (Edwards, Latoya)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** M:/Toya's claims/01-14312 feb 14.pdf
**Electronic document Stamp:**
[STAMP NYSBStamp_ID=842906028 [Date=2/26/2003] [FileNumber=1986090-0]
[9998d879f5e76f30332e08022b046c5c0e7281cd9c52317117e228ebee1ae2b5389fd
275ceb6711e23d0c08eea2e55ae798fe65626092e68187ae4e306e3526e]]

**01-14312-reg Notice will be electronically mailed to:**

Anthony Carabba    acarabba@carabbalocke.com

Babette A. Ceccotti    bceccotti@cwsny.com,

Edward Chang    edward.chang@usdoj.gov

William F. Gray    wgray@torys.com, ehavlik@torys.com

Emanuel C. Grillo    egrillo@salans.com

Janice Beth Grubin    jgrubin@golenbock.com, ssmith@golenbock.com

Michael B. Guss    mguss@chadbourne.com

Lori Lapin Jones    ljones@lse-law.com, bhayes@lse-law.com

Alan Jay Lipkin
mao@willkie.com;alipkin@willkie.com;swilamowsky@willkie.com;scargill@willkie.com;ramporfro@v

John B. Maycock    johnmaycock@utah.gov,