**BEUS GILBERT PLLC**
ATTORNEYS AT LAW
4800 NORTH SCOTTSDALE ROAD
SUITE 6000
SCOTTSDALE, ARIZONA 85251
TELEPHONE (480) 429-3000
FACSIMILE: (480) 429-3100

Leo R. Beus/Ariz. Bar No. 002687
Timothy J. Paris/Ariz. Bar No. 006234
Mitzi L. Torri/Ariz. Bar No. 017066

Proposed Litigation Counsel for the Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| MAGNESIUM CORPORATION OF AMERICA, <u>et al.</u>, | : | 01 B 14312 (REG) |
| | : | (Jointly Administered) |
| Debtors. | : | |

**APPLICATION PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING THE CHAPTER 11 TRUSTEE TO RETAIN BEUS GILBERT PLLC AS LITIGATION COUNSEL**

**TO THE HONORABLE ROBERT E. GERBER**
**UNITED STATES BANKRUPTCY COURT JUDGE:**

Lee E. Buchwald, the Chapter 11 trustee in the above-captioned cases, hereby submits this Application to retain Beus Gilbert PLLC as Litigation Counsel (the "Application"), and respectfully represents as follows:

## I. Background

1.     On August 2, 2001 (the "Commencement Date"), Renco Metals, Inc. and its subsidiary Magnesium Corporation of America (such entities the "Debtors") each commenced a case in the United States Bankruptcy Court for the Southern District of New York under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since the Commencement Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.     By Order dated April 14, 2003 (the "Appointment Order"), this Court appointed Lee E. Buchwald as Chapter 11 Trustee for the Debtors' estates (the "Chapter 11 Trustee").

3.     During 1996, Renco Metals, Inc. ("Metals") was a wholly-owned subsidiary of The Renco Group, Inc. ("Group"), a holding company established by Ira Leon Rennert, the Chairman and Chief Executive Officer of Metals and Group. Group was and is a privately held corporation whose stock is owned by various trusts established by Mr. Rennert for the benefit of him and members of his family. As a result of the ownership of the stock of Group, Mr. Rennert controlled Group and its subsidiaries, including Metals. In 1996 and to this date, Mr. Rennert was and remains the sole Director of both Debtors.

4.     Metals is a holding company that conducts no business operations of its own. From the date of its formation, Metals' income was generated by its wholly-owned operating subsidiaries, Magnesium Corporation of America ("MagCorp"), a debtor herein, and until its sale in December 2000, Sabel Industries, Inc. ("Sabel").

5.     Prior to the formation of Metals in 1993, MagCorp was a subsidiary of RenMag, Inc. ("RenMag"), itself a subsidiary of Group. MagCorp became an affiliate of the Group when, in 1989, RenMag purchased the stock of AMAX Magnesium Corporation and changed its name to Magnesium Corporation of America.

6. Sabel was engaged in diversified steel service operations, including the processing and sale of scrap metal, distribution of hot rolled and cold rolled carbon steel and structural steel, and customized reinforcement bar fabrication for building and highway construction use.

7. Prior to the sale of substantially all of its assets to another subsidiary of Group on June 24, 2002, MagCorp was engaged in the production of magnesium extracted from the brine of the Great Salt Lake in Utah. In addition to producing magnesium and magnesium alloys, MagCorp produced liquid chlorine, hydrochloric acid, ferrous and ferric chloride, calcium chloride and potassium-containing salts. MagCorp's magnesium production operations were conducted at a facility occupying 4,525 acres of land in Tooele County, Utah near the western shore of the Great Salt Lake.

### A. Potential Environmental Liabilities

8. In 2001 the United States commenced an action against MagCorp alleging that the corporation was violating the Subtitle C of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§6901, *et seq* and its implementing regulations, set forth at 40 C.F.R. Parts 260-272, which together comprise the Federal Hazardous Waste Program.

9. The United States alleged that by-products of MagCorp's magnesium production included processing wastes with hazardous constituents such as hexachlorobenzene, polychlorinated biphenyls, dioxin, lead, arsenic, chromium, barium and magnesium hydroxide. According to the United States' First Amended Complaint, thousands of gallons per day of hazardous liquid wastes were discharged into unlined ditches where they were conveyed to a 400-acre evaporative pond at the Tooele County facility; anode dust, a solid waste, was watered down to create a slurry carried though the ditches to the pond; other spent solid wastes containing hazardous constituents were disposed of in unlined pits (called "sumps"), uncovered

residual piles, or in an on-site landfill at or near the facility; and metal-bearing laboratory waste was, until 1997, conveyed to the ditches and ponds on the site.

