LEGAL REPRESENTATION AGREEMENT
(Commercial Contingent Fee Arrangement)
Without Costs Retainer

THIS AGREEMENT, effective as of the  10th  day of  September , 2003, in Scottsdale, Arizona, by and between LEE E. BUCHWALD, in his capacity as Trustee for the Bankruptcy Estates of Magnesium Corporation of America, Inc. and Renco Metals, Inc. and not in his individual capacity, whose address is 420 Lexington Avenue, Suite 300, New York, NY 10170-0399, (hereinafter referred to as "Client") and BEUS GILBERT PLLC, 4800 North Scottsdale Road, Suite 6000, Scottsdale, Arizona 85251 (hereinafter referred to as "Counsel").

**1.    SCOPE OF ENGAGEMENT.**

1.1    Matter Involved.  Client has engaged Counsel to undertake the legal representation of Client for the prosecution and/or enforcement of certain claims, rights or causes of action that the Debtors and/or Estates of Renco Metals, Inc. ("Renco") and Magnesium Corporation of America, Inc. ("MagCorp") hold against various persons or entities (hereinafter referred to as the "Matter") including, without limitation:

(a)    parents, subsidiaries or affiliates of Renco and/or MagCorp;

(b)    outside auditors of Renco and/or MagCorp;

(c)    professionals and entities involved with Renco and/or MagCorp in the issuance of securities or debentures, in the rendering of financial advice, or in negotiating the sale of stock or assets; and

(d)    current or former partners, officers, directors, agents or employees of Renco and/or MagCorp or any of the above-referenced entities.

Counsel agrees to provide its legal services in return for the covenants and promises made by Client herein.  It is specifically understood and agreed by Client that Counsel does not, by this Agreement, promise to perform any specific act of legal representation, nor does it promise to obtain any particular result.  Client acknowledges that it has relied upon no oral representations to the contrary in entering into this Agreement.

1.2    Counsel Functions.  By the terms of this Agreement, Counsel will perform such legal services relative to the Matter as may in its judgment be necessary or appropriate to the Matter.  Counsel will not perform legal services other than those specified above without consultation with and authorization from Client.

1.3    Client Functions.  Client agrees to perform the following functions:

(a)    to pay Counsel for the performance of such legal services, and to pay for all expenses incurred in connection therewith, as specified in Section 2 below;

(b)    to cooperate fully with Counsel in representing Client in the Matter;

(c)    such other functions as may be reasonably requested by Counsel from time to time.

      1.4    <u>Authorization and Decision-Making</u>.  Client authorizes and directs Counsel to take all actions which Counsel deems advisable on Client's behalf in this Matter.  Counsel agrees to notify Client of all significant developments and to consult with Client in advance as to any significant decisions attendant to those developments.

## 2.     LEGAL FEES AND EXPENSES.

      2.1    <u>Method of Determining Fees</u>.  Client and Counsel agree that the following method is to be used for determining the amount of legal fees:

      (a)    Client agrees to pay Counsel a fee contingent upon the outcome of the Matter. If recovery is made in this Matter on Client's behalf, Client agrees to pay to Counsel, for legal services rendered, a sum equal to:

| | |
|---|---|
| 26% | of the Gross Recovery by way of settlement or agreement if settlement or agreement is reached within ninety (90) days of the date of this Agreement; or |
| 34-1/3% | of the Gross Recovery if settlement or agreement is reached after ninety (90) days after the date of this Agreement; or |
| 41% | of the Gross Recovery received by settlement or agreement, verdict or judgment after commencement of trial; or |
| 50% | of the Gross Recovery if the Matter is the subject of a retrial as ordered by a trial or appellate court. |

    For purposes of Section 2.1, "Settlement" or "Agreement" shall be construed to mean a fully executed written agreement between Client, or its successor or assign, on the one hand, and any one or more of the named Defendants or other Defendants which may become named or added as parties to any action covered by the Matter.  "Commencement of trial" shall mean the earlier of (i) the first day of jury selection or (ii) if tried without a jury, the first day any party begins an opening statement.

    If there is no recovery, there shall be no fees owed by Client to Counsel for representation in this Matter.  Client agrees, however, that, regardless of recovery, Client is responsible for and will pay all other costs and expenses as described in Section 2.2 herein.

      (b)    Client agrees that, subject to the approval of the Bankruptcy Court, Counsel may deduct from the proceeds of any recovery the applicable fees as agreed upon above, along with all other costs and expenses as described in Section 2.2 herein for which Client is responsible and which remain unpaid at the time the recovery proceeds is received.

      (c)    Counsel's fee shall be computed on the basis of the "Gross Recovery." The Gross Recovery shall mean all cash and non-cash consideration of any kind received by Client, including, but not limited to, punitive damages, attorneys' fees, interest, and the fair market value of any property recovered whether by settlement or judgment, including any non-cash consideration described in section (d) below, without reduction for the fees, charges, and expenses paid by Client or advanced by Counsel in connection with providing legal representation to Client in this Matter.

