Objection Date: October 14, 2003 at 4:00 p.m.<br>
Presentment Date: October 15, 2003<br>
Hearing Date: None Scheduled

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036-4003
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Barry N. Seidel (BS-1945)

- and -

CADWALADER WICKERSHAM & TAFT
100 Maiden Lane
New York, New York 10038
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
H. Peter Haveles (HH-8230)

Attorneys for The Renco Group, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>**MAGNESIUM CORPORATION OF AMERICA, et al.,**<br><br>Debtors. | Chapter 7 Case No.<br><br>01-B-14312 (REG)<br><br>(Jointly Administered) |

**LIMITED OBJECTION OF THE RENCO GROUP, INC. TO
THE APPLICATION OF THE CHAPTER 7 TRUSTEE
TO RETAIN BEUS GILBERT PLLC AS
<u>LITIGATION COUNSEL</u>**

TO: THE HONORABLE ROBERT E. GERBER,
    UNITED STATES BANKRUPTCY JUDGE:

The Renco Group, Inc. ("Renco"), by its attorneys, King & Spalding LLP and Cadwalader, Wickersham & Taft, hereby responds to the application dated September 3, 2003 of Lee E. Buchwald (the "Trustee"), the duly appointed Chapter 7 trustee for the estates of the

above-captioned debtors, to retain Beus Gilbert PLLC ("Beus") as Litigation Counsel (the "Application"), and respectfully represents as follows:

1. On August 2, 2001, Renco Metals, Inc. ("Metals") and Magnesium Corporation of America ("Magcorp", and together with Metals, the "Debtors") each commenced a case in this Court under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Renco is the sole shareholder of Metals. Metals is the sole shareholder of Magcorp.

2. By order of this Court dated April 14, 2003, the Trustee was appointed as the Debtors' Chapter 11 Trustee.

3. On September 24, 2003, upon the unopposed motion of the Trustee, the Debtors' Chapter 11 cases were converted to cases under Chapter 7 of the Bankruptcy Code. Though the Application was filed by the Trustee on or about September 3, 2003 (and thus prior to the conversion of the Debtors' cases to Chapter 7), it is now being prosecuted by the Trustee in his capacity as the Debtors' Chapter 7 trustee.

4. On July 31, 2003, apparently in an attempt to avoid the running of the statute of limitations provided by § 546 of the Bankruptcy Code, the Trustee commenced an adversary proceeding in this Court by filing a complaint (the "Complaint") against Renco, certain of Renco's affiliates, and other named and unnamed parties (collectively, the "Defendants") claiming, inter alia, that some or all of the Defendants were liable to the Debtors' estates for prepetition conduct which allegedly constituted fraudulent transfers and other breaches of fiduciary duty (the "Adversary Proceeding"). Prior to the filing by the Trustee of the Application, Beus signed the Complaint as the Trustee's proposed litigation counsel.

5. The Debtors are indebted to Renco for, inter alia, services rendered by Renco to, or for the benefit of, the Debtors, for which Renco has not been paid. Renco has filed a proof of claim against the Debtors.

6. U.S. Magnesium LLC ("US Mag") is an affiliate of Renco. At a hearing held before this Court on June 4, 2002, this Court determined that US Mag was the successful bidder for substantially all of the business assets of Magcorp after an active auction process. US Mag acquired substantially all of Magcorp's business assets on June 24, 2002.

7. The stated purpose for the Trustee's retention of Beus is to prosecute litigation against Renco and certain of its affiliates, lawyers and bankers. This Court has previously recognized[1] that, given that potential causes of action and claims against Renco and certain of its affiliates had been examined by Willkie Farr & Gallagher, on behalf of certain noteholders, and by Chapman & Cutler, on behalf of the Official Committee of Unsecured Creditors appointed in the Debtors' cases, and the disclosures made by Renco in various public filings, there did not appear to be a substantial likelihood that viable claims existed in favor of the Debtors' estates against Renco and its affiliates.[2] Renco respectfully submits that the various assertions in the

---

[1] See, generally, transcript of hearing held before this Court on February 14, 2003 (hereinafter referred to as "Transcript"), a copy of which is annexed hereto as Exhibit "A".

