# EXHIBIT B

**SALE AGREEMENT**

**by and between**

**LEE E. BUCHWALD, CHAPTER 7 TRUSTEE OF THE ESTATES OF MAGNESIUM CORPORATION OF AMERICA AND RENCO METALS, INC.**

**as Seller**

**and**

**AEM SPV, LLC**

**as Buyer**

**Dated as of ~~June 22~~August 11, 2016**

# TABLE OF CONTENTS

Page

ARTICLE 1.   DEFINITIONS ................................................................4

Section 1.01   Definitions ................................................................4

ARTICLE 2.   PURCHASE AND SALE OF RENCO LITIGATION INTEREST ......6

Section 2.01   Sale ................................................................6

Section 2.02   Assumed Liabilities ................................................7

Section 2.03   Purchase Price ................................................7

Section 2.04   Higher or Better Offers/Competing Transaction .............7

ARTICLE 3.   THE CLOSING ................................................................8

Section 3.01   Closing ................................................................8

Section 3.02   Seller Deliveries to Buyer ................................................8

Section 3.03   Buyer's Deliveries To Seller ................................................9

ARTICLE 4.   REPRESENTATIONS AND WARRANTIES OF THE SELLER ......9

Section 4.01   Authority Relative to this Agreement ...............................9

Section 4.02   Consents and Approvals ................................................9

Section 4.03   Brokers ................................................................9

ARTICLE 5.   REPRESENTATIONS AND WARRANTIES OF BUYER ..............10

Section 5.01   Authority Relative to this Agreement ...............................10

Section 5.02   Consents and Approvals ................................................10

Section 5.03   No Violations ................................................................10

Section 5.04   Brokers ................................................................11

ARTICLE 6.   COVENANTS ................................................................11

Section 6.01   Access and Information ................................................11

Section 6.02   Additional Matters ................................................11

Section 6.03   Public Announcement ................................................11

Section 6.04   Bankruptcy Court Approvals ................................................12

Section 6.05   Management of the Renco Group Litigation ................................12

(i)

ARTICLE 7.   CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLER AND BUYER ...................................................................12

Section 7.01   Bankruptcy Court Order................................................................12

Section 7.02   Injunctions; Orders....................................................................13

Section 7.03   Rule; Regulation .......................................................................13

ARTICLE 8.   CONDITIONS PRECEDENT TO OBLIGATIONS OF THE SELLER.........................................................................13

Section 8.01   Buyer's Obligations ...................................................................13

Section 8.02   Representations and Warranties....................................................13

ARTICLE 9.   CONDITIONS PRECEDENT TO OBLIGATION OF BUYER ........13

Section 9.01   No Misrepresentation or Breach of Covenants and Warranties......14

Section 9.02   No Restraint or Litigation ..........................................................14

Section 9.03   Final Order ...............................................................................14

ARTICLE 10. TERMINATION, AMENDMENT AND WAIVER ...........................14

Section 10.01 Termination...............................................................................14

Section 10.02 Notice of Termination ................................................................15

Section 10.03 Effect of Termination .................................................................15

ARTICLE 11. GENERAL PROVISIONS ..........................................................15

Section 11.01 Survival of Representations, Warranties, and Agreements.............15

Section 11.02 Damages/Indemnity ...................................................................15

Section 11.03 Notices ....................................................................................16

Section 11.04 Descriptive Headings; Certain Terms ...........................................16

Section 11.05 Entire Agreement, Assignment ....................................................17

Section 11.06 Governing Law; Submission to Jurisdiction ...................................17

Section 11.07 Expenses..................................................................................17

Section 11.08 Amendment ..............................................................................18

Section 11.09 Waiver .....................................................................................18

Section 11.10 Counterparts; Effectiveness ........................................................18

Section 11.11 Severability; Validity; Parties of Interest........................................18

(ii)

## SALE AGREEMENT

**THIS SALE AGREEMENT**, dated as of ~~June 22~~August 11, 2016 (the "**Agreement**"), is made by and between Lee E. Buchwald, as Chapter 7 Trustee (the "**Seller**") of the estates of Magnesium Corporation of America ("MagCorp") and Renco Metals, Inc. ("**Metals**") (MagCorp and Metals together, the "**Debtors**"), and AEM SPV, LLC, a New York limited liability company (the "**Buyer**").

