**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| MAGNESIUM CORPORATION OF AMERICA, *et al.*, | Case No. 01-14312 (MKV) |
| Debtors. | (Jointly Administered) |

**JOINDER OF AEM TO TRUSTEE'S OMNI REPLY REGARDING SALE OF RENCO LITIGATION**

AEM SPV, LLC files this joinder in support of the Trustee's omnibus reply [Dkt #735] for the reasons set forth below.

1. AEM is a relative stranger to these bankruptcy cases; its sole role is that of the party whose $26.2 million bid was accepted by the Trustee as highest and best at the auction the Trustee conducted on August 11, 2016 in accordance with the court-approved procedures.

2. AEM supports the Trustee's Reply. The legal standard a court must use in deciding whether to approve a §363 sale is straightforward, and the Trustee has clearly carried his burden to show that that standard has been met. AEM will not repeat here what the Trustee already ably argues in his Reply.

3. The Trustee, understandably, focuses his Reply on the situation from his perspective, as fiduciary of these particular estates.

4. Not approving the results of the properly-conducted auction would, however, have reverberations far beyond these particular estates.

5. If potential bidders cannot rely on the sanctity of the § 363 sale process, fewer bidders will show up to bid in such sales resulting in lower bids at § 363 sales generally. *See Matter of Chung King*, 753 F.2d 547, 549-550 (7th Cir. 1985) ("If parties are to be encouraged to

bid at judicial sales, there must be stability in such sales…"), *quoting In re Webcor, Inc.*, 392 F.2d 893, 899 (7th Cir. 1968).

6. This is the underlying policy reason why, once an approved sale process is complied with, the sale to the best bid resulting from that process should be approved absent fraud, unfairness or mistake. *See In re Food Barn Stores, Inc.,* 107 F.3d 558, (8th Cir. 1997) ("The important notions of finality and regularity in judicial auctions are appeased if the court acts consistently with the rules by which the particular sale is conducted and in compliance with the bidders' reasonable expectations."); *In re Gil-Bern Indus.*, 526 F.2d 627, 629 (1st Cir.1975) (court will typically upset results of properly conducted judicial auction only if there was fraud, unfairness or mistake in conduct of sale, or price brought at sale was so grossly inadequate as to shock the conscience of the court); *In Re Stanley Eng'g Corp.*, 164 F.2d 316 (3d Cir. 1947) (to ensure reliance upon judicial sales and to induce bidding at auction, sale will not be set aside for mere inadequacy of price unless inadequacy is so gross as to shock the conscience of the court or unless there are additional circumstances bearing upon fairness of the sale).

7. This is, simply stated, not a new concept. A thorough article on the subject by Bret Rappaport and Joni Green in 2002, CALVINBALL CANNOT BE PLAYED ON THIS COURT: THE SANCTITY OF AUCTION PROCEDURES IN BANKRUPTCY (11 J. Bankr. L. & Prac. 189), delves into detail on the subject. As they wrote:

> Calvinball [a reference to the popular newspaper comic strip]teaches us that although disregarding rules in one case may help one player achieve a victory in that game, such victory is achieved at the expense of all participants in later games, and ultimately at the expense of the game itself.

*Id.* at 190. A copy of the article is attached for the Court's convenience as <u>Exhibit A</u> (and a copy of Judge Barliant's oral decision, discussed below, is attached as an appendix to the article).

8. The article addresses Judge Ronald Barliant's decision in *In re Comdisco*, Case No. 01 B 24795 and 01 B 24845 (Bkrtcy N.D. Ill.), to deny the attempt to set aside the outcome

of an auction held pursuant to court-approved sale procedures, where a losing bidder at the auction indicated an intent to rebid two weeks after its conclusion:

> [T]he value of bankruptcy to this debtor and to all parties and all bankruptcy cases depends in large part on the integrity of the process and the ability to rely on the terms of the Bankruptcy Code and on orders of this Court entered in accordance with that Code. Absent that integrity and ability to rely, bankruptcy becomes a much less valuable tool and may become a sham, a cover, for clever business dealings. Neither the debtor nor any other party can have the advantages of bankruptcy without accepting the burdens.

10. Even if there was a better offer on the table (which there is not), courts that have been called on to consider the issue have long concluded that "[t]he protection of the bankruptcy process is more important than the potential loss of assets for a particular estate." 11 J. Bankr. L. & Prac. at 208, *quoting In re Western Office Partners, Ltd.*, 105 B.R. 631, 637 (Bankr. D. Colo. 1989) *quoting In re Ginco, Inc.*, 105 B.R. 620, 19 Bankr. Ct. Dec. (CRR) 1481 (D. Colo. 1988).

11. Where, as here, the Trustee sought approval for a sale process [Dkt. #710], this Court approved that process [Dkt #724], and the Trustee meticulously followed that approved process, the result is clear: the Court, respectfully, is bound to honor the results of the process.

For all of the reasons stated above, the sale to AEM should be approved.

RESPECTFULLY SUBMITTED

Date: August 22, 2016

AEM SPV, LLC

By:  /s/ Jonathan Friedland
One of its Attorneys

Jonathan P. Friedland, Esq.
**SUGAR FELSENTHAL GRAIS & H**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone:  312.704.9400
Facsimile:   312.372.7951
jfriedland@SugarFGH.com