UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 7 |
| MAGNESIUM CORPORATION OF AMERICA, *et al.*, | Case No. 01-14312 (MKV) |
| | (Jointly Administered) |
| Debtors. | |

### APPLICATION OF CHAPTER 7 TRUSTEE PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014(a) TO RETAIN ROUX ASSOCIATES, INC. AS ENVIRONMENTAL CLAIMS CONSULTANTS

**TO THE HONORABLE MARY KAY VYSKOCIL,
UNITED STATES BANKRUPTCY JUDGE:**

Lee E. Buchwald, acting in his capacity as the chapter 7 trustee (the "**Trustee**") of the estates of Magnesium Corporation of America ("**MagCorp**") and Renco Metals, Inc. ("**Metals**" and together with MagCorp, the "**Debtors**"), through his undersigned counsel, hereby as and for his application to retain Roux Associates, Inc. ("**Roux**") as environmental claims consultants, respectfully sets forth and represents as follows:

### RELIEF REQUESTED

1. Pursuant to section 327(a) of the Bankruptcy Code and Fed. R. Bankr. P. 2014(a), the Trustee seeks authority to employ Roux, effective as of May 25, 2017, the date of execution of the retention agreement annexed hereto as Exhibit A ("**Retention Agreement**"), to assist the Trustee concerning the Environmental Claims (defined below) including without limitation (i) assisting the Trustee in evaluating the Environmental Claims, (ii) participating in negotiations with the relevant environmental agencies concerning the Environmental Claims, and (iii) providing testimony in support of any settlement, or litigation involving, the Environmental

1

Claims. The Declarations of Neil M. Ram, Ph.D. and Lee E. Buchwald, both dated May 25, 2017, in support of the Application are annexed hereto as Exhibits B & C, respectively.

## BACKGROUND

*Bankruptcy Petition and Conversion of Chapter 11 Cases*

2. On August 2, 2001 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code. On August 3, 2001, the Bankruptcy Court entered an order consolidating the Debtors' cases for procedural purposes only (the "**Joint Administration Order**"). [ECF No. 5].

3. On June 24, 2002, substantially all of the Debtors' assets were sold pursuant to section 363 of the Bankruptcy Code to U.S. Magnesium, LLC ("**US Mag**"), an affiliate of Ira Rennert ("**Rennert**"), Chairman and Chief Executive Officer of Metals and The Renco Group, Inc. ("**Renco Group**"), a non-debtor entity that owns Metals.

4. The Debtors remained in possession of their respective properties and continued in the management of their respective businesses pursuant to sections 1107 and 1108 of the Bankruptcy Code until April 14, 2003. On April 14, 2003, this Court entered an order granting the application of the United States Trustee to appoint Mr. Buchwald as the chapter 11 trustee of these cases.

5. By motion dated August 28, 2003, the Trustee sought the Court's approval to convert the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code. The Court approved the motion and converted the cases to cases under chapter 7 by order dated September 24, 2003. On that date Mr. Buchwald was appointed chapter 7 trustee of the Debtors' estates.

*Renco Group Litigation*

6. Since 1993, MagCorp has been a subsidiary of Metals. Metals is a holding company with no operations of its own. Metals is or was a wholly owned subsidiary of Renco Group, which is beneficially owned by Rennert, directly or through trusts established by him for the benefit of himself or members of his family (the "**Trusts**").

7. MagCorp was engaged in the production of magnesium extracted from the brine of the Great Salt Lake in Utah. MagCorp's magnesium production operations were conducted at a facility in Rowley, Utah, adjacent to the southwestern shore of the Great Salt Lake. The Rowley facility was the largest producer of magnesium in the United States, and one of the largest magnesium producers in the world.

