**Hearing Date:**
**November 15, 2017 at 10:00 A.M.**

Jeffrey L. Jonas
Brian T. Rice
**BROWN RUDNICK LLP**
One Financial Center
Boston, Massachusetts 02111
(617) 856-8200

- and -

Seven Times Square
New York, New York 10036
(212) 209-4800

*Counsel to the*
*Ad Hoc Noteholder Consortium*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MAGNESIUM CORPORATION OF AMERICA, *et al.*,<br><br>                    Debtors. | Chapter 7<br><br>Case No. 01-14312 (MKV)<br><br>(Jointly Administered) |

**RESERVATION OF RIGHTS OF THE AD HOC NOTEHOLDER CONSORTIUM**
**WITH RESPECT TO THE (I) FOURTH APPLICATION OF STEVENS & LEE, P.C.,**
**COUNSEL TO CHAPTER 7 TRUSTEE, FOR AN INTERIM ALLOWANCE**
**OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AND (II) FIRST**
**AND FINAL APPLICATION OF BEUS GILBERT PLLC, LITIGATION**
**COUNSEL TO CHAPTER 7 TRUSTEE, FOR REIMBURSEMENT OF EXPENSES**

The Ad Hoc Consortium of Holders of the 11½% Senior Notes due 2003 (the "**Notes**") issued under that certain Indenture, dated as of July 1, 1996, among Renco Metals, Inc., as Issuer, Magnesium Corporation of America and Sabel Industries, Inc., as Guarantors, and Wilmington Trust, National Association, as successor Indenture Trustee (the "**Ad Hoc Noteholder Consortium**"[1]) submits the following reservation of rights with respect to the

---

[1] *See Amended Verified Statement of Brown Rudnick LLP Pursuant to Federal Rule of Bankruptcy Procedure 2019*, filed contemporaneously herewith.

(i) *Fourth Application of Stevens & Lee, P.C., Counsel to Chapter 7 Trustee, for an Interim Allowance of Compensation and Reimbursement of Expenses* [Docket No. 895] (the "**Fourth Interim S&L Application**") and (ii) *First and Final Application of Beus Gilbert PLLC, Litigation Counsel to Chapter 7 Trustee, for Reimbursement of Expenses* [Docket No. 893] (the "**BG Expense Application**" and, together, the "**Fee Applications**"):

1. The Court's review of the two Fee Applications is governed by Bankruptcy Code section 330. That provision permits "reasonable compensation for actual, necessary services," 11 U.S.C. § 330(a)(1)(A), and "reimbursement of necessary expenses," *id.* § 330(a)(1)(B). Under the applicable standard, "a retained professional, like a trustee, should only be compensated for services that provide ***a benefit to the unsecured creditors***." *In re All Island Truck Leasing Corp.*, 546 B.R. 522, 535 (Bankr. E.D.N.Y. 2016) (emphasis added).

2. A fee applicant "bears the burden of proof on its claim for compensation," *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y 1997), with the bankruptcy court tasked with reviewing such claims "to protect the estate ***'lest overreaching . . . professionals drain it of wealth which by right should inure to the benefit of unsecured creditors***,'" *id.* (emphasis added) (quoting *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 844 (3d Cir. 1994)); *see also In re Kohl*, 421 B.R. 115, 125 (Bankr. S.D.N.Y. 2009) ("The court has an independent duty to review fee applications and evaluate the compensation requested. The court may reduce or disallow a request if the services provide ***no real benefit to the estate***.") (emphasis added).

3. Whether the applicants can carry their burden of proving an actual benefit to unsecured creditors – principally, the members of the Ad Hoc Noteholders Consortium, which collectively hold more than 75% of the Debtors' Notes and thus are these estates' largest creditor constituency – will ultimately turn on the amount of proceeds of the Chapter 7 Trustee's

2

judgment that is distributed to unsecured creditors. This requires consideration not just of the amounts sought now in the Fee Applications but, necessarily, of *all* amounts that the Chapter 7 Trustee and his professionals seek to surcharge against the judgment.

