**Hearing Date and Time: January 11, 2018 at 10:00 a.m.**
**Objection Deadline: January 4, 2018 at 4:00 p.m.**

Bijan Amini
Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
bamini@storchamini.com
jchubak@storchamini.com

*Attorneys for Applicant Beus Gilbert PLLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MAGNESIUM CORPORATION OF AMERICA, *et al.,*<br><br>                    Debtors. | Chapter 7<br><br>Case No. 01-14312 (MKV)<br><br>(Jointly Administered) |

## <u>SUMMARY SHEET</u>

### <u>FINAL APPLICATION OF BEUS GILBERT PLLC, LITIGATION COUNSEL TO CHAPTER 7 TRUSTEE, FOR ALLOWANCE OF COMPENSATION</u>

Total Compensation Previously Requested on Interim Basis: $25,749.75

Total Compensation Previously Allowed on Interim Basis: $25,749.75

Total Additional Compensation Requested by this Application: $88,026,158.86

Total Compensation for Which Final Approval is Requested: $88,051,908.61

Total Expenses Previously Requested on Interim or Final Basis: $2,162,250.50

Total Expenses Previously Allowed on Final Basis: $2,162,250.50

Total Expenses Requested by this Application: $0

This is a:      ___monthly      ___interim      _X_  final application

| ID | Name of Professional | Total Hours | Rates | Rate Effective Dates | Average Rate 2002-2017 | Total Fees | Admitted |
|---|---|---|---|---|---|---|---|
| LRB | Beus, Leo R. | 768.90 | 475.00 | 06/01/1998 - 01/31/2007 | 626.00 | 365,227.50 | 1971 |
| LRB | | 10.00 | 600.00 | 02/01/2007 - 02/28/2008 | | 6,000.00 | |
| LRB | | 53.80 | 650.00 | 03/01/2008 - 06/30/2009 | | 34,970.00 | |
| LRB | | 175.90 | 675.00 | 07/01/2009 - 04/30/2013 | | 118,732.50 | |
| LRB | | 1,684.60 | 730.00 | 05/01/2013 - 06/30/2017 | | 1,229,758.00 | |
| SWB | Bienstock, Steven W. | 105.10 | 400.00 | 08/01/2008 - 04/30/2010 | 425.00 | 42,040.00 | 1969 |
| SWB | | 1.70 | 450.00 | 05/01/2010 - 06/30/2017 | | 765.00 | |
| JMB | Blilie, Jeffrey M. | 256.50 | 345.00 | 07/01/2008 - 04/30/2010 | 345.00 | 88,492.50 | 1996 |
| CCA | Caserta, Christopher A. | 29.80 | 210.00 | 06/01/2001 - 06/24/2005 | 210.00 | 6,258.00 | 1997 |
| TDC | Cox, Trevor D. | 1,635.60 | 190.00 | 08/13/2014 - 06/30/2015 | 195.00 | 310,764.00 | 2014 |
| TDC | | 52.60 | 200.00 | 07/01/2015 - 06/30/2017 | | 10,520.00 | |
| ADC | Crane, Aaron D. | 228.60 | 210.00 | 01/05/2010 - 04/30/2010 | 230.00 | 48,006.00 | 2002 |
| ADC | | 1,759.10 | 250.00 | 05/01/2010 - 08/04/2012 | | 439,775.00 | |
| MCD | Dangerfield, Mark C. | 20.50 | 475.00 | 02/01/2010 - 03/30/2013 | 475.00 | 9,737.50 | 1986 |
| NJD | DiCarlo, Nicholas J. | 5.40 | 290.00 | 06/01/2001 - 06/15/2005 | 290.00 | 1,566.00 | 1986 |
| TAG | Gilson, Thomas A. | 51.50 | 515.00 | 05/01/2013 - 06/30/2015 | 522.50 | 26,522.50 | 1993 |
| TAG | | 9.70 | 530.00 | 07/01/2015 - 06/30/2017 | | 5,141.00 | |
| AG | Griego, Adrianna | 12.40 | 190.00 | 09/22/2014 - 06/30/2015 | 195.00 | 2,356.00 | 2015 |
| AG | | 9.60 | 200.00 | 07/01/2015 - 06/30/2017 | | 1,920.00 | |
| AWH | Hale, Ashley W. | 1,056.30 | 210.00 | 08/05/2013 - 06/30/2015 | 215.00 | 221,823.00 | 2013 |
| AWH | | 33.80 | 220.00 | 07/01/2015 - 06/30/2017 | | 7,436.00 | |
| RHH | Herold, Richard H. | 1.00 | 225.00 | 05/12/2003 - 12/31/2004 | 225.00 | 225.00 | 1990 |
| MLK | Kitchen, Michael L. | 407.80 | 170.00 | 06/01/2001 - 07/09/2004 | 170.00 | 69,326.00 | 1999 |
| ML | Loeb, Malcolm | 1,981.60 | 515.00 | 05/01/2013 - 06/30/2015 | 522.50 | 1,020,524.00 | 1987 |
| ML | | 398.10 | 530.00 | 07/01/2015 - 06/30/2017 | | 210,993.00 | |
| PEL | Lycos, Paul Easton | 59.50 | 270.00 | 05/01/2013 - 01/16/2015 | 270.00 | 16,065.00 | 2008 |
| AEM | McGuinness, A. Erin | 169.40 | 275.00 | 09/02/2009 - 04/30/2010 | 300.00 | 46,585.00 | 2001 |
| AEM | | 175.80 | 325.00 | 05/01/2010 - 02/22/2012 | | 57,135.00 | |
| BJM | McNamara, Brian J. | 5.40 | 175.00 | 08/18/2008 - 09/17/2010 | 175.00 | 945.00 | 2008 |