10. The United States alleged that beginning in 1992, following a compliance inspection of MagCorp's facility, MagCorp had actual notice of the EPA's position that MagCorp's treatment, storage and disposal of certain process wastewater streams generated at its magnesium production facility in Tooele County were in violation of the requirements of RCRA. Upon information and belief, which are based upon pleadings filed by MagCorp and the Untied States in the RCRA lawsuit, in correspondence spanning several years following the compliance inspection, MagCorp acknowledged the EPA's position although the company maintained that the agency was erroneously interpreting its own final regulations.

11. According to allegations of the United States, neither MagCorp, Metals nor Group has ever sought or obtained from the EPA and/or the UDEQ the necessary permits to generate, treat, store and dispose of hazardous wastes at the facility in compliance with the RCRA.

12. The United States seeks $900 million in civil penalties. The United States' allegations, if founded, mean MagCorp was potentially liable for hundreds of millions of dollars in fines, damages and remediation costs for environmental damage beginning as early as 1989.

### B. Transfers to Metals

13. In or about May 1996, Group, in its capacity as sole shareholder, caused Metals to declare a dividend on its common stock totaling $75.7 million (the "Dividend"). This Dividend - followed closely on the heels of a series of dividend payments totaling $13.9 million made to Group during the previous six months, including a $4.1 million dividend on common stock that was paid on May 16, 1996.

14.     Simultaneous with the Dividend declaration, Group caused Metals to announce a redemption of all of its 10% preferred stock owned by Group, at a cost of $8.5 million (the "<u>Stock Redemption</u>").

15.     At the time Metals declared the $75.7 million Dividend and the $8.5 million Stock Redemption, the corporation had less than $35 million in cash and cash equivalents. Moreover, Metals had outstanding long-term indebtedness of $75 million in the form of 12% Senior Notes due 2000 (the "<u>Existing Notes</u>") and restrictions in the trust indenture for the Existing Notes limited the payment of dividends. Therefore, in order to pay the Dividend to Group, Metals would have to repurchase the Existing Notes. On May 24, 1996, Metals made a tender offer for the repurchase of the Existing Notes at 112.75% of their principal amount, a premium of more than $9 million.

16.     To finance the Dividend, Stock Redemption and repurchase of the Existing Notes, Group caused Metals to double its debt. In July 1996 Metals issued 11½% Senior Notes due 2003 (the "<u>Senior Notes</u>") for $150 million. Each of Metals' subsidiaries guaranteed the Senior Notes fully and unconditionally, on a joint and several bases. Both MagCorp and Sabel were already encumbered; they had previously entered into revolving credit facilities secured by substantially all of their non-fixed assets, concurrent with the transaction described above, the revolving credit facilities were increased to a total of $40 million. In December 2000, Sabel was released from its guarantee of the Senior Notes when all of the stock of Sabel was sold to a holding company owed by its then-President and Chief Executive Officer, Keith Sabel. The result was to saddle Metals and MagCorp with the full burden of the debt on the Senior Notes.

17.     The effect of these transactions was to render Metals and its subsidiaries insolvent on a balance sheet basis and to burden the Debtors with debt that reasonably could not be serviced. Prior to the Offering, Dividend and Stock Redemption, total stockholder equity in

Metals was $11.8 million; immediately after these transactions, total stockholder deficit was at least ($74 million).

18. That MagCorp was at risk for potentially enormous environmental liabilities as a result of its generation, treatment, storage and disposal of hazardous wastes was not adequately disclosed in the Offering materials for the Senior Notes nor in any other public filings available to investors and creditors.

## II. Jurisdiction

19. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. Relief Requested

20. By this Application, the Chapter 11 Trustee seeks authorization, pursuant to section 327(a) of the Bankruptcy Code, to retain and employ as his litigation counsel in these Chapter 11 cases the law firm of Beus Gilbert PLLC to represent the Chapter 11 Trustee in any negotiations or litigation that may be required in these cases, as set forth below.

## IV. Basis for Relief

21. The Chapter 11 Trustee believes there exists sufficient evidence of fraud and negligence in the transactions relative to the Offering, the Dividend and related transfers of cash to warrant investigation and actions for recovery.

22. To pursue the causes of action against various third parties with respect to the transactions, the Chapter 11 Trustee has selected the Phoenix-based firm of Beus Gilbert PLLC as litigation counsel because of the firm's expertise, experience and knowledge in litigation arising out of the acts of corporate officers and directors and from services rendered by third parties. Beus Gilbert has successfully pursued many causes of action against officers and

directors, accountants, underwriters and others for accounting malpractice, state and federal securities law violations, and common law claims. In addition, Beus Gilbert also has significant experience representing bankruptcy trustees and debtors' estates.