(d)     Counsel agrees to make no compromise or settlement in this Matter without the approval of Client as to the specific settlement or compromise.  Counsel agrees to notify Client whenever an offer of settlement or compromise is received by Counsel, and to inform Client of the amount of that offer, and the recommendation of Counsel as to the acceptability thereof.  Client agrees to notify Counsel whenever an offer of settlement or compromise is received by Client, and to inform Counsel of the amount and terms of any such offer.

(e)     Client hereby authorizes Counsel to fully investigate the facts and the law relative to the Matter.  Upon the conclusion of such investigation Counsel shall have the discretionary right to determine that it is not feasible to pursue the Matter or any portion thereof, and upon notification to Client of such determination Counsel shall be entitled to withdraw from any further representation of Client pursuant to this Agreement.

(f)     In the event a settlement proposal is made to Client with the affirmative recommendation of Counsel, Counsel shall have the right, if such settlement proposal is rejected by Client, to withdraw, subject to Bankruptcy Court approval, from any further representation of Client pursuant to this Agreement upon written notice thereof by Counsel to Client.  In such event Client agrees to promptly pay Counsel for all costs and expenses incurred pursuant to Section 2.2 hereof prior to the date of such withdrawal.

2.2     Costs and Expenses.

(a)     Client authorizes Counsel to retain and agrees to pay the fees or charges of every other person or entity hired by Counsel to perform necessary services related to the Matter.  Such other persons and entities may include, but are not limited to, court reporters, appraisers, real estate agents, escrow agents, accountants, investigators, expert witnesses, trust officers, stock brokers, title examiners, surveyors, and other attorneys hired for ancillary matters in other localities.  Client authorizes Counsel, in its discretion, to direct such other persons and companies to render statements for services rendered and expenses advanced either directly to Client or to Counsel, in which latter event Client agrees to pay to Counsel the full amount of such statements.

(b)     Client authorizes Counsel to retain persons to serve as expert witnesses and consultants in the Matter.  Such expert witnesses and consultants shall be retained following consultation between Client and Counsel, and after Client's approval, and Client agrees to assist such expert witnesses and consultants in their work on the Matter.

(c)     Client and Counsel acknowledge that the bankruptcy estates are currently without sufficient funds or assets to warrant the payment by Client of costs and expenses as they are incurred in the prosecution of the Matter as described in Section 1.1.  In recognition of this fact, Counsel agrees to advance the costs and expenses incurred in prosecution of the Matter, provided, and the Parties so agree, that such costs and expenses incurred in the prosecution of the Matter shall be recovered from any gross recoveries. Client remains ultimately responsible for the payment of such costs and expenses; however, Beus Gilbert acknowledges and agrees that it will not seek payment of its costs and expenses from the funds that Client is presently holding (the "Dedicated Funds") until Client has fully satisfied all of his commissions and all of the fees and expenses of Client's bankruptcy professionals from the Dedicated Funds.

3

Notwithstanding the foregoing, to the extent client receives funds through the Litigation in excess of the Dedicated Funds, is able to pay his commissions and the fees and expenses of his bankruptcy professionals, and has remaining funds available, Client agrees to reimburse Counsel for expenses and costs previously advanced by Counsel.

(d)    Client has retained Bankruptcy Counsel to represent Client in the Matter. Client agrees that the fees and expenses incurred by Bankruptcy Counsel shall be the obligation of Client and shall not reduce Beus Gilbert's fee as set forth in paragraph 2.1 hereof.

2.3    **Schedule of Billing and Payments**.  Client and Counsel agree to the following schedule of billing and payments for fees and expenses:

(a)    **Fees—Billing**.  Counsel's fees determined by the method described in this Agreement, shall be billed to Client at the above address.

(b)    **Costs and Expenses—Periodic Billings**.  Costs, charges, and expenses paid by Counsel for Client in this Matter will be cumulated and a monthly statement rendered to Client.

2.4    **Information Provided in Statements**.  Counsel agrees to include in the statements sent to Client a general identification of the services of Counsel for which Client is being charged and a specific identification of all other fees, charges, and expenses for which Counsel seeks reimbursement.

2.5    **Section 330 Statement to Bankruptcy Court**.  Counsel agrees to provide to the Bankruptcy Court, as may be required under the Section 330 of the Bankruptcy Code, a general description (excluding anything outside the public domain) of what has been done to produce the Gross Recovery.

2.6    **Payment Directly to Counsel**. The parties agree that, subject to the approval of the Bankruptcy Court, any amounts recovered, whether by settlement, judgment, or otherwise, shall be payable directly to Counsel, to be held in trust.  Counsel may deduct from the proceeds of any recovery the applicable fees as agreed upon above, along with all other costs and expenses as described in Section 2.2 herein for which Client is responsible and which remain unpaid at the time the recovery proceeds are received, and Counsel shall remit all remaining amounts to Client.  At such time as Counsel shall be entitled to pay itself those fees and expenses from such amounts being held in trust, and to remit all remaining amounts (if any) to Client.