[2] "This case is not, at least on the record presented to me so far, a case about fraud or mismanagement about an incumbent debtor or its counsel. It's not a Hampton Hotel case, where a year or two ago I granted a motion by the U.S. Trustee to convert a case based on the misconduct of the debtor in possession. It's not even, in my view, a bleeding case where I think that since the time of the sale the debtor has been very conscientious in trying to keep costs under control. What is more important, in my view, is the inherent conflict that needs to be addressed by one means or another to insure that the claims, if any, and I underscored the if any, that bondholders or creditors might generally have, are properly investigated and prosecuted. And the uncertainty with respect to administrative claims, and the potential, not the certainty, the potential that the United States or the EPA do prevail in Utah and have administrative claims that could swamp the others. In other words, this case, if anything, is much more like the PSINet Consulting case, where there was no indication that the management of PSINet had improperly captained the PSINet Consulting's ship, but the company claims were such that the thought a trustee was required to insure that any identifiable claims against the corporate parent or the other entities in the corporate family could be properly addressed. I usually prefer STN or Commodore orders to deal with conflicts of that character. I think that more precisely, and in a less heavy-handed way, deal with the concerns that need to be addressed. Here, however, I have unique needs. I have the need not to foreclose creditors from making a 108 argument or a 546(a)(1)(b) argument, although I don't want to pre-judge that in any way. And, frankly, and I want to try to say this as antiseptically as I can, I prefer, frankly, to have an independent trustee consider whether or not to bring claims against the debtor's affiliates or others, rather than the movants, or at least in terms of having the movant's captaining the ship, where some of the claims that they might wish to assert, although they should certainly have the right to assert them, because they go back so far and/or because they relate to a debatable issue of insolvency, are not by any means slam-dunks. My discretion in that regard is formed in part by the fact that the two counsel for the Creditors Committee, Willkie Farr and Gallagher, Chapman and Cutler, both are very capable law firms.

Application regarding the so-called liability of Renco and the other Defendants should be wholly disregarded.

8.  Notwithstanding that Renco is a creditor of the Debtors' estates, as one of the targeted defendants, Renco recognizes that were Renco to object to the Trustee's retention of Beus, the Court might be skeptical of Renco's motives in making such an objection. Accordingly, although Renco believes that it would be imprudent and wasteful of estate assets[3] and of judicial time and resources for the Trustee to engage Beus, Renco does not object to the retention of Beus generally. However, Renco believes the following provisions of Beus' engagement letter (a copy of which is appended as Exhibit A to the Application) (the "Engagement Letter") should not be approved:

> a) <u>The scope of Beus' engagement is overly broad.</u> (<u>See</u> Section 1.1 of the Engagement Letter.) As a matter of Law, the Trustee has no authority to prosecute claims belonging to the Debtors; his authority is limited to property of the Debtors' estates. To the extent that claims exist on behalf of the Debtors (and not their estates), the Trustee has no right to assert any such claims and the Trustee cannot engage Beus to prosecute them.
>
> b) <u>Beus' proposed fees are excessive.</u> (<u>See</u> Section 2.1(a) of the Engagement Letter.) The fee structure proposed by Beus and the Trustee does not provide for

---

The matters of the dividends and even the management fees are matters that were of public record for a long, long time. And the fact that they did not feel compelled immediately to take action causes me to wonder whether the claims – again, I'm certainly not pre-judging them – are not necessarily the slam-dunks that somebody might perceive that they are and the amount potentially to be recovered is very large, any equation that takes into account the likelihood of recovery also must take into account the likelihood of success, which is something that I'm not in a position to pre-judge." <u>Transcript</u> at p. 62 (B. J. Gerber).