**WHEREAS**, on August 2, 2001 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors remained in possession of their respective properties and management of their respective businesses pursuant to sections 1107 and 1108 of the Bankruptcy Code until April 14, 2003.  On April 14, 2003, the Bankruptcy Court entered an order granting the application of the United States Trustee to appoint the Seller as the Chapter 11 trustee of these cases;

**WHEREAS**, prior to the Seller's appointment as Chapter 7 trustee, on June 24, 2002, substantially all of the Debtors' assets (other than litigation claims) were sold pursuant to section 363 of the Bankruptcy Code to U.S. Magnesium, LLC, an Affiliate of Ira Rennert ("**Rennert**"), Chairman of Metals and The Renco Group, Inc. ("**Renco Group**"), a non-debtor entity which owns Metals;

**WHEREAS**, by order dated September 25, 2003, the Debtors' cases were converted to cases under Chapter 7 of the Bankruptcy Code.  On September 25, 2003, the Seller was appointed Chapter 7 trustee of the Debtors' estates;

**WHEREAS**, since 1993, MagCorp has been a subsidiary of Metals.  Metals is a holding company with no operations of its own.  Metals is or was a wholly owned subsidiary of Renco Group, which is beneficially owned by Rennert, directly or through trusts established by him for the benefit of himself or members of his family (the "**Rennert Trusts**");

**WHEREAS**, in 1996, MagCorp sold $150 million in 11-1/2% senior notes due 2003 (the "**1996 Notes**").  Upon information and belief, Rennert, Renco Group and others acting

1

in concert with them caused more than half of the proceeds of the 1996 Notes to be conveyed to Renco Group in the form of dividends and redemption of preferred stock previously issued by Metals, which was held by Renco Group. Thereafter, the Debtors paid additional funds to insiders in the form of dividends and bonuses. All such conveyances occurred at times when the Debtors were insolvent (or such conveyances rendered the Debtors insolvent);

WHEREAS, on July 31, 2003, the Seller's special litigation counsel, Beus Gilbert PLLC ("**Beus Gilbert**"), commenced adversary proceeding 03-6559 against The Renco Group, Inc., et al. (the "**Renco Group Litigation**"). The claims asserted in the Renco Group Litigation included those based on, *inter alia*, fraudulent conveyance, breach of fiduciary duty, negligence/professional malpractice, breach of contract, negligent misrepresentation, corporate waste and mismanagement, declaration and receipt of unlawful dividends and wrongful redemption of stock in violation of Delaware law, and unjust enrichment;

WHEREAS, the United States District Court for the Southern District of New York withdrew the reference of the Renco Group Litigation from the Bankruptcy Court, *Buchwald v. The Renco Group, Inc., et al.*, 13-cv-07948 AJN;

WHEREAS, a jury trial commenced on February 2, 2015 and concluded on February 27, 2015, at which time the jury returned a verdict in the Seller's favor in the aggregate amount of $118,220,000, consisting of (a) an award of damages against Renco Group in the amount of $101,000,000, (b) an award of damages against Rennert and the Rennert Trusts, jointly and severally, in the amount of $16,220,000, and (c) and an additional award of $1,000,000 in punitive damages against Renco Group;

WHEREAS, on March 16, 2015, District Court Judge Nathan issued a Memorandum & Order determining that prejudgment interest would be applied at the rate of 6% per annum, not compounded, and commencing on the Petition Date;

WHEREAS, on March 23, 2015, after calculating interest on the jury awards, the Clerk of Court entered judgment in the aggregate amount of $214,199,093.70 in the Seller's favor, as follows: (a) against Renco Group in the amount of $184,698,246.58, and (b) against

Rennert and the Rennert Trusts, jointly and severally, in the amount of $29,500,847.12
(*Buchwald v. The Renco Group, Inc., et al.*, 13-cv-07948 AJN, Docket No. 389);

**WHEREAS**, on April 20, 2015, Renco Group, Rennert and the Rennert Trusts
filed a motion under Rules 50 and 59 of the Federal Rules of Civil Procedure asking the District
Court to enter judgment as a matter of law, or in the alternative to order a new trial;

**WHEREAS**, also on April 20, 2015, Beus Gilbert filed a motion under Rule 59 to
amend the judgment, requesting that the rate of prejudgment interest be increased from 6% to the
9% annual rate provided by New York State law, and that interest be calculated from July 2,
2000, the last date the Debtors had paid interest on the 1996 Notes;

**WHEREAS**, by decision and order entered on August 20, 2015 [Docket
No. 423], District Court Judge Nathan ruled on the parties' post-trial motions, as follows:  (a) the
motion by Renco Group, Rennert and the Trustees of the Rennert Trusts for judgment as a matter
of law was granted in part, but only with respect to the Seller's claims for unjust enrichment and
punitive damages, and denied in all other respects; (b) the same Defendants' motion for a new
trial was denied; (c) the remaining Defendants' motion for judgment as a matter of law was
denied as moot; and (d) the Seller's motion to alter or amend the judgment to increase the
amount of prejudgment interest was denied.  District Judge Nathan requested that the Clerk
amend the judgment accordingly.  Renco Group, Rennert and the Trustees of the Rennert Trusts
filed a Notice of Appeal on August 20, 2015;