8. In 1996, MagCorp sold $150 million in 11½% senior notes due 2003. Rennert, Renco Group and others acting in concert with them caused more than half of the proceeds of such notes to be conveyed to Renco Group in the form of dividends and redemption of preferred stock previously issued by Metals, which was held by Renco Group. The Trustee contends such conveyances rendered the Debtors insolvent, even without giving effect to the Debtors' potential environmental liabilities (detailed below).

9. The Trustee believed that the pre-petition conduct of Rennert, Renco Group and other persons and entities acting in concert with them and/or with entities controlled by them caused substantial harm to the Debtors and their creditors. On July 31, 2003, the Trustee's special litigation counsel, Beus Gilbert PLLC, commenced adversary proceeding 03-6559 against The Renco Group, Inc., *et al.* (the "**Renco Group Litigation**"). The claims asserted in the Renco Group Litigation include those based on, *inter alia*, fraudulent conveyance, aiding and abetting fraudulent conveyance, breach of fiduciary duty, aiding and abetting breach of fiduciary duty,

3

negligence/professional malpractice, breach of contract, negligent misrepresentation, conspiracy, corporate waste and mismanagement, unjust enrichment, and declaration and receipt of unlawful dividends and wrongful redemption of stock in violation of Delaware law.

10. After nearly twelve years of litigation and Defendants' stall tactics, a jury trial commenced on February 2, 2015 before District Judge Allison J. Nathan and concluded on February 27, 2015, at which time the jury returned a verdict in the Trustee's favor in the aggregate amount of $118,220,000, consisting of (a) an award of damages against Renco Group in the amount of $101,000,000, (b) an award of damages against Rennert and the trustees of the Rennert Trusts, jointly and severally, in the amount of $16,220,000, and (c) an additional award of $1,000,000 in punitive damages against Renco Group. The jury did not impose any liability on the other Defendants. The jury verdict in the aggregate amount of $118,220,000 represented nearly 99% of the $118,445,675 that the Trustee had sought to recover in the Renco Group Litigation.

11. On March 16, 2015, District Judge Nathan issued her Memorandum & Order determining that prejudgment interest would be applied at the rate of 6% per annum, not compounded, and commencing on August 2, 2001 (*i.e.*, the Petition Date), and judgment was entered. By decision and order entered on August 20, 2015 [Docket No. 423], District Judge Nathan ruled on the parties' post-trial motions and requested that the District Court Clerk amend the judgment accordingly. Defendants filed a Notice of Appeal on August 20, 2015.

12. The District Court Clerk entered an amended judgment on August 24, 2015 [Docket No. 423] (the "**Amended Judgment**") against Renco Group in the amount of $183,698,246.58 (plus post-judgment interest) and against Rennert in the amount of $29,500,847.12 (plus post-judgment interest), for an aggregate recovery in the amount of $213,199,093.70 (plus

4

SL1 1463312v4 070187.00003

post-judgment interest). On September 16, 2015, the Trustee filed a Notice of Cross-Appeal with respect to issues concerning the calculation of prejudgment interest.

13. On March 8, 2017, the Second Circuit issued its Summary Order and Judgment denying the appeal, affirming the Amended Judgment in the full amount and denying the Trustee's Cross-Appeal. On April 5, 2017, Defendants filed a petition for panel rehearing, or, in the alternative, for rehearing *en banc*. On May 11, 2017, the Second Circuit denied Defendants' petition *in toto*.

*Sale of Interest in Litigation Proceeds*

14. In early 2016, the Debtors' estates only had about $670,000 in the bank and no other assets, but for the Amended Judgment. Creditors are owed over $200 million and had no chance of any recovery other than from the Amended Judgment. The Trustee was concerned with the risk that the Amended Judgment might be reversed on appeal, and that the estates would not have sufficient resources to continue litigating against well-funded adversaries. The Trustee also wanted to be sure that long-suffering creditors would receive recoveries regardless of the outcome of the appeal.