4.   As summarized below, in addition to costs of repaying the litigation financing – which was procured solely to permit the Chapter 7 Trustee to make interim distributions to estate professionals (not unsecured creditors)[2] – the Chapter 7 Trustee and his professionals have sought or may seek payments that would reduce the amount of the judgment by nearly ***60%***:

| | |
|---|---|
| **Chapter 7 Trustee's Judgment** | **$213,199,093.70** |
| Repayment of Litigation Financing (Net)[3] | $25,503,901.37 |
| Beus Gilbert Contingency Fee (41% of Judgment) | $87,411,628.42 |
| Beus Gilbert Expenses | $2,162,250.50 |
| Kellogg, Hansen Fees and Expenses[4] | $1,612,692.00 |
| Stevens & Lee Fees and Expenses[5] | $4,660,843.42 |
| Chapter 7 Trustee Commission (3% of Judgment) | $6,395,972.81 |
| **Balance Available to Unsecured Creditors**[6] | **$85,451,805.18** |

---

[2] *See, e.g.*, *Joinder of the Ad Hoc Consortium of Renco Metals, Inc. Noteholders in Request to Adjourn Sale Hearing* [Docket No. 740] ¶ 4 (litigation financing "would plainly benefit the Trustee and his retained professionals" but prepetition creditors, "who have been waiting even longer than the Trustee and his counsel for payment . . . , would receive no benefit from a sale").

[3] *See Notice of Receipt and Disposition of Renco Group Litigation Proceeds* [Docket No. 905] at 2 (repaying $50,503,901.37 (gross of $25,000,000 financing)).

[4] *See Application of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., Special Appellate Counsel to Chapter 7 Trustee, for a Final Allowance of Compensation and Reimbursement of Expenses* [Docket No. 894] ¶¶ 8-11 (seeking $1,595,495.96, in addition to $17,196.04 previously awarded).

[5] *See* Fourth Interim S&L Application ¶¶ 7-11 (seeking $1,042,362.49, in addition to $3,618,480.93 previously awarded (gross of holdbacks)).

[6] *See Twenty-Ninth Interim Status Report of Chapter 7 Trustee* [Docket No. 841] ¶ 69 ("Assuming full collection of the Amended Judgment and full allowance of administrative claims, I estimate I should have at least $80 million to distribute to pre-petition creditors.").

3

It bears noting that the Chapter 7 Trustee proposes to pay just one of his many professionals – the Beus Gilbert firm – more than the *entire amount* that may ultimately be distributed to unsecured creditors (approximately $90 million versus approximately $85 million).

5.      The amounts sought in the Fee Applications are, admittedly, a very small portion of the approximately $127.7 million in administrative expenses outlined above. But whether these particular amounts were incurred in connection with "services that provide a benefit to the unsecured creditors," *All Island Truck Leasing*, 546 B.R. at 535, and thus are "reasonable" cannot be evaluated in a vacuum.

6.      Instead, only once the Chapter 7 Trustee and his professionals have submitted final fee applications (including any application for a commission under Bankruptcy Code section 326), and the actual amount available for unsecured-creditor distributions is known, will it be possible for the Court to weigh whether the aggregate administrative expenses survive scrutiny under section 330 – or whether this is an instance of "overreaching . . . professionals drain[ing these estates] of wealth which by right should inure to the benefit of unsecured creditors." *Busy Beaver Bldg. Ctrs.*, 19 F.3d at 844. It suffices, for present purposes, to note that distributing 60% of the estates' assets to the Chapter 7 Trustee and his professionals would plainly fall in the "overreaching" category.

7.      With respect to the Fourth Interim S&L Application and BG Expense Application, the Ad Hoc Noteholder Consortium is accordingly unable at present to take a position as to whether the applicants have carried their burdens of proof under Bankruptcy Code section 330. Thus, the Ad Hoc Noteholder Consortium must reserve all rights it may have (including under Bankruptcy Code section 330(a)(5)) to subsequently challenge any payment made to the applicants in connection with the Fee Applications – whether by seeking an

4

appropriate reduction of any future application or, if necessary, by seeking to recover some or all of the amounts that may be paid to the applicants, in the event that ultimate unsecured-creditor recoveries show that the applicants' "services provide[d] no real benefit to the estate." *Kohl*, 421 B.R. at 125.

Dated:  November 9, 2017

Respectfully submitted,

/s/ Jeffrey L. Jonas
Jeffrey L. Jonas
Brian T. Rice
**BROWN RUDNICK LLP**
One Financial Center
Boston, Massachusetts 02111
(617) 856-8200

- and -

Seven Times Square
New York, New York 10036
(212) 209-4800

*Counsel to the*
*Ad Hoc Noteholder Consortium*

62904749