| ID | Name of Professional | Total Hours | Rates | Rate Effective Dates | Average Rate 2002-2017 | Total Fees | Admitted |
|---|---|---|---|---|---|---|---|
| RTM<br>RTM | Mills, Robert T. | 42.20<br>36.50 | 250.00<br>450.00 | 06/01/2001 - 07/31/2005<br>03/01/2008 - 04/30/2010 | 350.00 | 10,550.00<br>16,425.00 | 1989 |
| TJP<br>TJP<br>TJP<br>TJP<br>TJP<br>TJP<br>TJP | Paris, Timothy J. | 1,020.40<br>85.30<br>42.40<br>167.90<br>150.10<br>20.20<br>46.50 | 280.00<br>350.00<br>375.00<br>450.00<br>475.00<br>515.00<br>530.00 | 09/16/2002 - 07/31/2005<br>08/01/2005 - 01/31/2007<br>02/01/2007 - 02/28/2008<br>03/01/2008 - 04/30/2010<br>05/01/2010 - 04/30/2013<br>05/01/2013 - 06/30/2015<br>07/01/2015 - 06/30/2017 | 425.00 | 285,712.00<br>29,855.00<br>15,900.00<br>75,555.00<br>71,297.50<br>10,403.00<br>24,645.00 | 1979 |
| HEP | Pearson, Hank E. | 412.40 | 475.00 | 05/31/2011 - 04/30/2013 | 475.00 | 195,890.00 | 1992 |
| SRR<br>SRR | Randall, Samuel R. | 7.90<br>0.60 | 160.00<br>200.00 | 02/05/2007 - 02/28/2008<br>03/01/2008 - 04/30/2010 | 180.00 | 1,264.00<br>120.00 | 2006 |
| LCS | Schube, Lindsay C. | 38.10 | 250.00 | 10/01/2007 - 04/30/2013 | 250.00 | 9,525.00 | 2005 |
| HJS | Stirling, Holly J. | 49.10 | 200.00 | 03/01/2008 - 04/30/2010 | 200.00 | 9,820.00 | 2007 |
| ROS<br>ROS<br>ROS<br>ROS | Stirling, Robert O. | 833.50<br>2,416.30<br>623.70<br>2.50 | 200.00<br>215.00<br>225.00<br>250.00 | 08/27/2010 - 04/30/2013<br>05/01/2013 - 06/30/2015<br>07/01/2015 - 05/31/2017<br>06/01/2017 - 06/30/2017 | 222.50 | 166,700.00<br>519,504.50<br>140,332.50<br>625.00 | 2010 |
| SS<br>SS<br>SS<br>SS<br>SS | Stirling, Scot C. | 4.20<br>4.80<br>2,606.10<br>4,332.20<br>810.70 | 315.00<br>450.00<br>475.00<br>515.00<br>530.00 | 06/17/2002 - 07/31/2005<br>03/01/2008 - 04/30/2010<br>05/01/2010 - 04/30/2013<br>05/01/2013 - 06/30/2015<br>07/01/2015 - 06/30/2017 | 457.00 | 1,323.00<br>2,160.00<br>1,237,897.50<br>2,231,083.00<br>429,671.00 | 1979 |
| CPT | Taradash, Christine R. | 18.60 | 250.00 | 06/01/2001 - 07/31/2005 | 250.00 | 4,650.00 | 1988 |
| AMT<br>AMT | Terhune, Abigail M. | 7.80<br>1.00 | 300.00<br>325.00 | 05/01/2010 - 04/30/2013<br>05/01/2013 - 06/30/2015 | 312.50 | 2,340.00<br>325.00 | 2008 |
| RRT | Thomas, Richard R. | 0.70 | 290.00 | 02/15/2002 - 03/09/2005 | 290.00 | 203.00 | 1983 |
| MLT<br>MLT<br>MLT | Torri, Mitzi L. | 364.80<br>1,317.30<br>2,095.80 | 250.00<br>275.00<br>290.00 | 08/01/2005 - 02/28/2008<br>03/01/2008 - 10/23/2009<br>04/21/2003 - 07/31/2005 | 271.67 | 91,200.00<br>362,257.50<br>607,782.00 | 1984 |

| ID | Name of Professional | Total Hours | Rates | Rate Effective Dates | Average Rate 2002-2017 | Total Fees | Admitted |
|----|----------------------|-------------|-------|----------------------|------------------------|------------|----------|
| NJW<br>NJW | Wilde, Nishan J. | 2,664.50<br>138.20 | 200.00<br>210.00 | 03/24/2015 - 06/30/2015<br>07/01/2015 - 02/20/2017 | 205.00 | 532,900.00<br>29,022.00 | 2012 |
| LRW<br>LRW | Williams, L. Richard | 7.00<br>0.70 | 475.00<br>530.00 | 03/01/2008 - 04/30/2013<br>07/01/2015 - 06/30/2017 | 502.50 | 3,325.00<br>371.00 | 1985 |
| BMW<br>BMW<br>BMW | Worthen, Britton M. | 404.70<br>39.50<br>1.90 | 350.00<br>380.00<br>395.00 | 05/01/2010 - 04/30/2013<br>05/01/2013 - 06/30/2015<br>07/01/2015 - 09/11/2015 | 375.00 | 141,645.00<br>15,010.00<br>750.50 | 2000 |
| RAW | Wright, Roger A. | 86.60 | 200.00 | 04/02/2004 - 09/30/2005 | 200.00 | 17,320.00 | 1991 |
| RLY | Yosha, Rachel L. | 558.00 | 275.00 | 09/08/2003 - 06/04/2004 | 275.00 | 153,450.00 | 1987 |

Other Timekeepers (Paralegals, Document Assistants, etc.)

| ID | Name of Professional | Total Hours | Rates | Rate Effective Dates | Average Rate 2002-2017 | Total Fees | Admitted |
|----|----------------------|-------------|-------|----------------------|------------------------|------------|----------|
| KMA | Acotto, Kellie M. | 207.10 | 70.00 | 04/01/2014 - 04/09/2015 | 70.00 | 14,497.00 | N/A |
| MPA<br>MPA | Allen, Mckenzie, P. | 11.00<br>3.70 | 35.00<br>40.00 | 10/14/2010 - 11/16/2010<br>11/17/2010 - 03/25/2011 | 37.50 | 385.00<br>148.00 | N/A |
| JCA | Anderson, James C. | 228.40 | 30.00 | 08/11/2003 - 09/20/2004 | 30.00 | 6,852.00 | N/A |
| JBB | Bingham, Jamie | 59.00 | 40.00 | 02/10/2003 - 12/31/2003 | 40.00 | 2,360.00 | N/A |
| TAB | Bobeck, Tawnie A. | 1.00 | 40.00 | 03/13/2006 - 07/14/2006 | 40.00 | 40.00 | N/A |
| DLB<br>DLB | Brandt, Danna L. | 0.90<br>2.30 | 130.00<br>150.00 | 11/11/2002 - 11/30/2006<br>12/01/2006 - 04/30/2010 | 140.00 | 117.00<br>345.00 | N/A |
| BAB | Burton, Brittney A. | 157.30 | 25.00 | 05/27/2003 - 01/31/2007 | 25.00 | 3,932.50 | N/A |
| DMC | Cropper, Daniel | 5.00 | 40.00 | 11/17/2010 -12/09/2011 | 40.00 | 200.00 | N/A |
| BAD | Dewey, Brittney A. | 14.50 | 40.00 | 06/01/2009 -12/08/2009 | 40.00 | 580.00 | N/A |
| DBD<br>DBD<br>DBD | Dewey, D. Bart | 411.00<br>660.30<br>1,999.40 | 180.00<br>190.00<br>205.00 | 06/01/2001 - 04/30/2010<br>05/01/2010 - 04/30/2013<br>05/01/2013 - 06/30/2017 | 191.67 | 73,980.00<br>125,457.00<br>409,877.00 | N/A |
| JMD | Dewey, Jessie M. | 48.70 | 50.00 | 09/19/2011 - 04/30/2013 | 50.00 | 2,435.00 | N/A |
| LCD<br>LCD | Dobson, Linda C. | 1.50<br>22.00 | 140.00<br>150.00 | 12/04/2006 - 02/28/2008<br>03/01/2008 - 04/30/2010 | 145.00 | 210.00<br>3,300.00 | N/A |
| KSF | Fratto, Kathleen S. | 45.60 | 40.00 | 05/17/2004 - 09/02/2004 | 40.00 | 1,824.00 | N/A |
| MTG | Gale, Mark T. | 0.50 | 175.00 | 05/07/2014 - 06/30/2017 | 175.00 | 87.50 | N/A |
| JJG<br>JJG | Goggin, Jeffrey J. | 71.80<br>15.60 | 130.00<br>160.00 | 11/11/2002 - 11/30/2006<br>05/01/2010 - 04/30/2013 | 145.00 | 9,334.00<br>2,496.00 | N/A |
| TSG | Goy, Traci S. | 8.00 | 160.00 | 11/11/2002 - 04/30/2013 | 160.00 | 1,280.00 | N/A |