23. In preparing for its representation of the Chapter 11 Trustee, Beus Gilbert has become familiar with the legal issues with respect to its engagement. The Chapter 11 Trustee believes that Beus Gilbert is both well-qualified and uniquely able to represent him as litigation counsel in pursuing these causes of action.

24. By this Application, the Chapter 11 Trustee seeks approval to retain Beus Gilbert to provide, among other things, the following assistance:

   (a) evaluate the Offering of the Senior Notes, the Dividend and related cash transfers;

   (b) investigate the acts, conduct, assets, liabilities and financial condition of the Debtors and the operation of the Debtors' businesses related to the above transactions;

   (c) commence and prosecute causes of action against the various third parties whose actions contributed to the insolvency of the Debtors' estates; and

   (d) perform such other legal services as may be required and are deemed to be in the interest of the estates in accordance with the powers and duties set forth in the Bankruptcy Code.

25. Beus Gilbert has stated its desire and willingness to act in these cases and render the necessary professional services as litigation counsel for the Chapter 11 Trustee.

26. In order to lessen the risk to the Debtors' estates in paying for the litigation expense against the various third parties, Beus Gilbert has agreed to represent the Chapter 11 Trustee on a contingent fee basis. As detailed in the "Legal Representation Agreement" annexed

to this Application as Exhibit "A," Beus Gilbert will be paid 26% of any gross recoveries recovered within 90 days of filing the Complaint; 34-1/3% of any gross recoveries recovered after the 91st day after the Complaint is filed and before the jury is sworn; 41% of any gross recoveries obtained from the day the jury is sworn; and 50% of any gross recoveries if a retrial is ordered by a trial or appellate court.

27.    In addition, Beus Gilbert has agreed to advance the costs and expenses incurred in the litigation, and that any gross recoveries will first be used to reimburse any costs and expenses before payment of legal fees.

28.    Chapter 11 Trustee believes it is essential to retain Beus Gilbert as litigation counsel because Beus Gilbert has extensive experience and a proven track record in successfully suing third parties in matters arising from fraudulent or negligent transfers, and Beus Gilbert is willing to pursue the causes of action on a contingent fee basis, thus avoiding the risk that the Debtors' estates will have to pay significant litigation expenses, for which they do not have the resources, except out of the proceeds of the litigation.  The Chapter 11 Trustee believes that unless Beus Gilbert can be retained according to the terms and conditions set forth herein, the subject litigation may have to be abandoned due to lack of estate funds.

29.    The Ad Hoc Committee of Renco noteholders, representing the holders of approximately 60% of the outstanding $150 million of Senior Notes, strongly supports the retention of Beus Gilbert to represent the Chapter 11 Trustee as described herein.

30.    Upon information and belief, Beus Gilbert does not represent and does not hold any interest adverse to the Debtors or their creditors in the matters upon which Beus Gilbert is to be engaged by the Debtors other than as represented in the Affidavit of Timothy J. Paris, Esq., a member of the firm of Beus Gilbert, (the "Beus Affidavit") annexed hereto as Exhibit "B."

Accordingly, the Chapter 11 Trustee respectfully requests that this Court approve the retention and employment of Beus Gilbert PLLC as litigation counsel.

31. It is contemplated that Beus Gilbert will seek approval of compensation for its services and reimbursement of its costs and expenses in accordance with (i) the applicable provisions of the Bankruptcy Code, (ii) the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, (iii) the Administrative Order Re: Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases issued by the Southern District of New York Bankruptcy Judges, (iv) the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under Section 330 and dated January 30, 1996, and (v) such procedures as may be fixed by order of this Court.

32. Pursuant to section 328(a) of the Bankruptcy Code, the Chapter 11 Trustee may retain Beus Gilbert on any reasonable terms and conditions.  The Chapter 11 Trustee submits that the retention of Beus Gilbert on the terms and conditions set forth herein are reasonable.

### V. Requirements of Local Rule 9013-1(b)

33. As this Application presents no novel issue of law, the Chapter 11 Trustee respectfully requests that this Court waive, pursuant to Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York, the requirement of filing a separate memorandum of law.

### VI. Notice

34. Notice of this Application has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the official committee of unsecured creditors, (iii) Beus Gilbert, and (iv) those parties entitled to notice pursuant to this

Court's order dated August 8, 2001 establishing certain notice procedures for these cases. The Chapter 11 Trustee submits that no further notice need be given.

**WHEREFORE**, the Chapter 11 Trustee respectfully requests that this Court enter an Order, substantially in the form affixed hereto, approving the retention of Beus Gilbert PLLC as litigation counsel and granting such other and further relief as is just.

DATED:  September 3, 2003.
        New York, New York

                Respectfully submitted,

                /s/Lee E. Buchwald
                LEE E. BUCHWALD
                Chapter 11 Trustee