**3.    GENERAL MATTERS.**

3.1    **Approval by Bankruptcy Court**.  Client and Counsel agree and understand that Counsel shall seek employment as a professional in the capacity of Litigation Counsel for Client, pursuant to 11 U.S.C. §327(a).  In the event that the Bankruptcy Court does not approve the employment of Counsel as Litigation Counsel, Counsel shall be entitled to withdraw from further representation of Client.  Client agrees to assist Counsel in securing approval as its employment as Litigation Counsel and to fully cooperate in this regard.

3.2    **Information to Be Made Available to Client**.  Counsel agrees to make a diligent effort to keep Client informed at all times as to the status of the Matter and as to the courses of

4

action which are being followed, or are being recommended, by Counsel.  Counsel agrees to make reasonably available to Client for reading in Counsel's office all written materials sent or received by Counsel pertaining to the Matter.  Copies of all such materials will be provided at Client's request and Client's expense.  All of Counsel's work product will be owned by Counsel.

3.3    Conflicting Engagement.  Counsel agrees not to accept, without prior approval from Client, any engagement known by Counsel to be in direct conflict with the interests of Client in the Matter.  If, in the course of representing multiple clients, Counsel determines in its sole discretion that a conflict of interest exists, Counsel will notify all affected clients of such conflict and may withdraw from representing any one or more of the multiple clients to the extent such a withdrawal would be permitted or required by applicable provisions of the Code of Professional Ethics.

3.4    Termination of Representation.  The relationship established by this Agreement is subject to termination only as follows:

(a)    Subject to Court approval, Counsel reserves the right to withdraw from the Matter if Client fails to honor this Agreement, or if Counsel concludes at any time that the Matter does not merit further prosecution, or if any other condition exists which would permit or require under applicable Codes of Professional Responsibility or as permitted by the applicable rules of courts.  Notification of withdrawal shall be made in writing to Client.  In the event of such withdrawal, Client agrees to promptly pay Counsel for all costs and expenses incurred pursuant to Section 2.2 of this Agreement through the date of such withdrawal, subject to Bankruptcy Court approval.

(b)    Client reserves the right to terminate the representation for cause if Counsel fails to honor this Agreement.  Notification of the termination shall be made in writing to Counsel.  In the event of any such termination by Client, Client agrees to promptly pay Counsel for as described in subsection (c) below, plus all costs and expenses incurred pursuant to Section 2.2 of this Agreement prior to the date of such termination, subject to Bankruptcy Court approval.

(c)    Client further reserves the right to terminate the representation without cause, and shall notify Counsel in writing of any such termination.  In the event of any such termination, Counsel's compensation due hereunder shall be based on a continuing contingent fee as provided in this Agreement, to be shared with successor Counsel from any gross recoveries on the basis of relative time spent by Counsel and successor Counsel through the conclusion of the case, plus all costs and expenses incurred pursuant to Section 2.2 of this Agreement prior to the date of such termination.  Successor Counsel must agree in writing to this arrangement.

(d)    Upon termination of this representation for any reason, by either Client or Counsel, Counsel agrees to cooperate with any successor counsel to accommodate a smooth transition of the representation.

3.5    Commencement of Representation.  Representation of Client by Counsel in this Matter will not commence until Counsel receives a copy of this Agreement signed by Client.

3.6    Retention of Files.  Counsel agrees to assert a diligent effort, subject to Section 3.4(d) hereof and causes beyond the control of Counsel, to retain and maintain all major and significant components of the files of Counsel relative to this Matter for a period of five years

following the conclusion of this Matter, and during such time to afford Client reasonable access to such files.

    3.7    <u>Original Documents</u>.  Counsel agrees to deliver to Client at least one executed original counterpart of all original agreements executed during the course of Counsel's engagement relative to the Matters, and to retain in Counsel's files at least one executed counterpart thereof, or a facsimile copy thereof.

    3.8    <u>Complete Integration; Binding Upon All Parties; Severability</u>.  This Agreement contains the entire agreement between Client and Counsel regarding Counsel's handling of the Matters and the fees, charges, and expenses to be paid relative thereto.  This Agreement shall not be modified, nor shall Counsel's contractual obligations with respect to the Matters be enlarged, except by written agreement signed by Client and by a Member of Counsel.  This Agreement shall be binding upon Client and Counsel and their respective heirs, executors, legal representatives, successors, and assigns.  If any portion of this Agreement is determined to be invalid or unenforceable, the remaining portions shall continue to be binding and enforceable in accordance with their terms.

    3.9    <u>Counterparts and Facsimile</u>.  This Agreement may be signed in counterparts and exchanged by facsimile copy by the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

    COUNSEL:    BEUS GILBERT PLLC

    By  <u>/s/Leo R. Beus</u>
      Member
    Date:  <u>9/10/03</u>

    CLIENT:    LEE E. BUCHWALD, TRUSTEE
    Trustee for Magnesium Corporation of America, Inc. and Renco Metals, Inc.

    <u>/s/Lee E.Buchwald</u>
    (Signature)
    Date:<u>September 3, 2003</u>