[3] Even though the retention of Beus is on a contingent fee basis under the terms of the proposed engagement letter, the Debtors' Chapter 7 estates would appear to still be liable for expenses incurred in connection with the prosecution of the Adversary Proceeding. Moreover, even if Beus is not compensated for his time, the Trustee's bankruptcy counsel may well be paid for time spent in assisting Beus in prosecuting the Adversary Proceeding.

any gradation depending upon the size of any settlement or judgment, leaving open the possibility that Beus may reap a windfall at the expense of the Debtors' creditors.

c) **The Debtors' estates are liable for Beus' costs and expenses, regardless of whether Beus is successful.** (See Section 2.1(a) of the Engagement Letter.) Given the Trustee's likely need for experts and extensive discovery, such costs and expenses will likely be substantial. Directing the Debtors' estates to bear such costs and expenses is seemingly contrary to this Court's prior remarks that it would not countenance the expenditure by the Debtors' estates of substantial estate resources on the prosecution of highly speculative litigation.[4]

d) **Beus may withdraw from representing the Trustee.** (See Section 2.1(e) of the Engagement Letter.) The Engagement Letter provides that Beus may withdraw from its representation of the Trustee, in Beus' absolute discretion, if Beus determines, after investigating the relevant facts and law, that the lawsuit is not feasible. Certainly Beus must have performed this investigation already. If not, having already signed and filed the Complaint, Beus will be subject to appropriate sanctions under Rule 11 of the Federal Rules of Civil Procedure. Beus' withdrawal should only be permitted with this Court's approval.

e) **The Trustee cannot delegate to Beus the responsibility for retaining professionals.** (See Section 2.2(a) and (b)) of the Engagement Letter.) The Engagement Letter would impermissibly allow the Trustee to engage other

---

[4] "I must say, by the way, that with respect to any claims that might be asserted, because of my uncertainties, again without pre-judging, as to their ultimate strength and because of the liquidity condition of this estate, I almost certainly will not approve any legal fees for either litigating or even investigating those claims, unless they are on a contingent fee basis." Transcript at p. 65 (B. J. Gerber).

professional persons without complying with the provisions of § 327 of the Bankruptcy Code. The Engagement Letter purportedly permits Beus, on behalf of the Trustee, to retain and pay the fees of other persons and entities such as: appraisers, accountants, expert witnesses and attorneys.

f)   <u>Any amounts recovered should be paid to the Trustee, not to Beus.</u> (See Section 2.6 of the Engagement Letter.) Beus has no right to payment until Beus' fees are approved by this Court. Moreover, creditors of the Debtors' estates should not have to bear any risk of loss associated with any payments made to Beus, in trust or otherwise.

g)   <u>Beus should not be paid its costs and expenses upon termination.</u> (See Section 3.4 of the Engagement Letter.) This is inconsistent with other provisions of the Engagement Letter as well as this Court's prior comments. Beus' recovery of expenses should be dependent upon Beus' success in augmenting the value of the Debtors' estates.

9.   As a final matter, Renco objects to the many mischaracterizations and misstatements contained in the Application. The Trustee knows, or should have known, that the Court is well acquainted with the facts and circumstances underlying the Adversary Proceeding. It was not necessary for the Application to argue the merits of the Adversary Proceeding as a predicate to the entry of an order approving his retention of Beus and it was wholly inappropriate to do so.

10.   Renco continues to maintain that the allegations of fraud and wrongdoing contained in the Complaint are meritless and lack any factual support. Renco does not believe it to be appropriate to respond to such allegations made in the Application and in the Complaint at this time in the context of an application to retain a contingency fee lawyer. Renco will, however, respond to the Complaint in the appropriate manner and at the appropriate time.

WHEREFORE, Renco respectfully requests that, should this Court determine that it should grant the Application, this Court condition the Trustee's engagement of Beus upon modifying the Engagement Letter consistent with this Response, and grant such other and further relief as is just and proper.

Dated: October 14, 2003
      New York, New York

KING & SPALDING LLP

_____
Barry N. Seidel (BS-1945)

1185 Avenue of the Americas
New York, New York 10036-4003
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

- and -

CADWALADER, WICKERSHAM & TAFT
100 Maiden Lane
New York, New York 10038
H. Peter Haveles (HH-8230)
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

Attorneys for The Renco Group, Inc.