**WHEREAS**, the Clerk entered an amended judgment on August 24, 2015
[Docket No. 423] (the "**Amended Judgment**") against Renco Group in the amount of
$183,698,246.58 (plus post-judgment interest) and against Ira Rennert in the amount of
$29,500,847.12 (plus post-judgment interest), for an aggregate recovery in the amount of
$213,199,093.70 (plus post-judgment interest);

**WHEREAS**, on September 16, 2015, the Seller filed a notice of cross-appeal, and
the Seller is currently prosecuting his cross-appeal for prejudgment interest under Delaware law
that exceeds the prejudgment interest awarded under New York law (the "**Cross-Appeal**");

3

**WHEREAS**, the Buyer desires to purchase the Renco Litigation Interest (defined in Section 2.01) and the Seller desires to sell, convey, assign and transfer to the Buyer the Renco Litigation Interest, all in the manner and subject to the terms and conditions set forth herein and in accordance with Sections 105 and 363 and other applicable provisions of the Bankruptcy Code; and

**WHEREAS**, the Renco Litigation Interest will be sold pursuant to the Sale Order, and such sale will include the terms and conditions of this Agreement.

**NOW, THEREFORE**, in consideration of the foregoing and the respective representations, warranties, covenants and agreements set forth herein, the parties hereto agree as follows:

article 1.

**DEFINITIONS**

**Section 1.01** <u>Definitions</u>.  In addition to terms defined in the Preamble or the foregoing WHEREAS clauses, the following terms have the meanings specified or referred to in this Section 1.01, and all terms defined in this Agreement shall be equally applicable to both the singular and plural forms.

"**<u>Affiliate</u>**" means, with respect to any Person, any other Person directly or indirectly controlling, controlled by, or under common control with such other Person.  For purposes of this definition, "control" (including, with correlative meanings, the terms "controlled by" and "under common control with") shall mean the possession, directly or indirectly, of the power to direct or cause the direction of management and policies of such person or entity, through the ownership of more than fifty percent of the voting power through voting securities or other equity interests, by contract or otherwise.

"**<u>Auction</u>**" means the auction for the sale of the Renco Litigation Interest conducted pursuant to the Auction Procedures.

4

"**Auction Procedures**" means auction procedures for the sale of the Renco Litigation Interest in form and substance mutually satisfactory to Seller and Buyer, and approved by the Bankruptcy Court, including the Break-Up Fee.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended.

"**Break-Up Fee**" has the meaning set forth in Section 6.04.

"**Closing**" has the meaning set forth in Section 3.01.

"**Closing Date**" has the meaning set forth in Section 3.01.

"**Encumbrance**" means any (a) mortgage, pledge, lien, security interest, charge, hypothecation, security agreement, security arrangement or encumbrance, or other adverse claim against title of any kind; (b) purchase, option, call, or put agreement or arrangement; (c) subordination agreement or arrangement; (d) prior sale, transfer, assignment, or participation by Seller of the Net Proceeds; (e) claim (as that term is defined by the Bankruptcy Code); or (f) agreement or arrangement to create or effect any of the foregoing.

"**Governmental Authority**" means any foreign, federal, state, local or other government, governmental, statutory or administrative authority or official, regulatory body or commission or any court, tribunal, judicial or arbitral body.

"**including**" shall always be read as "including without limitation."

"**Person**" means an individual, corporation, partnership (general or limited), limited liability company, joint stock company, joint venture, association, trust or other entity or organization, including a Governmental Authority or political subdivision or an agency or instrumentality thereof.

"**Purchase Price**" has the meaning set forth in Section 2.03.

"**Renco Litigation Consideration**" means the consideration to be paid by Seller solely from Net Proceeds (as hereinafter defined) on account of the Renco Litigation

5

Interest in an amount equal to the sum of (a) $~~53,750~~50,000,000 plus (b) a ~~10~~13% per annum investment return on the Purchase Price, accruing daily beginning on the one (1) year anniversary of the date of the Closing, and compounding annually.

"**Renco Litigation Interest**" has the meaning set forth in Section 2.01.

"**Sale Order**" means an order of the Bankruptcy Court approving the sale of the Renco Litigation Interest under Section 363 of the Bankruptcy Code, in the form and substance mutually satisfactory to Seller and Buyer.

article 2.