15. Therefore, in March 2016, the Trustee conceived the idea of reaching out to litigation funders to monetize a portion of this significant but speculative asset. With counsel's assistance, the Trustee structured a sale of an interest in net recoveries from the proceeds of the Renco Group Litigation and ran a private sale process, negotiating with multiple litigation funders and ultimately negotiating a stalking horse bid. On June 23, 2016, the Trustee filed a motion for approval of the stalking horse bid (subject to better bids), and ran a public auction process after approval of the bid procedures. The Trustee evaluated the competing bids that were submitted in both the private sale process and the public auction, and participated in negotiations.

16. After two hotly-contested hearings in this Court and one in the District Court, the Trustee obtained Court approval of an agreement whereby he sold an interest in the potential litigation recoveries to an affiliate of the largest litigation funder in the world, Gerchen Keller, for $26.2 million. As a result of the public auction, the net economic benefit to the estates was improved by nearly $5 million, *i.e.*, the consideration received by the estates was increased from $25 million to $26.2 million, while the consideration that may be payable by the estates was reduced from $53,750,000 to $50,000,000. The sale closed on September 8, 2016, at which time the Trustee received $26.2 million ("**Sale Proceeds**").

*Claims Bar Date Order*

17. As a result of the successful sale of an interest in the Renco Group Litigation, the Trustee believed there would be definitely funds available for distribution to creditors. Thus, shortly after receipt of the Sale Proceeds, the Trustee commenced the claims reconciliation process, and obtained the entry of this Court's Order setting March 1, 2017 as the final date for all entities holding claims against the estates to file proofs of claim. By So-Ordered Stipulation and Order dated February 28, 2017, the deadline to file proofs of claim for the United States of America, including its agencies, departments and agents, and the State of Utah was extended to March 15, 2017.

**FILED ENVIRONMENTAL CLAIMS**

18. Upon information and belief, MagCorp's operations gave rise to substantial environmental liabilities. In January 2001, the United States of America, acting at the request of the United States Environmental Protection Agency ("**EPA**"), commenced an action in which the United States of America is seeking injunctive relief and $900 million in civil penalties against the Debtors, Renco Group, the Trusts, Rennert, and US Mag (which was added as a defendant after consummation of the sale of the Debtors' assets) primarily for violations of the Resource

6

Conservation and Recovery Act ("**RCRA**") occurring over a period of at least five years preceding January 2000. The EPA's complaint is predicated on, *inter alia*, illegal treatment, storage and disposal of hazardous wastes.

19. On March 13, 2017, State of Utah Department of Environmental Quality filed separate unsecured claims against MagCorp (Electronic Claims Register 59) and Metals (Electronic Claims Register 21), each in the amount of $55,000,000, for the recovery of future response costs under the Comprehensive Environmental Response, Compensation and Liability Act ("**CERCLA**"). Also on March 13, 2017, State of Utah Natural Resource Trustee filed separate unsecured claims against MagCorp (Electronic Claims Register 62) and Metals (Electronic Claims Register 22), each in the amount of $1,280,000, for damages to Utah natural resources under CERCLA (the four claims, collectively, the "**Utah CERCLA Claims**").

20. On March 15, 2017, the United States Department of Justice ("**DOJ**") filed the following proofs of claim primarily pursuant to CERCLA (and also incorporating by reference and supplementing certain previously-filed claims under RCRA and/or other environmental laws) against MagCorp and Metals, each in the amount of at least $127,601,122.00, not counting any penalty claims, on behalf of the following agencies: (i) Environmental Protection Agency (Electronic Claims Register 60 [MagCorp] and Electronic Claims Register 18 [Metals]); (ii) Department of the Interior, Bureau of Land Management, and United States Fish and Wildlife Services (Electronic Claims Register 61 [MagCorp] and Electronic Claims Register 19 [Metals]); and (iii) Department of the Interior and Bureau of Land Management (Electronic Claims Register 63 [MagCorp] and Electronic Claims Register 20 [Metals]) (collectively, the "**DOJ Claims**;" together with the Utah CERCLA Claims and all previously-filed claims by the foregoing entities under RCRA and/or other environmental laws, the "**Environmental Claims**").