| ID | Name of Professional | Total Hours | Rates | Rate Effective Dates | Average Rate 2002-2017 | Total Fees | Admitted |
|---|---|---|---|---|---|---|---|
| SFH | Hayduke, Stephanie F. | 1.50 | 45.00 | 05/01/2010 - 08/19/2011 | 45.00 | 67.50 | N/A |
| KMH | | 78.50 | 55.00 | 03/01/2008 - 04/30/2010 | | 4,317.50 | |
| KMH | Hullinger, Kristen M. | 1,263.50 | 65.00 | 05/01/2010 - 04/30/2013 | 63.33 | 82,127.50 | N/A |
| KMH | | 2,310.40 | 70.00 | 05/01/2013 - 06/30/2017 | | 161,728.00 | |
| KMK | Kelly, Kathleen M. | 5.00 | 70.00 | 08/11/2014 - 06/30/2017 | 70.00 | 350.00 | N/A |
| DLL | Lennick, Dalbert A. | 82.50 | 40.00 | 03/15/2002 - 08/04/2003 | 40.00 | 3,300.00 | N/A |
| JNB | | 292.00 | 40.00 | 05/27/2004 - 01/31/2007 | | 11,680.00 | |
| JNB | Neal-Byrd, Julie | 183.00 | 45.00 | 02/01/2007 - 02/28/2008 | 46.67 | 8,235.00 | N/A |
| JNB | | 94.00 | 55.00 | 03/01/2008 - 11/11/2008 | | 5,170.00 | |
| DJN | Nichols, Drew J. | 218.70 | 80.00 | 08/02/2013 - 05/01/2015 | 80.00 | 17,496.00 | N/A |
| RJP | Pello, Richard J. | 3,742.00 | 160.00 | 05/01/2010 - 04/30/2013 | 167.50 | 598,720.00 | N/A |
| RJP | | 962.00 | 175.00 | 05/01/2013 - 06/05/2014 | | 168,350.00 | |
| EAP | Pleskovitch, Elizabeth A. | 6.50 | 40.00 | 06/01/2001 - 09/02/2004 | 40.00 | 260.00 | N/A |
| CJP | Porter, Curtis J. | 4.00 | 50.00 | 07/11/2001 - 08/12/2011 | 50.00 | 200.00 | N/A |
| SEQ | Quinton, Suzzanne E. | 11.50 | 110.00 | 06/01/2001 - 04/30/2010 | 117.50 | 1,265.00 | N/A |
| SEQ | | 14.90 | 125.00 | 05/01/2010 - 06/30/2017 | | 1,862.50 | |
| MBR | Roberts, Matthew B. | 22.50 | 50.00 | 10/20/2007 - 01/07/2013 | 50.00 | 1,125.00 | N/A |
| BMR | Ruess, Bess M. | 422.50 | 50.00 | 06/01/2003 - 01/31/2007 | 52.50 | 21,125.00 | N/A |
| BMR | | 59.80 | 55.00 | 02/01/2007 - 06/20/2014 | | 3,289.00 | |
| HS | Solhaug, Hazel A. | 514.50 | 140.00 | 04/11/2006 - 06/26/2009 | 140.00 | 72,030.00 | N/A |
| TKS | | 59.00 | 50.00 | 06/01/2003 - 01/31/2007 | | 2,950.00 | |
| TKS | Sorma, Toni K. | 3.00 | 65.00 | 03/01/2008 - 04/30/2010 | 67.50 | 195.00 | N/A |
| TKS | | 20.50 | 75.00 | 05/01/2010 - 04/30/2013 | | 1,537.50 | |
| TKS | | 51.20 | 80.00 | 05/01/2013 - 06/30/2017 | | 4,096.00 | |
| BAS | | 50.60 | 65.00 | 06/01/2001 - 01/31/2007 | | 3,289.00 | |
| BAS | Stine, Beverly A. | 376.70 | 75.00 | 03/01/2008 - 04/30/2010 | 75.00 | 28,252.50 | N/A |
| BAS | | 184.90 | 85.00 | 05/01/2010 - 11/09/2012 | | 15,716.50 | |
| ROS | Stirling, Robert O. | 6.50 | 30.00 | 06/13/2005 - 05/31/2006 | 30.00 | 195.00 | N/A |
| TBS | Stirling, Talia B. | 126.00 | 40.00 | 09/02/2008 - 07/24/2009 | 40.00 | 5,040.00 | N/A |
| KS | Stoll, Kristine L. | 3.50 | 30.00 | 03/22/2004 - 09/02/2004 | 30.00 | 105.00 | N/A |
| KJS | Strecker, Kristen J. | 4.30 | 50.00 | 02/24/2012 - 04/30/2013 | 50.00 | 215.00 | N/A |
| ES | | 160.50 | 75.00 | 08/22/2011 - 04/30/2013 | | 12,037.50 | |
| ES | Sulejmani, Elvis | 1.50 | 80.00 | 05/01/2013 - 07/16/2013 | 110.00 | 120.00 | N/A |
| ES | | 801.50 | 175.00 | 07/17/2013 - 6/30/2017 | | 140,262.50 | |
| KRT | Thompson, Krystal R. | 69.70 | 100.00 | 03/30/2015 - 06/30/2017 | 100.00 | 6,970.00 | N/A |

| ID | Name of Professional | Total Hours | Rates | Rate Effective Dates | Average Rate 2002-2017 | Total Fees | Admitted |
|----|---------------------|-------------|-------|----------------------|------------------------|------------|----------|
| TAV | | 145.00 | 150.00 | 03/01/2008 - 04/30/2010 | | 21,750.00 | |
| TAV | Velic, Taiba | 2,765.70 | 160.00 | 05/01/2010 - 04/30/2013 | 161.67 | 442,512.00 | N/A |
| TAV | | 3,114.70 | 175.00 | 05/01/2013 - 04/10/2015 | | 545,072.50 | |
| HMW | Walla, Hannah O. | 1.40 | 35.00 | 06/02/2008 - 10/01/2009 | 35.00 | 49.00 | N/A |
| JKW | Walz, Jason K. | 5.50 | 150.00 | 01/01/2009 - 04/30/2010 | 155.00 | 825.00 | N/A |
| JKW | | 3.50 | 160.00 | 05/01/2010 - 07/29/2011 | | 560.00 | |
| WBW | | 22.10 | 145.00 | 06/01/2001 - 11/30/2006 | | 3,204.50 | |
| WBW | Wise, Wendy B. | 25.50 | 160.00 | 03/01/2008 - 04/30/2010 | 166.67 | 4,080.00 | N/A |
| WBW | | 58.90 | 195.00 | 05/01/2013 - 6/30/2017 | | 11,485.50 | |
| DNY | Yrastorza, Dana N. | 45.50 | 35.00 | 09/29/2009 - 02/04/2010 | 35.00 | 1,592.50 | N/A |
| | Totals through 6/30/2017 | **54,991.80** | | | | **$ 14,922,965.00** | |