## PURCHASE AND SALE OF RENCO LITIGATION INTEREST

**Section 2.01** <u>Sale</u>.  On the terms and subject to the conditions precedent set forth in this Agreement, at the Closing the Seller shall sell, assign, transfer, convey, and deliver to the Buyer, and the Buyer shall purchase and accept from the Seller, the Seller's rights, title, and interests in the Renco Litigation Interest.  The "**Renco Litigation Interest**" shall consist of the right to receive the Renco Litigation Consideration from the Net Proceeds (as hereinafter defined) of Seller's and/or the Debtors' recoveries from the Amended Judgment, and/or any further proceedings in connection therewith, and the Cross-Appeal, and/or any further proceedings in connection therewith.  "**Net Proceeds**" shall consist of any cash or other consideration Seller and/or the Debtors receive in full or partial satisfaction of the Amended Judgment and the Cross-Appeal, and/or any further proceedings in connection therewith, whether through settlement, enforcement or otherwise ("**Gross Recoveries**"), after deducting from Gross Recoveries the sum of:  (a) 3% of Gross Recoveries on account of the Seller's chapter 7 commissions; (b) an amount equal to the sliding scale contingency fee of Kellogg Huber, Seller's appellate counsel, up to a maximum of Two Million Dollars ($2,000,000); and (c) 41% of Gross Recoveries on account of the contingency fee of Beus Gilbert, Seller's trial counsel.  If the Net Proceeds include non-cash components (e.g., shares of stock) and if the cash components of the Net Proceeds are insufficient for Seller to pay the Renco Litigation Consideration, then Seller shall, (a) at the direction of the Buyer in its sole discretion, pay the Buyer in-kind based on the cash value of such non-cash components, provided Buyer and Seller

6

agree on the value of such non-cash components, or (b) in the absence of agreement on the value
of such non-cash components, Seller shall monetize said non-cash Net Proceeds as soon as
commercially reasonable in a manner expressly agreed to by the Buyer and Seller and pay the
Buyer in cash.  Upon Seller's and/or the Debtors' receipt of any Gross Recoveries, Seller shall
(a) promptly calculate Renco Litigation Consideration and Net Proceeds in the manner set forth
herein, (b) provide three (3) business days' written notice thereof to Buyer, and (c) after
expiration of said notice period, promptly pay the amount of the Renco Litigation Consideration
to Buyer from Net Proceeds.  Seller shall retain all other recoveries from the Renco Group
Litigation for the benefit of the Debtors' estates.  Buyer shall have no recourse against Seller or
the Debtors' estates for the Renco Litigation Consideration, which shall only be payable from the
Net Proceeds of Seller's and/or the Debtors' recoveries from the Amended Judgment and the
Cross-Appeal, and/or any further proceedings in connection therewith.

Section 2.02  Assumed Liabilities.  Buyer shall not assume any debt, liability or
obligation of the Seller of any kind or nature whatsoever.

Section 2.03  Purchase Price.  The purchase price (the "**Purchase Price**") for the
purchase, sale, assignment and conveyance of the Renco Litigation Interest shall be the payment
by Buyer to Seller of Twenty-~~Five~~Six Million Two Hundred Thousand Dollars
($~~25,000~~26,200,000) in immediately available funds. ~~Upon execution of this Agreement,~~ Buyer
~~shall post~~previously posted a good faith deposit in the amount of $2,500,000 (the "**Good Faith
Deposit**").  The Good Faith Deposit ~~shall be~~was wire transferred to the trust account of
Stevens & Lee, P.C., counsel to Seller, and will be credited against the Purchase Price at Closing.
The Good Faith Deposit shall not bear interest, and no party shall be entitled to interest thereon.
In the event this Agreement is terminated by Seller as a result of the Buyer's failure to pay the
balance of the Purchase Price when due hereunder, then the Good Faith Deposit shall be forfeited
to Seller.  In the event this Agreement is terminated for any other reason, then the Good Faith
Deposit shall be promptly returned to Buyer.

Section 2.04  Higher or Better Offers/Competing Transaction.  Seller will conduct
the Auction pursuant to the Auction Procedures to satisfy Seller's obligation to solicit higher or
better offers.  Seller agrees that if, at the conclusion of the Auction, Buyer submits the highest

7

and/or best offer for the purchase of the Renco Litigation Interest, then Seller will seek
Bankruptcy Court approval thereof.  Upon Seller's acceptance of a higher or better offer and
Bankruptcy Court approval thereof:  (a) Seller shall immediately cause the Good Faith Deposit to
be returned to the Buyer; (b) this Agreement shall be null and void with respect to Buyer except
as provided in Section 10.03; and (c) neither party shall have any further rights or obligations
hereunder except as provided in Section 10.03 and, specifically, Buyer shall not be obligated to
serve as a back-up bidder notwithstanding anything in the order approving Auction Procedures.

article 3.