SL1 1463312v4 070187.00003

## BASIS FOR RETENTION OF ROUX

*The Trustee Needs An Environmental Claims Consultant*

21. In addition to the Environmental Claims, the largest claims against the Debtors' estates are the claims of Wilmington Trust as indenture trustee (the "**Indenture Trustee**") in the amount of approximately $169 million, and the claims of the Pension Benefit Guaranty Corporation ("**PBGC**"), which filed multiple unliquidated claims against the Debtors on the theory that they are jointly and severally liable with other entities controlled by Renco Group under ERISA.

22. On April 28, 2017 and May 3, 2017, the Trustee filed fourteen omnibus objections to claims, seeking to resolve approximately 650 claims. At the present time, the Trustee is not objecting to the Environmental Claims or the claims of the Indenture Trustee and PBGC. Instead, to avoid protracted and expensive litigation that would otherwise delay a distribution to creditors and needlessly diminish estate resources, the Trustee intends to attempt to work out a consensual resolution of the Environmental Claims, the claims of the Indenture Trustee, and the claims of the PBGC, either separately or in tandem, as well as issues concerning how recoveries from Defendants and the Sale Proceeds should be allocated between the two Debtors' estates.

23. Assuming full collection of the Amended Judgment and full allowance of administrative expense claims, the Trustee estimates he should have at least $80 million to distribute to pre-petition creditors. Given the large amounts of money at stake, and the impact any resolution of the Environmental Claims will have on the Debtors' estates and the pool of claimants, the Trustee believes it is prudent to add an environmental claims consultant to his team.

24. Specifically, in order for the Trustee to address the Environmental Claims, the Trustee believes that he requires an environmental claims consultant with experience and

8

technical expertise regarding *inter alia* evaluation of recoverable costs and damages pursuant to CERCLA Section 107, which may include: "(A) all costs of removal or remedial action incurred by the United States Government or a State . . . not inconsistent with the national contingency plan; (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and (D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title."

25. The Trustee cannot evaluate the Environmental Claims without the assistance of environmental consultants who have experience with CERCLA, Superfund sites, remediation costs, and other relevant environmental issues. It is also noteworthy that DOJ and Renco Group have their own respective experts and consultants to assist them in evaluating the Environmental Claims, which puts the Trustee at a serious disadvantage.

26. The Trustee, with the assistance of his undersigned general counsel, undertook extensive due diligence to identify, select and retain an environmental consulting firm with a strong reputation and national practice in order to assist the Trustee in achieving an expeditious and fair resolution of the Environmental Claims. The Trustee initially sought to retain Doug Allen, the Trustee's environmental expert for the Renco Group Litigation, to assist with the Environmental Claims. Unfortunately, Mr. Allen changed firms and is no longer in a position to provide the environmental claim consultancy services required by the Trustee.

27. After conducting appropriate due diligence, the Trustee and his counsel met with Dr. Neil M. Ram of Roux and other proposed members of his team. The professional services that Roux and Dr. Ram are to render as environmental claims consultants include, among other

9

things (i) assisting the Trustee in evaluating the Environmental Claims, (ii) participating in negotiations with the relevant environmental agencies concerning the Environmental Claims, and (iii) providing testimony in support of any settlement, or litigation involving, the Environmental Claims. Both Dr. Ram and Roux are eminently qualified for their role as Trustee's environmental claims consultants.

28. Roux provides a broad range of consulting and project management services to solve complex environmental problems. It applies sophisticated scientific, technical, and managerial resources to solve its clients' most challenging environmental problems, and provides consulting and project management services to Fortune 500 companies and public sector clients nationwide. Founded over 35 years ago, Roux's work involves large complex environmental remediation projects, including Superfund sites, chemical and manufacturing plants, and petroleum refineries and distribution terminals. Roux is an employee-owned company with over 300 environmental professionals in a variety of science and engineering disciplines. Roux's services include environmental site assessment, remediation and compliance, litigation support, economic analysis, and insurance technical support, as well as a renowned wetlands practice.