Bijan Amini
Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
bamini@storchamini.com
jchubak@storchamini.com

*Attorneys for Applicant Beus Gilbert PLLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| MAGNESIUM CORPORATION OF AMERICA, *et al.*, | Case No. 01-14312 (MKV) |
| Debtors. | (Jointly Administered) |

### FINAL APPLICATION OF BEUS GILBERT PLLC, LITIGATION COUNSEL
### TO CHAPTER 7 TRUSTEE, FOR ALLOWANCE OF COMPENSATION

TO THE HONORABLE MARY KAY VYSKOCIL,
UNITED STATES BANKRUPTCY JUDGE:

Beus Gilbert PLLC ("Beus Gilbert"), litigation counsel to Lee E. Buchwald, as chapter 7 trustee (the "Trustee") for the estates of Magnesium Corporation of America ("MagCorp") and its parent, Renco Metals, Inc. ("Metals," and together with MagCorp, the "Debtors"), hereby applies for final allowance of compensation for services rendered in connection with the Renco Group Litigation (defined below), in the amount of $88,051,908.61, and states:

### INTRODUCTION

1.      Beus Gilbert, having obtained a $213.2 million judgment on behalf of the Trustee, seeks final allowance of its attorneys' fees, under the terms of the Legal Representation Agreement, dated September 10, 20013, between Beus Gilbert and the Trustee (the "LRA"), annexed as Exhibit A to the Trustee's application to employ Beus Gilbert [ECF No. 417]

1

("Application"), and approved by this Court by Order, entered October 31, 2003 [ECF No. 448]

("Retention Order").

2.     The adversary proceeding Beus Gilbert prosecuted on the Trustee's behalf was a

case no other law firm would take.  Before the Complaint was filed in July 2003, Judge Robert

E. Gerber, then presiding over the Debtors' chapter 11 cases, expressed grave reservations about

the litigation, stating in open Court that the action was not "by any means [a] slam dunk," and

that two national law firms—Willkie, Farr & Gallagher LLP and Chapman & Cutler LLP,

representing an ad hoc group and the Creditors' Committee, respectively—concluded that there

did not appear to be a substantial likelihood viable claims existed against the Debtors' parent,

The Renco Group, Inc. ("Renco Group"), or its affiliates.  Based largely on those opinions and

on the illiquidity of the estates, Judge Gerber stated "I will almost certainly not approve any legal

fees for either litigating or even investigating those claims, unless they are on a contingent fee

basis."  Feb. 14, 2003 Tr. 63-66 [ECF No. 385].

3.     Beus Gilbert took the case anyway and, after a month-long jury trial before the

District Court in February 2015, judgment was entered on the jury's verdict on March 23, 2015,

which judgment was amended on August 19 and September 25 of that year.  The judgment was

subsequently affirmed by the Second Circuit by Summary Order, entered March 8, 2017.

682 Fed. App'x 24.  Certiorari was denied by the Supreme Court on October 10, 2017,

No. 17-228, 2017 WL 3456824, and the Trustee filed a distribution notice on October 31, 2017

[ECF No. 905].

4.     The LRA provides for Beus Gilbert to receive, as compensation, pursuant to

Bankruptcy Code section 328, attorneys' fees in the amount of "41% of the Gross Recovery

received by settlement or agreement, verdict or judgment after commencement of trial."

The gross amount recovered by the Trustee on account of the judgment was $214,697,948.45. 41% of that amount is $88,026,158.86 which, together with a $25,749.75 prior interim fee award, is the amount of compensation for which Beus Gilbert seeks final approval.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this application under 28 U.S.C. §§ 157 and 1334(b).  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this district under 28 U.S.C. §§ 1408-09. The statutory bases for the relief sought herein are Bankruptcy Code sections 328 and 330, Bankruptcy Rule 2016, and Local Bankruptcy Rules 2016-1 and 2016-2.

## BACKGROUND

### I.     ABOUT BEUS GILBERT

6.     Under the leadership of senior member Leo R. Beus, Beus Gilbert has been representing bankruptcy trustees in adversary proceedings for many years.  In adversary proceedings in a dozen major bankruptcies in eight different states, Beus Gilbert has obtained settlements and/or judgments totaling more than $1 billion for debtors' estates.  (Declaration of Leo R. Beus (the "Beus Decl.") ¶¶3-4.)

7.     In every case in which Beus Gilbert has represented bankruptcy trustees, the firm has undertaken the representation on a contingency fee basis and Mr. Beus has insisted that the firm's fee arrangement with the trustee be approved by the Court before Beus Gilbert undertakes the litigation.  (*Id*. ¶5.)

8.     Invariably, these cases involved a lengthy representation, with complex legal and factual issues, and extreme risk for the firm.  These cases have typically involved hotly contested legal and factual issues, extensive motion practice, millions of pages of documents, extensive

3

discovery involving dozens of depositions and, in some cases, over a dozen experts. The defendants have been large law firms, accounting firms, investment banks, corporations, and directors and officers. They have always been represented by national, prestigious law firms. (*Id*. ¶6.)

## II.    BEUS GILBERT IS EMPLOYED UNDER SECTION 327 AND THE TERMS OF ITS COMPENSATION ARE APPROVED UNDER SECTION 328(a)

9.    These cases were originally commenced as voluntary chapter 11 cases on August 2, 2001 (the "Petition Date").

10.    Mr. Beus was first approached to serve as litigation counsel in September 2002 by Citadel Investment Group, a senior noteholder. (Beus Decl. ¶8.)

11.    On March 7, 2003, on the motion of the United States Trustee, this Court entered an order directing the appointment of a chapter 11 trustee for the Debtors' estates [ECF No. 386].

12.    On April 14, 2003, this Court entered an order appointing Mr. Buchwald chapter 11 trustee [ECF No. 400].

13.    Following his appointment, Mr. Beus engaged Mr. Buchwald and his counsel, Nicholas F. Kajon, regarding the terms under which Beus Gilbert would consider representing Mr. Buchwald, in prosecuting certain claims (described below) (the "Renco Group Litigation"). (Beus Decl. ¶10.)

14.    On September 24, 2003, on motion of Mr. Buchwald, this Court entered an order converting these cases to ones under chapter 7 [ECF No. 419], whereupon the United States Trustee appointed Mr. Buchwald chapter 7 trustee [ECF No. 421].

15.    On September 15, 2003, the Trustee filed the Application, which sought to employ Beus Gilbert as litigation counsel, pursuant to section 327 of the Bankruptcy Code, on a

4

contingency fee basis, on terms set forth in the LRA, pursuant to section 328(a), to prosecute the Renco Group Litigation.

16.     Pursuant to Section 2.2(c) of the LRA, Beus Gilbert agreed to advance the costs and expenses incurred in prosecuting the litigation, without interest, as requested by the United States Trustee (as described below), and Beus Gilbert further agreed to subordinate its right to repayment of costs and expenses to payment of the Trustee's statutory commissions and the fees and expenses of his bankruptcy professionals.