**THE CLOSING**

**Section 3.01**  Closing.  The consummation of the transactions contemplated by
this Agreement (the "**Closing**") shall take place (a) at 10 a.m. within ten business days after the
conditions set forth in Articles 7, 8 and 9 shall have been satisfied or waived or (b) at such place
as shall be agreed by the Buyer and the Seller (the date of the Closing being herein referred to as
the "**Closing Date**").

**Section 3.02**  Seller Deliveries to Buyer.  Subject to fulfillment or waiver of the
conditions set forth in Articles 7, 8 and 9, at Closing Seller shall deliver to the Buyer all of the
following:

(a)  Such deed, bill of sale, and endorsements, and any other instruments of sale,
assignment, transfer and conveyance that, in the reasonable judgment of Buyer, is reasonable and
necessary to effectively vest in Buyer good and valid title to and perfect the interests of the
Buyer in and to, the Renco Litigation Interest; and

(b)  A copy of the Sale Order.

In addition to the above deliveries, Seller shall take all steps and actions as the
Buyer may reasonably request or as may otherwise be necessary to to perfect the Buyer's rights
in and to the Renco Litigation Interest.

8

**Section 3.03**  Buyer's Deliveries To Seller.  Subject to fulfillment or waiver of the conditions set forth in Articles 7, 8 and 9, at Closing Buyer shall (a) authorize delivery of the Good Faith Deposit to Seller, and (b) deliver the balance of the Purchase Price by wire transfer of immediately available funds to an account in the United States specified by Seller at least two business days prior to the Closing.

article 4.

**REPRESENTATIONS AND WARRANTIES OF THE SELLER**

The Seller represents and warrants to the Buyer as follows:

**Section 4.01**  Authority Relative to this Agreement.  Subject to Bankruptcy Court approval, the Seller has the power and authority to execute and deliver this Agreement and to carry out its obligations hereunder.  This Agreement has been duly and validly executed and delivered by the Seller and, upon the entry of the Sale Order, will constitute a valid and legally binding obligation of the Seller.

**Section 4.02**  Consents and Approvals.  No consent, approval, order, or authorization of, or declaration, filing or registration with, any Governmental Authority is required to be made or obtained by the Seller in connection with the execution, delivery and performance by Seller of this Agreement and the consummation of the transactions contemplated hereby, except for consents, orders, approvals or authorizations of, or declarations or filings with, the Bankruptcy Court.

**Section 4.03**  Brokers.  No person is entitled to any brokerage, financial advisory or finder's fee or similar fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Seller.

**Section 4.04**  Title.  If and when Net Proceeds are recovered by Seller, then Seller shall be the sole legal and beneficial owner of and shall have good title to the Net Proceeds, free and clear of any Encumbrance.

9

article 5.

## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to the Seller as follows:

**Section 5.01**  Authority Relative to this Agreement.  Buyer has the authority to execute and deliver this Agreement and to carry out its obligations hereunder.  The execution, delivery, and performance of this Agreement by Buyer and the consummation by Buyer of the transactions contemplated hereby have been duly authorized by all requisite action.  This Agreement has been duly and validly executed and delivered by Buyer and constitutes a valid and legally binding agreement of Buyer, enforceable against Buyer in accordance with its terms.

**Section 5.02**  Consents and Approvals.  Except for consents, approvals or authorizations which may be required under the Bankruptcy Code, no consent, approval, or authorization of, or declaration, filing or registration with, any Governmental Authority is required to be made or obtained by Buyer in connection with the execution, delivery, and performance of this Agreement and the consummation of the transactions contemplated hereby.

**Section 5.03**  No Violations.  Neither the execution, delivery or performance of this Agreement by Buyer, nor the consummation by Buyer of the transactions contemplated hereby, will (a) result in a violation or breach of, or constitute (with or without due notice or lapse of time) a default (or give rise to any right of termination, cancellation, acceleration, vesting, payment, exercise, suspension, or revocation) under any of the terms, conditions or provisions of any note, bond, mortgage, deed of trust, security interest, indenture, license, contract, agreement, plan or other instrument or obligation to which Buyer is a party or by which Buyer or Buyer's properties or assets may be bound or affected, or (b) violate any order, writ, injunction, decree, statute, rule or regulation applicable to Buyer or Buyer's properties or assets, except for violations, breaches, defaults, terminations, cancellations, accelerations, creations, impositions, suspensions or revocations that would not individually or in the aggregate have a material adverse effect on Buyer's ability to complete the transactions contemplated by this Agreement.