29. Dr. Ram, who will lead the Roux team, has over thirty-five (35) years' experience in environmental engineering, hazardous waste assessment, and remediation. Dr. Ram received his Bachelor of Science and Masters of Science in Environmental Science from Rutgers University; a Masters of Science and Doctorate in Environmental Engineering from Harvard University; and completed Post-Doctorate research at the Technion Israel Institute of Technology.

30. Dr. Ram has been a testifying expert and issued expert opinions in scores of matters, including RCRA/CERCLA, remediation, life-cycle cleanup costs of hazardous waste sites and

Natural Resource Damage claims. Dr. Ram is also a prolific author, having authored, co-authored or contributed to four books and over 25 journal publications and proceedings.

31. Of particular relevance is Dr. Ram's expert testimony in the *Tronox v. Kerr-McGee* adversary proceeding before Judge Gropper, Adv. Pro. 09-1198 (ALG). Dr. Ram and Roux were retained by the plaintiff litigation trust to calculate the cost of remediating 2,746 sites that were formerly owned, operated or used for waste disposal by defendant Kerr-McGee, or where Kerr-McGee was a corporate successor to such an entity; Dr. Ram's expert report provided a range of $1.499 billion to $1.684 billion. Judge Gropper's December 12, 2013 Memorandum of Opinion adopted Dr. Ram's report nearly *in toto* in valuing the environmental liabilities at $1.5 billion. The Court's adoption of Dr. Ram's expert report was integral in a global settlement of nearly $5.1 billion being reached.

32. As set forth in the accompanying Declaration of Dr. Ram, he was previously retained as an employee of Roux by the DOJ in the following matters: (a) United States of America v. The County of Westchester, New York 13-CV-5475 (NSR) (LMS) involving evaluating Westchester County Water District No. 1's ability to come into compliance with the Safe Drinking Water Act implementation of treatment for cryptosporidium under the Long Term 2 Enhanced Surface Water Treatment Rule; and (b) United States of America and The State of Wisconsin vs. NCR Corporation, *et al.* Civil Action No. 10-cv-910-WCG (E.D. Wis.) regarding evaluating the U.S. Government's allocation of response action and natural resource damage costs for the dredging parties associated with the Lower Fox River and Green Bay, Wisconsin. In addition, Roux's client in the Tronox case was allied with DOJ. Dr. Ram and Roux were also retained by the Navajo Nation working with Navajo DOJ and the EPA (Region 9) to prepare a White Paper on Cleaning up Uranium Abandoned Mines within the Navajo Nation. Dr. Ram

11

and Roux were also previously engaged by an outside law firm to represent the interests of the Utah Petroleum Storage Tank Trust Fund related to costs to clean up certain gasoline service stations within the State of Utah. All of these matters have since been completed, and Roux is presently not engaged by the DOJ or any federal or Utah environmental agencies on any matters. Aside from the Tronox matter, these prior DOJ projects amounted to less than 1% of Roux's revenues at the time they were active. Dr. Ram has agreed that he will not undertake any new representations on behalf of DOJ or any federal or Utah environmental agencies while engaged as environmental claims consultant for the Trustee. Prior to joining Roux Associates, Dr. Ram conducted work for the EPA in the following capacities. As a former Assistant Professor of Civil Engineering at the University of Massachusetts (UMASS), Dr. Ram, to the best of his recollection, was awarded grants to conduct various research on water treatment technologies. While employed at UMASS, Dr. Ram was also Director of EPA's Area Training Center. After leaving UMASS to work for a private consulting firm (GCA Technology), Dr Ram worked on a number of EPA-funded contracts including the Technical and Enforcement Support Contract and the Alternative Remedial Contract Strategy Contract involving work under both EPAs RCRA and CERCLA programs.