17.     The Trustee noted in the Application that Beus Gilbert was the only firm he could find that would take the case, that the engagement was "strongly supported" by an ad hoc group holding 60% of the $150 million of outstanding senior notes (the "Ad Hoc Group"), and "the retention of Beus Gilbert on the terms and conditions set forth herein are reasonable." (Application ¶¶28-32.)[1]

18.     Beus Gilbert also secured approval of its employment from the United States Trustee, which considered Beus Gilbert's standard LRA and demanded many changes to it, all of which Beus Gilbert readily agreed to, except for one—that Beus Gilbert remove its standard provision that if Beus Gilbert were successful, interest must be paid on unpaid balances for costs and expenses, even though expenses would not need not be paid by the estates if there was no recovery.  (Beus Decl. ¶15.)  Even though striking that provision meant Beus Gilbert would be solely responsible for funding the litigation over the course of many years, in addition to advancing all expenses incurred in prosecuting the case, the United States Trustee would not

---

[1] The Ad Hoc Group was comprised of AIG, Carlyle, Citadel, and RCG Carpathia [ECF No.  447]. Although no overlap exists between its members and those of the "ad hoc noteholder consortium" now represented by Brown Rudnick LLP [ECF No. 910] (the "Ad Hoc Consortium"), whose members are Jefferies, Merrill Lynch, New Generation Advisors, and The Seaport Group, the former plainly

consent to an LRA that included that clause, and instead suggested that Beus Gilbert instead increase its contingent fee award upon settlement (33-1/3%) or verdict/judgment (40%) by one percentage point.  Although this change shifted additional risk to Beus Gilbert, Mr. Beus agreed to it.  (*Id.* ¶16.)   As a result, the Trustee was able to advise Judge Gerber that the United States Trustee "has no objection to the form of [retention] order." (*Id.* ¶¶17-18.)

19.    The only person to object to the retention was Renco Group.  That objection noted the opinions of Willkie Farr and Chapman & Cutler, and argued, among other things, that the proposed contingent fee was excessive [ECF No. 442, ¶¶7-8].

20.    On October 31, 2003, following a hearing held four days prior, this Court entered the Retention Order over the objection, which order granted the application "for authority under sections 327(a) and 328(a) of the Bankruptcy Code to employ and retain Beus Gilbert PLLC as litigation counsel," and further approved Beus Gilbert's employment "in accordance with the terms and conditions detailed in the [LRA] (except as modified herein)."

21.    That Judge Gerber carefully considered the LRA's terms is evident from the fact that his Retention Order modified the LRA in two substantive respects: first, it provides that notwithstanding Section 2.6 of the LRA, any recovery would be paid to the Trustee; and second, it provides that notwithstanding Section 2.2(a)-(b), the employment of consultants would be subject to Court approval.   A blackline comparison of the proposed order annexed to the Application, and the Retention Order ultimately entered by Judge Gerber, is annexed hereto as Exhibit 1.

---

represented the interests of the latter and they should therefore be treated as in privity for preclusion purposes, as discussed below.

22.    Significantly, Judge Gerber overruled Renco Group's argument that Beus Gilbert's proposed fee was excessive.

23.    Beus Gilbert began working on the Renco Group Litigation before its engagement was even approved, and filed the initial complaint on July 31, 2003 in the associated adversary proceeding (No. 03-6559), to prevent the potential loss of the Trustee's claims on statute of limitations grounds.

## III.    RENCO GROUP LITIGATION

24.    Since 1993, MagCorp was a subsidiary of Metals, a holding company that is, or was, a wholly-owned subsidiary of nondebtor Renco Group, which in turn is beneficially owned by Ira Rennert ("Rennert").

25.    Prior to July 5, 2002, when this Court approved the sale of substantially all of the Debtors' assets under Bankruptcy Code section 363(b)(1), MagCorp was engaged in the production of magnesium extracted from the brine of the Great Salt Lake in Utah. MagCorp's operations were conducted at a facility adjacent to the shore of the lake. The facility was the largest magnesium producer in the United States.

26.    Upon information and belief, MagCorp's operations gave rise to substantial environmental liabilities and were the subject of a long-running dispute with the Environmental Protection Agency (the "EPA"), particularly with respect to MagCorp's claimed entitlement to exemption from regulations adopted under Subtitle C of the Resource Conservation and Recovery Act.

27.    In January 2001, the United States, acting at the EPA's request, commenced an action in which it sought injunctive relief and civil penalties against the Debtors, Renco Group, Rennert, and others for violations occurring over a period of at least five years preceding January

7

2000.  The EPA complaint was predicated on, *inter alia,* the allegedly illegal treatment, storage, and disposal of hazardous wastes.

28.    In 1996, Metals sold $150 million in principal amount of 11-½ percent senior notes due 2003.  Rennert, Renco Group, and others acting in concert with them caused more than half of the proceeds of such notes to be conveyed to Renco Group in the form of dividends and the redemption of preferred stock previously issued by Metals, which was held by Renco Group.

29.    In the Renco Group Litigation the Trustee contended such conveyances rendered the Debtors insolvent, even without giving effect to the Debtors' potential environmental liabilities.  The Trustee alleged the prepetition conduct of Rennert, Renco Group, and other persons acting in concert with them and/or with entities controlled by them caused substantial harm to the Debtors and their creditors.

30.    The Trustee filed his initial adversary complaint on July 31, 2003, as noted above.

31.    After almost twelve years of litigation, and withdrawal of the reference of the litigation by the District Court (No. 13-cv-7948), a jury trial commenced on February 2, 2015 before District Judge Allison J. Nathan.  Following the trial's conclusion on February 27, 2015, the jury returned a verdict in the Trustee's favor, consisting of, *inter alia,* a $101 million damages award against Renco Group and a $16.2 million damages award against Rennert, representing 99% of the $118.4 million in damages the Trustee sought to recover.

32.    On March 16, 2015, District Judge Nathan issued a Memorandum & Order [ECF No. 342] awarding the Trustee prejudgment interest at the rate of 6% per annum, not compounded, from the Petition Date (*i.e.*, $82.7 million against Renco Group, and $13.3 million against Rennert).

8

33.    Judgment was entered on March 23, 2015 [ECF No. 389].  Although the judgment was subsequently twice amended [ECF Nos. 425, 438], the judgment, as amended, preserved the $101 million damages award against Renco and the associated $82.7 million prejudgment interest award, and the $16.2 million damages award against Rennert and the associated $13.3 million prejudgment interest award, thereby providing for an aggregate recovery of $183.7 million against Renco Group and $29.5 million against Rennert ($213.2 million total), in each case with post-judgment interest.

34.    The judgment debtors appealed, and the Trustee took a cross-appeal seeking review of the District Court's prejudgment interest determination.

35.    On September 18, 2015, the District Court approved a stipulation staying enforcement of the judgment until the Second Circuit issued its mandate, provided a supersedeas bond of over $237 million remained in full force and effect [ECF No. 435].

36.    On July 18, 2016, this Court entered an order approving bidding procedures in connection with the Trustee's then-proposed sale of a portion of the judgment (as amended) [ECF No. 724].  An order approving the sale was entered on August 24, 2016 [ECF No. 745], which sale generated proceeds of $26.2 million [ECF No. 729] (the "Judgment Sale").