10

**Section 5.04** <u>Brokers</u>.  No person is entitled to any brokerage, financial advisory, finder's or similar fee or commission payable by Buyer in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Buyer.

article 6.

## COVENANTS

**Section 6.01** <u>Access and Information</u>.  The Seller shall afford to the Buyer and to its financial advisors, legal counsel, accountants, consultants, and other authorized representatives full and complete access to any and all such information as the Buyer reasonably may request, including all pleadings and other documents or schedules filed with the Bankruptcy Court or District Court.

**Section 6.02** <u>Additional Matters</u>.  Subject to the terms and conditions herein, except as provided by the Bankruptcy Code, the Bankruptcy Rules or any other orders entered or approvals or authorizations granted by the Bankruptcy Court, each of the parties hereto agrees to use all commercially reasonable efforts to take, or cause to be taken, all action and to do, or cause to be done, all things necessary, proper or advisable, including under applicable laws and regulations, to consummate and make effective the transactions contemplated by this Agreement, including using all commercially reasonable efforts to obtain all necessary waivers, consents and approvals required under this Agreement.

**Section 6.03** <u>Public Announcement</u>.  Neither Seller nor Buyer shall, without the approval of the other party, make any press release or other public announcement concerning the transactions contemplated by this Agreement, except as and to the extent that any such party shall be so obligated by law or the rules of any stock exchange, in which case the other party shall be advised and the parties shall use their commercially reasonable efforts to cause a mutually agreeable release or announcement to be issued; provided, that the foregoing shall not preclude communications or disclosures necessary to implement the provisions of this Agreement (including Seller's public announcements concerning Bankruptcy Court approval of this Agreement) or to comply with the accounting and Securities and Exchange Commission disclosure obligations.  Seller agrees not to share the existence of this Agreement with any third

11

party until it files the motion seeking an order of the Bankruptcy Court approving Auction Procedures.

Section 6.04  Bankruptcy Court Approvals.  Seller shall as soon as practicable use its best efforts to obtain an order of the Bankruptcy Court approving Auction Procedures.  The Auction Procedures shall include a break-up fee ("**Break-Up Fee**") in the amount of $1,000,000. The Break-Up Fee shall be paid at the closing of any alternative transaction to the transactions contemplated by this Agreement by the buyer in such transaction.  The Auction Procedures shall also provide, if the Buyer is the highest or best bidder at the Auction, that Seller shall use its best efforts to obtain Bankruptcy Court approval, in the form of the Sale Order, of the transactions described herein.

Section 6.05  Management of the Renco Group Litigation.  Seller shall continue to pursue the Renco Group Litigation unless Seller reasonably determines that the Renco Group Litigation no longer has merit.  Buyer shall have no contractual or other rights to direct, supervise, manage, or otherwise control the Renco Group Litigation.  Buyer shall have no authority to direct Seller or its counsel and shall not request, receive, or otherwise become party to attorney-client privileged communications between Seller and its counsel.  Seller shall have sole authority to accept or reject proposed settlements related to the Renco Group Litigation. Should Seller and its counsel continue the Renco Group Litigation or pursue future litigation, it shall be based on the independent belief that the claims are meritorious and independent of any encouragement or interference from Buyer.  This Agreement in no way constrains Seller's or its counsel's ability to decline to pursue the Renco Group Litigation for any reason, including should Seller or its counsel determine that the Renco Group Litigation is not meritorious.

article 7.

**CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLER AND BUYER**

The respective obligations of each party to effect the transactions contemplated by this Agreement shall be subject to the satisfaction of the following conditions:

Section 7.01  Bankruptcy Court Orders.  The Sale Order and the order approving the Auction Procedures shall have been entered by the Bankruptcy Court and shall be in full

12

force and effect, and all conditions contemplated by the Sale Order to consummate the transactions contemplated hereby shall have been satisfied.

**Section 7.02** Injunctions; Orders.  There shall be no injunction, order, judgment, ruling or decree of any nature of any court or Government Authority of competent jurisdiction that is in effect that prohibits or materially restrains the consummation of the transactions contemplated under this Agreement.

**Section 7.03** Rule; Regulation.  No statute, rule or regulation shall have been promulgated by any Governmental Authority which prohibits the consummation of the transactions contemplated by this Agreement.

article 8.