33. As a result of his due diligence process, and the eminent expertise Roux can offer to expedite the resolution of the Environmental Claims, the Trustee has determined that it is in the best interest of the estates to retain Roux as environmental claims consultants.

*Terms of Roux's Engagement*

34. Pursuant to section 327(a) of the Bankruptcy Code and Fed. R. Bankr. P. 2014(a), the Trustee seeks authority to employ Roux to assist the Trustee concerning the Environmental Claims, pursuant to the terms of the Retention Agreement.

35. The hourly rates for the Roux professionals who will be engaged in this matter are as follows: (i) Neil M. Ram, Ph.D., Executive Vice President, $350;[1] (ii) Nancy Nevins, P.G., Senior Geologist, $280; and (iii) Chase A. Gerbig, Ph.D., Senior Engineer, $235. Roux will also utilize office staff at an hourly rate of $215. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.

36. Roux has provided the Trustee with a cost estimate of between approximately $350,000 and $450,000, provided that the Environmental Claims are not extensively litigated. The foregoing is an estimate, not a guarantee, especially since neither the Trustee nor Roux can gauge at this time how hotly-contested resolution of the Environmental Claims will be. Moreover, as Roux delves more deeply into the project, it may determine that its initial cost estimate was too high or too low. Roux has agreed to keep the Trustee apprised of any changes in the likely cost of the project as it develops more information. The Trustee believes the anticipated cost of Roux's services is reasonable under the circumstances, especially considering the magnitude of the Environmental Claims and the expectation that approximately $80 million will ultimately be available for distribution to pre-petition creditors (based on the assumptions outlined above).

37. Roux will maintain contemporaneous records of their time charges and any actual and necessary costs and expenses incurred in connection with the aforementioned services.

38. All fees and expenses of Roux shall be subject to Bankruptcy Court approval upon appropriate application therefor. The Trustee has agreed that Roux may file interim applications for an allowance of compensation every 120 days.

---

[1] Per the Trustee's request, Dr. Ram agreed to reduce his normal hourly rate of $405.

13

39. Except as disclosed in the accompanying Declaration of Dr. Ram, Roux has no connection with the DOJ, EPA, Debtors, creditors of the estates, or any other party in interest. Roux represents no interest adverse to the Debtors' estates in the matters upon which it is to be engaged, and its employment would be in the best interests of the estates.

40. The Trustee believes that Roux is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, and does not hold or represent any interest adverse to the Trustee or the Debtors' estates; accordingly, the Trustee respectfully submits that Roux is eligible to be retained as his environmental claims consultants, pursuant to section 327(a) of the Bankruptcy Code.

## NOTICE

41. Pursuant to Fed. R. Bankr. P. 2014(a) and Local Bankr. R. 9074-1(b), a copy of this Application is being transmitted to the Office of the United States Trustee, the Debtors, all parties who have filed a notice of appearance and request for service of documents, and all other parties in interest. Prior to filing the Application, on May 17, 2017, the Trustee provided a draft of the Roux retention papers to, and sought comments on one-week's notice from, DOJ, the United States Trustee, the Indenture Trustee and Renco Group. The Roux retention papers incorporate all comments provided by any of the foregoing parties.

SL1 1463312v4 070187.00003

WHEREFORE, the Trustee prays for authority to retain Roux Associates, Inc. as environmental claims consultants, pursuant to the terms of the Retention Agreement, and that he be granted such other and further relief as is just.

Dated: New York, New York
May 25, 2017

                **STEVENS & LEE, P.C.**
                Attorneys for the Chapter 7 Trustee

By: */s/Nicholas F. Kajon*
     Nicholas F. Kajon
     485 Madison Avenue, 20th Floor
     New York, New York 10022
     (212) 319-8500
     nfk@stevenslee.com