37.    On March 8, 2017, the Second Circuit affirmed the District Court judgment in all respects.  The judgment debtors' petition for rehearing *en banc* was also denied.   On August 11, 2017, the judgment debtors petitioned the Supreme Court for a writ of certiorari.  Certiorari was denied on October 10, 2017.

38.    On October 31, 2017, the Trustee filed a Notice of Receipt and Disposition of Renco Group Litigation Proceeds [ECF No. 905] indicating the Trustee received approximately $215 million from sureties which bonded the appeal; that the Trustee paid roughly $50.5 million

to the purchaser in connection with the Judgment Sale; and that the Trustee then held approximately $188 million.

## IV.    THE PRIOR INTERIM FEE AWARD

39.    In 2005, the Trustee negotiated a settlement with two defendants in the adversary proceeding, Keith Sabel and K. Sabel Holdings, Inc., for a total of $75,000 [ECF No. 522, 530]. The settlement was approved pursuant to Rule 9019, by Order, entered July 18, 2005 [ECF No. 532].

40.    On February 16, 2006, Beus Gilbert applied for an interim fee award of $25,749.75, or 34-1/3% of any settlement reached after 90 days following the date of the LRA, pursuant to the terms of the agreement, which was annexed to the application [ECF No. 546]. No party objected to that application, or Beus Gilbert's right to compensation in accordance with the terms of the LRA, and an order granting it the requested interim fee award was entered on May 12, 2006 [ECF No. 554].

## V.    THE PRIOR AWARD OF EXPENSES ON A FINAL BASIS, AND THE AD HOC CONSORTIUM'S RESERVATION OF RIGHTS

41.    On October 19, 2017, Beus Gilbert filed a final application for reimbursement of expenses incurred in connection with the Renco Group Litigation in the amount of $2,162,250.50 [ECF No. 893].

42.    The Ad Hoc Consortium filed a reservation of rights [ECF No. 911] asserting that this final fee application (which had not yet been filed) should be subject to a reasonableness review under section 330, not section 328, and that such review requires a reduction in Beus Gilbert's contingent fee on the ground that it is simply too rich, given that noteholders are projected to recover "only" $85 million, or approximately 40% of the value of the judgment, and

approximately 57% of the aggregate principal amount of their notes, after accounting for repayment of lenders, professional fees and expenses, and the Trustee's statutory commission.

43.    Beus Gilbert's final cost application was granted by Order, entered November 22, 2017 [ECF No. 920].

## SUMMARY OF COMPENSATION REQUESTED

44.    Beus Gilbert seeks final allowance of compensation for services rendered in connection with the Renco Group Litigation, in the amount of $88,026,158.86, representing 41% of the gross recovery from the now-final judgment against Renco Group and Rennert, provided for under the Court-approved LRA, and final allowance of the prior interim compensation award of $25,749.75, relating to the Sabel settlement.  A proposed form of order is annexed hereto as Exhibit 2.

45.    Annexed hereto as Exhibit 3 is a Certification under the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, General Order M-447 (Jan. 29, 2013).

46.    Annexed hereto as Exhibit 4 are time records maintained by Beus Gilbert during the Renco Group Litigation.  The time records are not organized by project billing category, as all time related to the Renco Group Litigation.

47.    Except for the prior interim fee award relating to the Sabel settlement, no compensation has previously been paid to Beus Gilbert for services rendered in connection with this case.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

**I.     APPLICATIONS FOR ALLOWANCE OF CONTINGENCY FEE AWARD ARE NOT SUBJECT TO REASONABLENESS REVIEW WHERE THE FEE WAS PREAPPROVED UNDER SECTION 328(a)**

48.     Section 330(a)(1) provides "after notice and a hearing, and <u>subject to section[] 328</u> … the court may award to a … professional person employed under section 327 … reasonable compensation" (emphasis added).

49.     Section 328(a), in turn, provides "[t]he trustee … with the court's approval, may employ [an estate professional] on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

50.     In addition, the statute provides where terms and conditions of a professional's compensation have been preapproved, the Bankruptcy Court may only "allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms prove to have been improvident in light of developments not capable of having been anticipated at the time of the fixing of such terms and conditions."

51.     Thus, applications for allowance of professional compensation are subject to a reasonableness review where the fee has not been preapproved by the Bankruptcy Court, pursuant to section 328(a).

52.     Section 330(a)(3)-(4), in turn, describes how courts are to determine the amount of reasonable compensation to be awarded, where the professional's fee has not been preapproved. That methodology directs the court to "consider the nature, the extent, and the value of [their] services, taking into account all relevant factors," "in determining the amount of reasonable compensation to be awarded," and has been likened to a lodestar analysis. *See*, *e.g.*, *In re Northwest Airlines Corp.*, 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008).

53.    As noted in *In re Relativity Fashion*, No. 15-11989-mew, 2016 WL 8607005, at *2 (Bankr. S.D.N.Y. Dec. 16, 2016):

> Different standards apply to the review of fee applications depending on whether or not the terms of employment have been approved under Section 328(a) …
>
> Essentially, under Section 328, reasonableness is judged in advance, and the issue is not revisited except in the very narrow circumstances permitted by the statute.
>
> Without a Section 328(a) approval, however, Section 330 calls for a review of reasonableness that, to some extent, is made after-the-fact, although the case law makes clear that the judgment is not supposed to be done completely with 20/20 hindsight.  Under Section 330, a court reviews all "relevant" factors, including time spent, rates charged, whether services were necessary or beneficial at the time such services were rendered, whether the services were performed in a reasonable amount of time, and whether the compensation is reasonable based on customary compensation charged by comparably skilled practitioners in nonbankruptcy cases.  11 U.S.C. § 330(a)(3)(A-F).  In addition, under Section 330 compensation is not supposed to be provided if there is an unnecessary duplication of services or if services were not reasonably likely to benefit the estate or necessary to the administration of the estate.  11 U.S.C. §330(a)(4)(A).

*See also In re Smart World Technologies, LLC*, 552 F.3d 228, 233 (2d Cir. 2009) (quoting *In re B.U.M. Int'l, Inc.*, 229 F.3d 824, 829 (9th Cir. 2000)) (""These two inquiries are mutually exclusive, as 'there is no question that a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court has already approved the professional's employment under 11 U.S.C. § 328'").

54.    The reason for the alternate approaches to professional compensation was explained in *Donaldson Lufkin & Jenrette Secs. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was

13

> worth after it had been done. That uncertainty continues under the
> present § 330 of the Bankruptcy Code … Under present § 328 the
> professional may avoid that uncertainty by obtaining approval of
> compensation agreed to with the trustee …
>
> If the most competent professionals are to be available for
> [bankruptcy work], they must know what they will receive for their
> expertise and commitment. Courts must protect those agreements
> and expectations, once found to be acceptable.

*Id*. at 862-83. *See also Relativity*, 2016 WL 8607005, at *3 ("Section 328(a) reflects the view that professionals are entitled to know what they are likely to be paid for their work. If you agree to hire someone on a flat fee or percentage-fee basis, there should be some comfort that the compensation will be paid and that a court will not simply impose a new and different deal after all the work has been done").