## CONDITIONS PRECEDENT TO OBLIGATIONS OF THE SELLER

The obligation of the Seller to effect the transactions contemplated by this Agreement shall be subject to the satisfaction or waiver at or prior to the Closing Date of the following additional conditions:

**Section 8.01** Buyer's Obligations.  The Buyer shall have performed in all material respects its obligations under this Agreement required to be performed by the Buyer at or prior to the Closing Date; and

**Section 8.02** Representations and Warranties.  The representations and warranties of Buyer contained in this Agreement shall be true and correct in all material respects as of the Closing Date as if made at and as of such date, except as otherwise contemplated by this Agreement.

article 9.

## CONDITIONS PRECEDENT TO OBLIGATION OF BUYER

The obligation of Buyer to effect the transactions contemplated by this Agreement shall be subject to the satisfaction or waiver at or prior to the Closing Date of the following additional conditions:

06/22/2016 SL1 1421211v2 070187.00005

**Section 9.01**  No Misrepresentation or Breach of Covenants and Warranties. There shall have been no material breach by Seller in the performance of any of its covenants and agreements herein, and each of the representations and warranties of Seller contained or referred to herein shall be true and correct in all material respects on the Closing Date as though made on the Closing Date.

**Section 9.02**  No Restraint or Litigation.  No Action shall have been instituted or threatened to restrain or prohibit or otherwise challenge the legality or validity of the transactions contemplated hereby.

**Section 9.03**  Final Order.  The stay of the Sale Order imposed under Bankruptcy Rule 6004(h) shall have expired and no further stay of the Sale Order shall be in effect.

article 10.

**TERMINATION, AMENDMENT AND WAIVER**

**Section 10.01**  Termination.  This Agreement may be terminated:

(a) by the mutual consent of Buyer and the Seller;

(b) by Buyer in the event that the Seller does not obtain an order of the Bankruptcy Court approving the Auction Procedures, set forth therein, on or before July 18, 2016;

(c) (b)  by Buyer if the Sale Order has not been entered by August 26, 2016;

(d) (c)  by Buyer if the Sale Order has not become a final order (as described in Section 9.03) by September 9, 2016;

(e) (d)  by Seller if the Sale Order has been entered and if all of the other conditions in Articles 7, 8 and 9 have been satisfied, and the Buyer does not proceed with the Closing within ten (10) business days after the last of such conditions has been satisfied;

(f) (e)  by Buyer in the event of any material breach by Seller of any of Seller's agreements, representations or warranties contained herein and the failure of Seller to cure such

14

breach within seven calendar days after receipt of written notice from Buyer requesting such breach to be cured; or

(g)  (f)  by Seller in the event of any material breach by Buyer of any of its agreements, representations or warranties contained herein and the failure of Buyer to cure such breach within seven days after receipt of notice from Seller requesting such breach to be cured.

Section 10.02  Notice of Termination.  Any party desiring to terminate this Agreement pursuant to Section 10.01 shall give notice in writing of such termination to all other parties to this Agreement.

Section 10.03  Effect of Termination.  In the event that this Agreement shall be terminated pursuant to Section 2.04 or this Article 10, all further obligations of the parties under this Agreement (other than Sections 2.02, the last two sentences of 2.03 (i.e., only with respect to the forfeiture or return of the Good Faith Deposit, as applicable), 6.03, 6.04, 11.01, 11.02, 11.06 and 11.07) shall be terminated without further liability of any party to the other, provided that nothing herein shall relieve any party from liability for its willful breach of this Agreement. Neither party shall have any liability whatsoever for terminating this Agreement in accordance with the terms herein.

article 11.

**GENERAL PROVISIONS**

Section 11.01  Survival of Representations, Warranties, and Agreements.  The representations and warranties contained in this Agreement and in any instrument delivered pursuant to this Agreement shall survive beyond the Closing Date.  The covenants contained in Sections 2.01, 2.02, 2.03, 2.04, 6.01, 6.02, 6.03, 6.04, 6.05, 11.02, 11.03, 11.05, 11.06, and 11.07 shall survive the Closing.

Section 11.02  Damages/Indemnity.  Subject to the approval of this Agreement by the Bankruptcy Court, if the Seller breaches this Agreement, the Buyer's damages shall be deemed an administrative priority claim under 11 U.S.C. Sections 503(b) and 507(a)(1)(C).