## II.    BEUS GILBERT'S FEE AGREEMENT WAS PREAPPROVED PURSUANT TO SECTION 328(a)

55.    The Second Circuit has endorsed the Sixth Circuit's test for determining if a court has approved a fee arrangement under section 328(a) or not. *Smart World*, 552 F.3d at 233. Under that test, the relevant inquiry is as follows:

> Whether a court "pre-approves" a fee-arrangement under § 328
> should be judged by the totality of the circumstances, looking at
> both the application and the bankruptcy court's order. Factors in
> the determination may include whether the debtor's motion for
> appointment specifically requested fee pre-approval, whether the
> court's order assessed the reasonableness of the fee, and whether
> either the order or the motion expressly invoked § 328.

*In re Airspect Air, Inc.*, 385 F.3d 915, 920 (6th Cir. 2004).

56.    As described herein, all of these factors are present here and there can be little doubt that Beus Gilbert's compensation agreement was preapproved in 2003.

57.    Although the Bankruptcy Code does not "mandate that the [retention] application specifically mention § 328 or that the court's approval order expressly and unambiguously state

14

specific terms" (*Smart World*, 552 F.3d at 233, quoting *Airspect*, 385 F.3d at 922), both the Application to retain Beus Gilbert and the Retention Order specifically reference and provide for compensation under section 328.[2]   Indeed, the Retention Order specifically approved "the application … of Lee E. Buchwald (the 'Trustee'), as chapter 11 trustee … praying for authority under sections 327(a) and 328(a) of the Bankruptcy Code to employ and retain Beus Gilbert PLLC as litigation counsel …"

58.    In addition, the Application attached the LRA (as did the interim fee application), which stated the precise percentages which would be paid to Beus Gilbert in the event of settlement, judgment, or retrial—exactly the type of percentage and contingent fee award contemplated by section 328(a).

59.    Further, not only did the Trustee, the United States Trustee, and Ad Hoc Group support Beus Gilbert's retention under the terms set forth in the LRA, the Retention Order expressly granted "the Trustee's application to retain Beus Gilbert PLLC as litigation counsel in accordance with the terms and conditions detailed in the [LRA] (except as modified herein)." The Sixth Circuit has held that this type of language (*e.g.*, application is granted "upon the terms … set forth in the Application") constitutes approval under section 328.  *In re Fashion Shop of Kentucky, Inc.*, 350 Fed. App'x 24, 27 (6th Cir. 2009).

60.    That the second-to-last decretal paragraph in the Retention Order provides "all compensation of Beus Gilbert PLLC shall be subject to approval of the Court pursuant to 11

---

[2] The Ad Hoc Consortium mistakenly represented otherwise at the hearing on Beus Gilbert's cost application. Nov. 15, 2017 Tr. 16:11-17:10 ("If I may respond briefly though to the issue raised in the Beus Gilbert firm's reply on Friday? Specifically, whether Judge Gerber preapproved the firm's contingency fee under Section 328 … [T]here is no reference in the text of the order or the application [to] 328, only 330.  Our understanding … was that they were retained pursuant to a 330-resasonableness review at the time of compensation.  That's also what the language of the order says").  The transcript excerpt is annexed hereto as Exhibit 5.

15

U.S.C. § 330 and 331" does not alter this result, because regardless of whether the terms of a professional's compensation have been approved under section 328(a), or whether section 330(a)(3)-(4) governs, it must still apply for compensation pursuant to section 330(a)(1), and any award of interim compensation to it is governed by section 331. *In re Dan River, Inc.*, No. 04-10990-whd, 2005 WL 6486371, at *2 (Bankr. N.D. Ga. Sept. 30, 2005) ("Even fees pre-approved under § 328 must be applied for, in accordance with the procedure set forth in § 330[(a)(1)] … the fact that CDG was required to file a fee application, in accordance with §§ 330 and 331, did not suggest to the court that it would be reviewing CDG's requested compensation for reasonableness at the conclusion of the case"); *see also Smart World*, 552 F.3d at 234 ("The requirement that Riker Danzig 'further apply' for payment was entirely pro forma, as the court had already fixed and approved the calculation of the amount to be paid … Judge Blackshear specifically told the parties … that the court would not 'review the time records of the individual … because of the fact that he agreed to a contingency fee.' Thus, we agree with both courts below in concluding that the Retention was a pre-approval under section 328(a)."); *Nat'l Gypsum*, 123 F.3d at 861 ("By retaining 'the right to consider and approve the reasonableness and amount of DLJ's fees … the court merely recited its control of compensation in the event of subsequent and unanticipated circumstances affecting the reasonableness of fee" (*i.e.*, the section 328(a) standard).[3]

---

[3] The "subject to sections 330 and 331" language that the Ad Hoc Consortium relies upon was not even added by the Court, but was in Beus Gilbert's original proposed order in support of its Application. That language was simply moved from the second decretal paragraph that was deleted in its entirety to another decretal paragraph in the final Retention Order.   (*See* Exhibit 1.)

### III.    BEUS GILBERT'S AGREED COMPENSATION TERMS DID NOT PROVE IMPROVIDENT IN LIGHT OF DEVELOPMENTS NOT CAPABLE OF BEING ANTICIPATED IN 2003

61.    Given that section 328(a) applies, the sole question before this Court is whether the compensation provided under the Retention Order and LRA should be modified because Beus Gilbert's agreed compensation terms "prove[d] to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."  The answer is plainly "no."

62.    At the outset, courts are "severely constrained" in determining whether developments were "incapable of anticipation."  *Smart World*, 552 F.3d at 235 (noting that the test is not whether developments were unanticipated, but whether they could not have been anticipated).

63.    More significantly, the amount of the professional fee award cannot be considered a development incapable of being anticipated for section 328(a) purposes.  Every major party to the Debtors' cases except Renco Group—whose objection, interposed on the ground that Beus Gilbert's contingent fee award was excessive, was overruled—including the Trustee, United States Trustee, and the Ad Hoc Group, supported Beus Gilbert's employment on terms set forth in the LRA, and wanted Beus Gilbert to achieve precisely the result that it did.  The award also is not excessive in light of the challenge, risk, and cost undertaken by Beus Gilbert.  *See also Smart World*, 552 F.3d at 235 ("that contingency fees may appear excessive in retrospect is not a ground to reduce them").

64.    Nor can the length of time that elapsed prior to entry of a judgment be considered a factor incapable of anticipation, and is definitely not unusual in a case this complex.  *Id.* at 235 ("the unusually prolonged procedur[al] path of this litigation" is not a factor incapable of anticipation, for "the prospect of prolonged litigation always exists").

17

65.     Moreover, a 41% contingent fee award is not atypical in the context of complex commercial or bankruptcy litigation.  *See*, *e.g.*, *In re Xunlight Corp.*, No. 14-34156-mw, 2015 WL 9438744, at *5 (Bankr. N.D. Ohio Dec. 23, 2015) ("overall, a 40% contingent fee recovery is not unusual or unreasonable in the context of complex commercial litigation with an unknown and uncertain but certainly risky chance of success and recovery for the estate"); *see also Merry-Go-Round Enters., Inc.*, 244 B.R. 327, 330 (Bankr. D. Md. 2000) (enforcing 40% contingent fee award under section 328 in complex litigation, resulting in $71.2 million award, and also noting the "important policy consideration for honoring fee agreements with professionals"); *In re Amberjack Interests, Inc.*, 326 B.R. 379, 385-87 (Bankr. S.D. Tex. 2005) (also approving 40% fee award).  That is particularly true where, as here, the United States Trustee proposed the percentage award in the LRA.