15

Section 11.03  Notices.  All notices, requests, claims, demands and other communications hereunder shall be in writing and shall be deemed given upon (a) confirmation of receipt of an email transmission, (b) confirmed delivery by a standard overnight carrier or when delivered by hand, or (c) the expiration of three business days after the day when mailed by registered or certified mail (postage prepaid, return receipt requested), addressed to the respective parties at the following addresses (or such other address for a party as shall be specified by like notice):

(a)  If to Buyer, to:

Sugar Felsenthal Grais & Hammer LLP
30 North LaSalle Street, Suite 3000
Chicago, IL 60602
Attention:  Jonathan P. Friedland, Esq.
Email address:  jfriedland@sugarfgh.com

(b)  If to the Seller, to:

Lee E. Buchwald, Trustee
c/o Buchwald Capital Advisors LLC
380 Lexington Avenue, 17th Floor
New York, NY  10168-1799
Email address:  Lbuchwald@buchwaldcapital.com

with a copy to:

Stevens & Lee, P.C.
485 Madison Avenue
20th Floor
New York, New York  10022
Attention:  Nicholas F. Kajon, Esq.
Email address:  NFK@stevenslee.com

Section 11.04  Descriptive Headings; Certain Terms.  The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.  All references to "$" or dollars shall be to United States dollars and all references to "days" shall be to calendar days unless otherwise specified.

16

**Section 11.05**  Entire Agreement, Assignment.  This Agreement (including the other documents and instruments referred to herein) constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, among the parties or any of them, with respect to the subject matter hereof. (including, but not limited to, the Sale Agreement among the parties dated June 22, 2016).  No party shall assign its rights hereunder prior to the Closing without the written consent of the other, except that Buyer may assign its rights prior to the Closing, without the consent of the Seller, to any Person that is an Affiliate of the Buyer.  No such assignment shall relieve the assignor of any of its obligations hereunder.  Following the Closing, any party may assign any of its rights hereunder, but no such assignment shall relieve it of any of its obligations hereunder.

**Section 11.06**  Governing Law; Submission to Jurisdiction.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.  The Buyer and Seller irrevocably and unconditionally consent to submit to the jurisdiction of the Bankruptcy Court for any litigation arising out of or relating to this Agreement and the transactions contemplated thereby (and agree not to commence any litigation relating thereto except in the Bankruptcy Court) until the occurrence of the entry of a final decree or the closing or dismissal of the bankruptcy case, after which time Buyer or Seller may bring a claim in (and each party irrevocably and unconditionally consents to submit to the jurisdiction of) any state or federal court sitting in Chicago, Illinois (and agree not to commence any litigation relating thereto except in such court).

**Section 11.07**  Expenses.  Whether or not the transactions contemplated by this Agreement are consummated, all costs and expenses incurred by Seller in connection with this Agreement and the transactions contemplated hereby shall be paid by Seller.  In the event (a) the Renco Litigation Interest is not sold to Buyer, (b) Buyer has not materially breached this Sale Agreement (or has cured any such material breach within seven days after receipt of notice from Seller requesting such material breach to be cured), and (c) the Renco Litigation Interest is sold to another person in an alternative transaction, then Seller shall promptly reimburse the Buyer for all reasonable, documented out of pocket expenses in an amount not to exceed $50,000 in

17

connection with this Agreement and the transactions contemplated hereby (the "Expense Reimbursement") at the closing of any such alternative transaction and from the proceeds thereof.  The foregoing shall not affect the legal right, if any, that any party hereto may have to recover expenses from any other party that breaches its obligations hereunder.

Section 11.08  Amendment.  This Agreement may not be amended except by an instrument in writing signed on behalf of all the parties hereto.

Section 11.09  Waiver.  At any time prior to the Closing Date, the parties hereto may (a) extend the time for the performance of any of the obligations or other acts of the other parties hereto, (b) waive any inaccuracies in the representations and warranties contained herein or in any document delivered pursuant hereto, and (c) waive compliance with any of the agreements or conditions contained herein.  Any agreement on the part of a party hereto to any such extension or waiver shall be valid only if (and after) set forth in an instrument in writing signed on behalf of such party (and delivered to all other parties hereto).

Section 11.10  Counterparts; Effectiveness.  This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.  This Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.

Section 11.11  Parties of Interest.  Nothing in this Agreement, express or implied, is intended to confer upon any person not a party to this Agreement any rights or remedies of any nature whatsoever under or by reason of this Agreement.

[Signature Page Follows]

06/22/2016 SL1 1421211v2 070187.00005

IN WITNESS WHEREOF, the Seller and Buyer have caused this Agreement to be executed as of the date first above written.


LEE E. BUCHWALD, CHAPTER 7 TRUSTEE

By:_____
Name: Lee E. Buchwald_____
Title:   Chapter 7 Trustee_____


AEM SPV, LLC

By:_____
Name:_ Adam R. Gerchen_____
Title:_   Manager_____

19