66.     Finally, Beus Gilbert spent approximately $14.9 million in billable time on this case, and $2.2 million in costs.  When compared to the amount of the judgment ($213.2 million), this represents a multiple of fees and costs of 12, which measures favorably with general contingency fee multiples in complex litigation.  By way of example, the multiple in *Merry-Go-Round* (cited above) was 20.  And this analysis does not even account for the fact that Beus Gilbert's rates are well below market for New York, as is clear from the time detail annexed hereto, and fee applications filed by Brown Rudnick, counsel for the Ad Hoc Consortium, in other cases.  Accordingly, Beus Gilbert's award under the Retention Order and LRA is not subject to modification on the ground that the engagement's terms proved improvident in light of unanticipated-able subsequent developments.

18

## IV.    THE AD HOC CONSORTIUM IS PRECLUDED FROM CHALLENGING BEUS GILBERT'S FEE AWARD

### A.    Res Judicata

67.    It is black letter law that the doctrine of res judicata, or claim preclusion, applies where (1) a prior action involved an adjudication on the merits; (2) the prior action involved the same parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been raised in the prior action. *See*, *e.g.*, *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000); *Fay v. S. Colonie Central School Dist.*, 802 F.2d 21, 28 (2d Cir. 1986).

68.    There can be little doubt the Ad Hoc Group supported Beus Gilbert's employment on terms set forth in the LRA in 2003, that the Renco Group objected to said terms on the ground that the then-proposed contingency fee was excessive, and that Judge Gerber overruled the objection in that contested matter.   Thus, the second and third elements set forth above are satisfied.

69.    Moreover, the Ad Hoc Consortium is plainly in privity with the Ad Hoc Group which supported the Application in 2003, notwithstanding that no overlap exists any longer among members of the two groups (*see* note 1, *supra*), and that Ad Hoc Consortium members may not have purchased their notes from Ad Hoc Group members but from intermediate noteholders, as both groups are comprised of members that in the aggregate hold well-north of a majority in principal amount of the same notes,[4] and the Ad Hoc Consortium's interest in the prior contested matter concerning the Application to employ Beus Gilbert was identical to that of

---

[4] The Ad Hoc Group's Rule 2019 statement, filed October 30, 2003 [ECF No. 447], provides that its members held notes with a face amount totaling $98 million.  The Ad Hoc Consortium's Rule 2019 statement, filed November 9, 2017 [ECF No. 910], states its members hold in aggregate principal amount of $121 million.

19

the Ad Hoc Group which supported Beus Gilbert's employment on terms set forth in the LRA in 2003. *See*, *e.g.*, *Monahan*, 214 F.3d at 285 (literal privity not required in res judicata context; instead a party will be bound by prior judgment if its interests were adequately represented); *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995) (citing Allan D. Vestal, Res Judicata/Preclusion V-125-26 (1969) and *Aerojet-General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.), *cert. denied*, 423 U.S. 908 (1975)) (privity may be found where party's interest in litigation is "virtually identical" to an interest it had in a prior litigation, where it was not actually named, but can be said to have had "virtual representation"); *Green v. Santa Fe Indus.*, 70 N.Y.2d 244, 253 (1987) ("Generally, to establish privity the connection between the parties must be such that the interests of the nonparty can be said to have been represented in the prior proceeding").

70.    As the argument that Beus Gilbert's fee is excessive was raised in that contested matter and that objection was overruled on the merits, the Ad Hoc Consortium is barred by res judicata from challenging Beus Gilbert's fees as excessive, and the question of whether said fees are excessive should not be revisited.

## B.    Collateral Estoppel

71.    For collateral estoppel to apply, the party seeking application of the doctrine must establish four elements: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Purdy v. Zeldes*, 337 F.3d 253, 258 & n.5 (2d Cir. 2003); *accord In re Teligent, Inc.*, 640 F.3d 53, 61 (2d Cir. 2011). The "'fundamental notion' of the doctrine of collateral estoppel, or issue preclusion, 'is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated

in a subsequent suit between the same parties or their privies.'" *Ali Mukasey*, 529 F.3d 478, 489

(2d Cir. 2008) (quoting *U.S. v. Alcan Aluminum Corp.*, 990 F.2d 711, 718-19 (2d Cir. 1993));

*accord Lord v. Int'l Marine Ins. Servs.*, No. 09-cv-4436, 2011 WL 1485973, at *1 (2d Cir. Apr.

20, 2011).

72.    As noted above, the question of whether the contingency fee provided in the LRA

is excessive was raised by Renco Group in the contested matter relating to the Application to

employ Beus Gilbert, which Application was actively supported by the Ad Hoc Group, and

Judge Gerber entered the Retention Order over Renco Group's objection, interposed on the

ground that the then-proposed contingent fee award was excessive, after holding a hearing on the

Application.    Thus, there can be little doubt the first three elements are satisfied.    As to the

fourth, Judge Gerber's determination that the contingency fee is not excessive was necessary to

the Retention Order because section 328(a) only permits preapproval of "reasonable"

compensation terms.    11 U.S.C. § 328(a) ("The trustee … with the court's approval, may employ

or authorize the employment of a professional … on any reasonable terms and conditions of

employment").

73.    Because the Ad Hoc Group and Ad Hoc Consortium are in privity, as noted

above, the general rule against nonparty preclusion is inapplicable.    *See also Taylor v. Sturgell*,

553 U.S. 880, 894 (2008) (nonparty preclusion permitted where, among other things, substantive

legal relationship between person to be bound and party to judgment exists, or where person to

be bound was adequately represented by party to judgment).

## **NOTICE**

74.    Beus Gilbert has served a complete copy of this application, including all exhibits,

on the Trustee, the United States Trustee, counsel to the Ad Hoc Consortium, counsel to the

indenture trustee, the Department of Justice on behalf of the EPA, counsel to Renco Group and Rennert, and all other parties listed on the Master Service List [ECF No. 24], save those mailed a copy of Beus Gilbert's prior cost application where said application was returned as undeliverable.

75.    The Trustee has advised Beus Gilbert that he does not object to this application.

WHEREFORE, Beus Gilbert requests that this Court award final allowance of Beus Gilbert's compensation for professional services in the amount of $88,051,908.61, consisting of $88,026,158.86, representing 41% of the gross amount recovered on account of the final judgment entered in the Renco Group Litigation, plus the prior interim compensation award of $25,749.75, relating to the Sabel settlement, and grant such other and further relief as this Court deems appropriate.

Dated: December 13, 2017
     New York, New York

Respectfully submitted,

/s/ Jeffrey Chubak
Bijan Amini
Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
bamini@storchamini.com
jchubak@storchamini.com

*Attorneys for Applicant Beus Gilbert PLLC*