**Hearing Date:**
**January 11, 2018 at 10:00 A.M.**

**BROWN RUDNICK LLP**
James W. Stoll
Jeffrey L. Jonas
Brian T. Rice
One Financial Center
Boston, Massachusetts 02111
(617) 856-8200

- and -

Seven Times Square
New York, New York 10036
(212) 209-4800

*Counsel to the*
*Ad Hoc Noteholder Consortium*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>MAGNESIUM CORPORATION OF<br>AMERICA, *et al.*,<br><br>        Debtors. | Chapter 7<br><br>Case No. 01-14312 (MKV)<br><br>(Jointly Administered) |

**OBJECTION OF THE AD HOC NOTEHOLDER CONSORTIUM TO THE**
**FINAL APPLICATION OF BEUS GILBERT PLLC, LITIGATION COUNSEL**
**TO CHAPTER 7 TRUSTEE, FOR ALLOWANCE OF COMPENSATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................ii

PRELIMINARY STATEMENT ............................................................................ 1

RELEVANT BACKGROUND ............................................................................. 3

POINTS IN OBJECTION..................................................................................... 5

I.      Because the Applicants' Fee Arrangement Was Granted "Merely Preliminary
        Approval," Section 330 Governs Review of the Requested Fee. ..................... 6

II.     The Requested Fee Is Unreasonable and Must Be Reduced in Order to Satisfy
        Section 330....................................................................................................... 8

        A.      Standard of Review and the Applicants' Burden of Proof. .................. 8

        B.      The Requirements of Reasonableness and "Due Proportionality." ..... 10

        C.      Reasonableness and "Due Proportionality" Require a Reduction of the
                Requested Fee to Not More than $56.2 Million. ................................. 13

III.    Even Under Section 328's "Improvident" Standard, the Requested Fee Must Be
        Reduced in Light of Unforeseeable Developments. ........................................ 16

IV.     The Applicants' Flawed "Estoppel" Arguments Are Irrelevant to the Court's
        Review of the Requested Fee........................................................................... 19

CONCLUSION.................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

*In re All Island Truck Leasing Corp.*,
    546 B.R. 522 (Bankr. E.D.N.Y. 2016) ................................................................12

*In re Argose, Inc.*,
    372 B.R. 705 (Bankr. D. Del. 2007) ...................................................................16

*In re Brous*,
    370 B.R. 563 (Bankr. S.D.N.Y. 2007) ...............................................................14

*In re Busy Beaver Bldg. Ctrs., Inc.*,
    19 F.3d 833 (3d Cir. 1994) ..............................................................................9, 15

*Circle K Corp. v. Houlihan, Lokey, Howard & Zukin, Inc. (In re The Circle K Corp.)*,
    279 F.3d 669 (9th Cir. 2002) ............................................................................7, 8

*In re DeGroof*,
    No. 07 Civ. 00525, 2008 WL 4560088 (E.D.N.Y. Sept. 29, 2008) ...............11, 14

*Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*,
    123 F.3d 861 (5th Cir. 1997) .............................................................................17

*In re Dynegy Inc.*,
    486 B.R. 585 (Bankr. S.D.N.Y. 2013) .................................................................6

*In re Elmendorf Bd. Corp.*,
    57 B.R. 580 (Bankr. D.N.H. 1986) ....................................................................10

*Evans v. Ottimo*,
    469 F.3d 278 (2d Cir. 2006) ..............................................................................19

*In re Ferkauf, Inc.*,
    42 B.R. 852 (Bankr. S.D.N.Y. 1984) .................................................................10

*In re Fibermark, Inc.*,
    349 B.R. 385 (Bankr. D. Vt. 2006) ......................................................................9

*In re Fleming Cos.*,
    304 B.R. 85 (Bankr. D. Del. 2003) ......................................................................8

*Friedman Enters. v. B.U.M. Int'l, Inc. (In re B.U.M. Int'l, Inc.)*,
    229 F.3d 824 (9th Cir. 2000) ............................................................................7, 8

*In re High Voltage Eng'g Corp.*,
    311 B.R. 320 (Bankr. D. Mass. 2004) ................................................................16

*Kaufman v. Eli Lilly & Co.*,
 65 N.Y.2d 449 (1985) ........................................................................................................19

*In re Keene Corp.*,
 205 B.R. 690 (Bankr. S.D.N.Y. 1997) ...........................................................................8, 9, 15

*Knapp v. Seligson (In re Ira Haupt & Co.)*,
 361 F.2d 164 (2d Cir. 1966)...............................................................................................12

*In re Kohl*,
 421 B.R. 115 (Bankr. S.D.N.Y. 2009) ..........................................................................12, 14

*In re Mennella*,
 No. 07 Civ. 01907, 2008 WL 222557 (E.D.N.Y. Jan. 24, 2008)................................11, 12, 14

*In re Metro Transp. Co.*,
 107 B.R. 50 (E.D. Pa. 1989) .............................................................................................10

*In re Molycorp, Inc.*,
 562 B.R. 67 (Bankr. D. Del. 2017) ......................................................................................18

*In re Nw. Airlines Corp.*,
 400 B.R. 393 (Bankr. S.D.N.Y. 2009) ..................................................................................9

*In re Pettibone Corp.*,
 74 B.R. 293 (Bankr. N.D. Ill. 1987) ....................................................................................9

*In re Poseidon Pools of Am., Inc.*,
 180 B.R. 718 (Bankr. E.D.N.Y. 1995)...............................................................................9, 18

*Prudential Ins. Co. of Am. v. S.S. Am. Lancer*,
 870 F.2d 867 (2d Cir. 1989)...............................................................................................12

*In re Relativity Fashion, LLC*,
 No. 15-11989, 2016 WL 8607005 (Bankr. S.D.N.Y. Dec. 16, 2016) .......................................8

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
 68 F.3d 1478 (2d Cir. 1995)...............................................................................................19

*Riker, Danzig, Scherer, Hyland & Perretti v. Official Comm. of Unsecured Creditors*
 *(In re Smart World Techs., LLC)*,
 552 F.3d 228 (2d Cir. 2009)......................................................................................... *passim*

*Sec. & Exch. Comm'n v. Goren*,
 272 F. Supp. 2d 202 (E.D.N.Y. 2003) .................................................................................12

*In re Stein*,
 No. 04 Civ. 03196, 2005 U.S. Dist. LEXIS 30278 (E.D.N.Y. Mar. 25, 2005) ...........11, 12, 14

*In re Tribeca Mkt., LLC,*
   516 B.R. 254 (S.D.N.Y. 2014) ............................................................................10

*In re Trico Marine Servs., Inc.,*
   450 B.R. 474 (Bankr. D. Del. 2011) .....................................................................6

*United States v. Spallone,*
   399 F.3d 415 (2d Cir. 2005) .................................................................................6

*In re Waxman,*
   148 B.R. 178 (Bankr. E.D.N.Y. 1992) ..................................................................9

*In re XO Comm'ns, Inc.,*
   323 B.R. 330 (Bankr. S.D.N.Y. 2005) .................................................................17

*Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am. (In re JLM, Inc.),*
   210 B.R. 19 (B.A.P. 2d Cir. 1997) ......................................................................10

*Zolfo, Cooper & Co. v. Sunbeam-Oster Co.,*
   50 3d. 253 (3d Cir. 1995) .....................................................................................8

The Ad Hoc Consortium of Holders of the 11½% Senior Notes due 2003 issued under that certain Indenture, dated as of July 1, 1996, among Renco Metals, Inc., as Issuer, Magnesium Corporation of America and Sabel Industries, Inc., as Guarantors, and Wilmington Trust, National Association, as successor Indenture Trustee (the "**Ad Hoc Noteholder Consortium**"[1]) hereby objects to the *Final Application of Beus Gilbert PLLC, Litigation Counsel to Chapter 7 Trustee, for Allowance of Compensation* [Docket No. 934] (the "**Fee Application**"). In support thereof, the Ad Hoc Noteholder Consortium respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Is the approximately $90 million in compensation sought by Beus Gilbert PLLC (the "**Applicants**") reasonable, such that the Court can grant the Fee Application under section 330? The Bankruptcy Code places the burden of proof on all fee-related issues squarely on an applicant. Notwithstanding this, the Fee Application provides the Court with no basis whatsoever on which to find the Applicants' requested compensation reasonable.

2.      The only evidence that the Applicants do introduce is that "the total value of Beus Gilbert's services," on an hourly basis, was approximately $15 million.[2] The Ad Hoc Noteholder Consortium does not dispute that this base amount reflects reasonable compensation for the Applicants' efforts on behalf of general unsecured creditors. But regarding the reasonableness of the six-fold increase to these base rates that the Applicants have sought, the record is empty.

3.      This is notwithstanding that the Court's order approving the Applicants' retention provided that "all compensation of Beus Gilbert PLLC shall be subject to approval of the Court

---

[1]      *See Second Amended Verified Statement of Brown Rudnick LLP Pursuant to Federal Rule of Bankruptcy Procedure 2019*, filed contemporaneously herewith.

[2]      *Declaration of Leo R. Beus* [Docket No. 935] (the "**Beus Declaration**") ¶ 26.

pursuant to 11 U.S.C. §§ 330 and 331."[3] This language – absent from the form of order submitted by the chapter 7 trustee (the "**Trustee**") but added to the Retention Order that Judge Gerber signed in 2003 – makes plain what the Applicants steadfastly resist: That any ultimate request for compensation would be scrutinized under Bankruptcy Code section 330's "reasonable" standard.

4.     Contrary to both the record in these cases (including, most obviously, the Retention Order) and the Second Circuit's governing *Smart World* decision,[4] the Applicants' position is that no inquiry can now be made into the reasonableness of the $90 million they seek – by either the Ad Hoc Noteholder Consortium or, to be clear, this Court. Instead, the Applicants state, the Court can only review the Fee Application under section 328's "improvident" standard. Even under this standard, as detailed herein, ample grounds exist to reduce the Requested Fee, by not less than $25 million.

5.     Review for reasonableness, however, is what Judge Gerber expressly reserved for the Court in the Retention Order, and section 330 is the standard that the Applicants must satisfy. To the extent the Court determines nevertheless to move forward with the empty record before it – or permits the Applicants to raise "reasonableness" arguments in the first instance in reply to this objection, without the opportunity for any party in interest to respond – the Ad Hoc Noteholder Consortium submits that no amount of compensation above $56.2 million is supportable under Bankruptcy Code section 330. As detailed below, "due proportionality" dictates that less than half of the $213 million judgment that the Trustee obtained be allocated to administrative expenses related to the judgment, if those expenses are to be found reasonable. In

---

[3]     *Order Authorizing Chapter 7 Trustee to Retain Beus Gilbert PLLC as Litigation Counsel* [Docket No. 448] (the "**Retention Order**").

[4]     *Riker, Danzig, Scherer, Hyland & Peretti v. Official Comm. of Unsecured Creditors (In re Smart World Techs., LLC)*, 552 F.3d 228 (2d Cir. 2009).

light of the additional administrative costs incurred by the Trustee in pursuing his judgment, approximately $56.2 million in reasonable compensation remains available to be awarded to the Applicants.

6.      In pointing out the standard of review reserved by the Court in its Retention Order, and in holding the Applicants to their burden of proof, the Ad Hoc Noteholder Consortium is not detracting from, or attempting to minimize, the Applicants' success in prosecuting the claims of general unsecured creditors. The $56.2 million award that "due proportionality" permits is more than 3.75 times (or $41.3 million on top of) the Applicants' base rates – a wholly reasonable premium for the Applicants' efforts and results, to which the Ad Hoc Noteholder Consortium would have no objection.

## RELEVANT BACKGROUND

7.      On September 15, 2013, the Trustee applied for entry of an order approving his retention of the Applicants.[5] Included with the Trustee's Retention Application was a form of *Order Authorizing Chapter 11 Trustee to Retain Beus Gilbert PLLC as Litigation Counsel* (the "**Proposed Order**"),[6] which provided that:

(i)     "[P]ursuant to section 327(a) and 328(a) of the Bankruptcy Code, the Trustee's retention of Beus Gilbert as litigation counsel in accordance with the terms and conditions detailed in the 'Legal Representation Agreement' annexed to the Application as Exhibit 'A' and as set forth in the Paris Affidavit is approved"; and

(ii)    "Beus Gilbert shall be compensated in accordance with . . . the procedures set forth in sections 330 and 331 of the Bankruptcy Code."

---

[5]     *Application Pursuant to Section 327(a) and 328(a) of the Bankruptcy Code Authorizing the Chapter 11 Trustee to Retain Beus Gilbert PLLC as Litigation Counsel* [Docket No. 417] (the "**Retention Application**").

[6]     A true and correct copy of the Proposed Order is attached hereto as Exhibit A.

8.    On October 31, 2003, the Court (Gerber, J.) entered an order approving the Retention Application.[7] The Retention Order, as entered by Judge Gerber, contained modified language with respect to the Applicants' retention and compensation.

9.    Specifically, in lieu of the proposed language providing for the Applicants' retention "pursuant to section 327(a) and 328(a) of the Bankruptcy Code," the Retention Order provided "that the Trustee's application to retain Beus Gilbert PLLC as litigation counsel in accordance with the terms and conditions detailed in the 'Legal Representation Agreement' annexed to the application as Exhibit 'A' (except as modified herein) is hereby granted." Thus, the sole reference to Bankruptcy Code section 328 in the text of the Proposed Order was removed in the Retention Order.[8]

10.    More importantly, in place of the language in the Proposed Order providing that "Beus Gilbert shall be compensated in accordance with . . . the procedures set forth in sections 330 and 331 of the Bankruptcy Code," the Retention Order states that "all compensation of Beus Gilbert PLLC shall be subject to approval of the Court pursuant to 11 U.S.C. §§ 330 and 331." Rather than being "***simply moved***,"[9] the original language in the Proposed Order – a permissive, procedural provision – was removed and replaced by a reservation of the type of "full post-hoc reasonableness inquiry" contemplated by *Smart World*. 552 F.3d at 232.

11.    With these two modifications – (i) removing the reference to section 328 in connection with the Applicants' retention and (ii) providing for section 330 review of "all

---

[7]    A true and correct copy of the Retention Order is attached hereto as <u>Exhibit B</u>.

[8]    The preamble to both the Proposed Order and the Retention Order do reference that the Trustee originally sought to retain the Applicants pursuant to Bankruptcy Code sections 327 and 328.

[9]    Straining credulity (and the record in these cases), the Applicants state: "The 'subject to sections 330 and 331' language that the Ad Hoc Consortium relies upon was not even added by the Court, but was in Beus Gilbert's original proposed order in support of its Application. That language was simply moved from the second decretal paragraph that was deleted in its entirety to another decretal paragraph in the final Retention Order." Fee Application ¶ 60 n.3.

4

compensation" ultimately requested by the Applicants – the Court approved the Trustee's retention of the Applicants.[10]

12.     On October 19, 2017, the Applicants submitted a final application for the reimbursement of expenses, in the aggregate amount of $2,162,250.50.[11] The Court approved this Expense Application, subject to the Ad Hoc Noteholder Consortium's Reservation of Rights.[12]

13.     On December 13, 2017, the Applicants submitted the Fee Application, disclosing that "the total value of Beus Gilbert's services, calculated on an hourly rate basis, was approximately $14.9 million,"[13] and seeking the Court's approval of $88,026,158.86 (*i.e.*, 41% of $214,697,948.44) in compensation (the "**Requested Fee**").

## POINTS IN OBJECTION

14.     The Requested Fee is reviewable under section 330, not section 328, consistent with the language of the Retention Order and governing case law. As detailed herein, under section 330 (which the Applicants have made no effort to satisfy), "due proportionality" dictates that less than half (rather than more than 60%) of the Trustee's judgment be allocated to the payment of professionals and other administrative expenses incurred in connection with that judgment, necessitating a downward adjustment of the Requested Fee to $56.2 million. Assuming, *arguendo*, that the Requested Fee is properly reviewable under section 328 (which to

---

[10]     For the Court's convenience, a redline comparing the Proposed Order and the Retention Order is attached hereto as Exhibit C.

[11]     *See First and Final Application of Beus Gilbert PLLC, Litigation Counsel to Chapter 7 Trustee, for Reimbursement of Expenses* [Docket No. 893] (the "**Expense Application**").

[12]     *See Reservation of Rights of the Ad Hoc Noteholder Consortium with Respect to the (I) Fourth Application of Stevens & Lee, P.C., Counsel to Chapter 7 Trustee, for an Interim Allowance of Compensation and Reimbursement of Expenses and (II) First and Final Application of Beus Gilbert PLLC, Litigation Counsel to Chapter 7 Trustee, for Reimbursement of Expenses* [Docket No. 911] (the "**Reservation of Rights**").

[13]     *See Beus Declaration* ¶ 26.

be clear, it is not), a downward adjustment is nevertheless warranted, to account for the Trustee's wholly unforeseeable incurrence of $25 million in administrative expense for "unprecedented" short-term financing.

**I.     Because the Applicants' Fee Arrangement Was Granted "Merely Preliminary Approval," Section 330 Governs Review of the Requested Fee.**

15.     As an initial matter, the Court's review of the Applicants' Requested Fee is ***not*** governed by Bankruptcy Code section 328's "improvident" standard. As entered by Judge Gerber, the Retention Order prescribes that "all compensation of Beus Gilbert PLLC shall be subject to approval of the Court pursuant to [section] 330" – not section 328. This requires a review for reasonableness, not improvidence.

16.     To the extent there can be any dispute over the correct standard of review,[14] the Second Circuit's *Smart World* decision is dispositive. Per the *Smart World* court:

> [P]reapproval of a fee arrangement under 11 U.S.C. § 328(a) depends on the totality of the circumstances, including whether the professional's application, or the court's order, referenced section 328(a), and ***whether the court evaluated the propriety of the fee arrangement before granting final, and not merely preliminary approval***.

*Id.* at 233 (emphasis added).

17.     In determining whether "final," and not just "preliminary," approval has been given to a professional's retention terms, the question is whether "the bankruptcy court would retain some final approval over the reasonableness of the fee before it was permitted to be paid." *Id.* at 234. Put differently, does a retention order "provide for any additional layer of substantive

---

[14]     It bears noting that the plain language of the Retention Order governs its interpretation and enforcement. *See, e.g.*, *In re Dynegy Inc.*, 486 B.R. 585, 591 (Bankr. S.D.N.Y. 2013) ("When interpreting orders, the Court should look first to the plain meaning of the language of the order."); *In re Trico Marine Servs., Inc.*, 450 B.R. 474, 482 (Bankr. D. Del. 2011) ("[w]hen construing an agreed or negotiated form of order, . . . the Court approaches the task as an exercise of contract interpretation"). Thus, references in the Fee Application to any supposed subjective understanding of, or other extrinsic evidence put forward by, the Applicants – even if credible – are irrelevant. *See, e.g.*, *United States v. Spallone*, 399 F.3d 415, 424 (2d Cir. 2005) ("Court orders are construed like other written instruments, except that the determining factor is not the intent of the parties, but that of the issuing court.").

approval prior to payment" to the professional? *Id.* The panel in *Smart World* pointed to two decisions by the Ninth Circuit (*B.U.M.* and *Circle K*) in which retention orders contemplated such an "additional layer" of review and, thus, granted only preliminary approval to contingency-fee arrangements. *See id.* ("Unlike the orders in *B.U.M.* and *Circle K*, [the] Retention Order did not provide for any additional layer of substantive approval prior to payment.").

18.     In *B.U.M.*, language was added to the proposed retention order "that conditioned employment upon a final review of the fees" – what the bankruptcy court called "conduct[ing] a 'reasonableness and benefit to the estate' review of the fees." *Friedman Enters. v. B.U.M. Int'l, Inc. (In re B.U.M. Int'l, Inc.)*, 229 F.3d 824, 829-30 (9th Cir. 2000). To make the point clear, the bankruptcy court in *B.U.M.* added "an additional proviso that 'all fees and costs of [the professional] are subject to Court approval.'" *Id.* at 826.

19.     Similarly, in *Circle K*, the bankruptcy court approved a professional's retention on a contingency-fee basis, with its compensation "subject to review by the court in a final fee application." *Circle K Corp. v. Houlihan, Lokey, Howard & Zukin, Inc. (In re The Circle K Corp.)*, 279 F.3d 669, 673 (9th Cir. 2002). Based on this language, the *Circle K* court "conclude[d] that the bankruptcy court only conditionally approved [the professional's] retention and . . . was originally correct to review [its] fees for reasonableness under § 330." *Id.*

20.     Here, even if the language referencing section 328 from the Proposed Order had not been removed in the Retention Order that Judge Gerber signed, that would not end the inquiry under *Smart World*'s "totality of the circumstances" analysis. It would still be necessary to determine whether the Retention Order grants "merely preliminary approval" to the Requested

Fee, while reserving a section 330 reasonableness review for any compensation ultimately requested.[15]

21.    Such a subsequent review for reasonableness is precisely what the Retention Order contemplates here. In place of the language put forward in the Proposed Order ("Beus Gilbert shall be compensated in accordance with . . . the procedures set forth in sections 330 and 331 of the Bankruptcy Code"), the Retention Order that Judge Gerber entered provides that "all compensation of Beus Gilbert PLLC shall be subject to approval of the Court pursuant to 11 U.S.C. §§ 330 and 331."[16] This added language makes clear – under *Smart World*, *B.U.M.*, and *Circle K* – that the Applicants' contingency-fee arrangement was only granted **preliminary** approval in the Retention Order, with a final review for reasonableness to be completed under section 330.

## II.    The Requested Fee Is Unreasonable and Must Be Reduced in Order to Satisfy Section 330.

### A.    Standard of Review and the Applicants' Burden of Proof.

22.    An applicant seeking to be paid under Bankruptcy Code section 330 "bears the burden of proof on its claim for compensation." *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997). Specifically, the applicant must demonstrate "that the fees . . . sought are reasonable and necessary." *In re Fleming Cos.*, 304 B.R. 85, 89 (Bankr. D. Del. 2003) (citing

---

[15]    Put differently, the mere reference of section 328 in a retention order does not preclude a section 330 review for reasonableness – if (as is the case here) such a review was reserved at the time the order was entered. *Cf. In re Relativity Fashion, LLC*, No. 15-11989, 2016 WL 8607005, at *6 (Bankr. S.D.N.Y. Dec. 16, 2016).

[16]    In contrast, when a professional's retention terms have in fact been pre-approved and its ultimate fee request is **not** subject to a section 330 reasonableness review, the retention order (i) unequivocally authorizes the debtor or trustee to retain the professional pursuant to section 328 and (ii) does not reference section 330 in connection with approval of the professional's compensation. *See, e.g.*, *Order Pursuant to Bankruptcy Code Sections 327(e) and 328(a), Bankruptcy Rule 2014(a), and Local Bankruptcy Rule 2014-1 Authorizing the Employment and Retention of Cohen & Gresser LLP as Special Counsel to the Debtors Nunc Pro Tunc to the Petition Date*, *In re SunEdison, Inc.*, No. 16-10992 (Bankr. S.D.N.Y. July 20, 2016) [Docket No. 811], a true and correct copy of which is attached hereto as Exhibit D.

*Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 3d. 253 (3d Cir. 1995) ("The fee applicant has the burden of proving it has earned the fees it requests, and that the fees are reasonable.")); *see also In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987) ("The burden of proof to show entitlement to fees is, in all fee matters, always on the applicant.").

23.    An applicant's burden to demonstrate the reasonableness of requested compensation "is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by debtor." *In re Nw. Airlines Corp.*, 400 B.R. 393, 398 (Bankr. S.D.N.Y. 2009) (quoting *Pettibone*, 74 B.R. at 299). Accordingly, "[a]pplicants for payment of attorney fees as an administration expense have the burden of establishing entitlement to an award by a preponderance of the evidence." *In re Waxman*, 148 B.R. 178, 181 (Bankr. E.D.N.Y. 1992).

24.    In conducting its review for reasonableness and determining whether an applicant has carried its burden, "the bankruptcy court has an independent duty to review fee applications to protect the estate 'lest overreaching . . . professionals drain it of wealth which by right should inure to the benefit of unsecured creditors.'" *Keene*, 205 B.R. at 695 (quoting *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 844 (3d Cir. 1994)); *see also In re Fibermark, Inc.*, 349 B.R. 385, 393-94 (Bankr. D. Vt. 2006) ("Notwithstanding the absence, or the compromise, of any objection to a pending fee application – or the affirmative consent of the United States Trustee – this Court has an independent judicial responsibility to evaluate the appropriateness of the fees and expenses requested. This responsibility is especially acute since the professionals seek

9

compensation out of a bankruptcy estate.") (citations omitted).[17] Put more simply, a bankruptcy

court "is duty bound thoroughly to review fee applications, *sua sponte*, in order to determine

whether the compensation requested is reasonable." *In re Ferkauf, Inc.*, 42 B.R. 852, 853 (Bankr.

S.D.N.Y. 1984).[18]

25.    The Bankruptcy Code sets forth a non-exclusive list of factors to be weighed "[i]n

determining the amount of ***reasonable*** compensation to be awarded to . . . [a] professional

person." 11 U.S.C. § 330(a)(3) (emphasis added). Of course, a bankruptcy "court acts as a court

of equity and not as a bureau of statistics." *In re Elmendorf Bd. Corp.*, 57 B.R. 580, 588 (Bankr.

D.N.H. 1986). Accordingly, a court has "wide discretion in determining reasonable fee awards."

*Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am. (In re JLM, Inc.)*, 210 B.R. 19, 23 (B.A.P.

2d Cir. 1997); *see, e.g.*, *In re Tribeca Mkt., LLC*, 516 B.R. 254, 281 (S.D.N.Y. 2014) (under

section 330, a "deciding court has considerably more latitude to consider quantitative and

qualitative factors").

### B.    The Requirements of Reasonableness and "Due Proportionality."

26.    Having elected to seek compensation ***exclusively*** under section 328's

"improvident" standard, the Applicants have made no effort toward meeting their burden of

---

[17]    *See also In re Poseidon Pools of Am., Inc.*, 180 B.R. 718, 728-29 (Bankr. E.D.N.Y. 1995) (Because section 330 "only authorizes this Court to award compensation and reimbursement for actual and necessary services and expenses, their existence must be established in the same manner as any other element essential to the granting of relief notwithstanding the absence or flaccidity of opposition. . . . [T]he fact that no objections to the reasonableness of the fees requested have been raised in this case, is of consequence only to the extent that we are required to undertake the unperformed obligations which Congress has imposed upon the trustee and upon the U.S. Trustee. Their failure to fulfill their statutory obligation does not excuse us from fulfilling ours.").

[18]    *See also In re Metro Transp. Co.*, 107 B.R. 50, 53 (E.D. Pa. 1989) ("Because fees can be paid only upon court order, the court which signs that order must, therefore, be prepared to accept responsibility for its judicial actions by independently determining that court authorization of the fee payment is warranted.").

proving that the Requested Fee is reasonable.[19] Instead, the Fee Application is focused on

arguing (i) that notwithstanding the modifications to the Proposed Order reflected in the

Retention Order, the Requested Fee was in fact pre-approved by Judge Gerber (addressed in

Section I, *supra*), (ii) that the retention terms preliminarily approved by the Court have not been

shown to be improvident (addressed in Section III, *infra*), and (iii) that the Ad Hoc Noteholder

Consortium – the single largest creditor constituency in these cases and principal beneficiary of

the Applicants' fiduciary duties to all general unsecured creditors – has no standing to be heard

on the Fee Application (addressed, briefly, in Section IV, *infra*).

27.    To the extent the Court determines nevertheless to move forward with its

reasonableness review of the Fee Application now (or permits the Applicants to raise

"reasonableness" arguments in the first instance in reply to this objection), a determination will

be made as to whether, in light of anticipated creditor recoveries in these cases, the Requested

Fee is "reasonable" within the meaning of section 330(a)(1)(A). In doing so, the Court will

evaluate whether allowing the Requested Fee in full would result in professional fees having a

"due proportionality" to expected creditor recoveries in these cases. *See, e.g.*, *In re Stein*, No. 04

Civ. 03196, 2005 U.S. Dist. LEXIS 30278, at *11 (E.D.N.Y. Mar. 25, 2005) ("[T]he application

of the 'due proportionality' analysis is reasonable in this situation where a substantial portion of

---

[19]    To point out just one obvious example in this regard, a substantial portion of the $213 million (more than $96 million) was assessed on account of prejudgment interest. *See, e.g.*, Fee Application ¶ 32. Yet, from the record in the District Court, it appears that a material amount of this interest is attributable to delays resulting from the Applicants' own decisions in prosecuting the claims of general unsecured creditors. *See Affidavit of H. Peter Haveles, Jr. in Response to Plaintiff's Application for Prejudgment Interest*, *Buchwald v. Renco Grp., Inc.*, No. 13 Civ. 07948 (S.D.N.Y. Mar. 10, 2015) [Docket No. 337] ¶ 21 ("In sum, between April 2004 and February 2011, this action was essentially frozen. First, because of the stay that the Bankruptcy Court imposed to protect the interests of the professional defendants, the action was on hold as against the Renco Defendants until April 2008. Second, from that point on, nothing happened until March 2011 ***because of the Trustee's failure to prosecute the action with any diligence***, despite the willingness of the Renco Defendants to schedule depositions as soon as possible."). As part of their burden of demonstrating the reasonableness and necessity of the Requested Fee (*i.e.*, how creditors were benefitted), the Applicants must explain how any such delay was in fact the best interests of these estates – such that awarding the Applicants any percentage of the approximately $96 million in prejudgment interest can be supported under section 330. The Fee Application is empty in this regard.

the sum recovered by the Trustee would be disbursed to the Trustee's attorney rather than the creditors of the estate. In reaching this conclusion, *the Court is not only guided by the Bankruptcy Code, but by common sense and prudence*.") (emphasis added).

28.     Specifically, the Court will weigh whether there exists "a perceived disproportionality between such fees and the monetary distribution available to creditors. In this regard, the reduction of fees on grounds of 'due proportionality' has consistently been upheld." *In re DeGroof*, No. 07 Civ. 00525, 2008 WL 4560088, at *4 (E.D.N.Y. Sept. 29, 2008). As an exercise of a bankruptcy court's substantial discretion under section 330, professional fees may be "*substantially reduced in order to restore proportionality* between the administrative expenses and distributions to the general unsecured creditors of the estate." *In re Mennella*, No. 07 Civ. 01907, 2008 WL 222557, at *2 (E.D.N.Y. Jan. 24, 2008) (emphasis added). This type of balancing, "guided by . . . common sense and prudence," is precisely the kind of "after-the-fact consideration," *Smart World*, 552 F.2d at 232, that section 330 calls for.

29.     The "due proportionality" standard is an extension of two related considerations in a court's review for reasonableness. First, professional fees are only reasonable to the extent they are incurred in furtherance of creditors' interests. Accordingly, "a retained professional, like a trustee, should only be compensated for services that provide a benefit to the unsecured creditors." *In re All Island Truck Leasing Corp.*, 546 B.R. 522, 535 (Bankr. E.D.N.Y. 2016); *see also In re Kohl*, 421 B.R. 115, 125 (Bankr. S.D.N.Y. 2009) ("The court may reduce or disallow a request if the services provide no real benefit to the estate."). Where professional fees overwhelm creditor recoveries, there is no estate benefit and, accordingly, no "due proportionality." *See, e.g.*, *Stein*, 2005 U.S. Dist. LEXIS 30278, at *11.

30.     Second, in the exercise of its discretion (and, again, "guided by . . . common sense and prudence"), a court "must scrutinize fee applications to ensure that they are reasonable [and] avoid *even the appearance of a windfall*" to professionals. *Mennella*, 2008 WL 222557, at *5 (emphasis added) (citing *Sec. & Exch. Comm'n v. Goren*, 272 F. Supp. 2d 202, 213 (E.D.N.Y. 2003) ("this Court is especially concerned by the threatened appearance of a windfall, an important public policy concern")); *see also Knapp v. Seligson (In re Ira Haupt & Co.)*, 361 F.2d 164, 168 (2d Cir. 1966) ("The conduct of bankruptcy proceedings not only should be right but must seem right."). Where outsized awards of professional fees would dwarf creditor recoveries, a bankruptcy court (as a court of equity) is empowered to act on the principle that "equity . . . abhors a windfall." *Prudential Ins. Co. of Am. v. S.S. Am. Lancer*, 870 F.2d 867, 871 (2d Cir. 1989).

**C.     Reasonableness and "Due Proportionality" Require a Reduction of the Requested Fee to Not More than $56.2 Million.**

31.     As detailed in the Ad Hoc Noteholder Consortium's Reservation of Rights, the Trustee and his professionals have sought or intend to seek payments that would consume over *60%* of the approximately $213 million judgment recovered:

| | |
|---|---|
| **Trustee's Judgment** | **$214,697,948.44** |
| Repayment of Litigation Financing (Net) | $25,503,901.37 |
| Beus Gilbert Contingency Fee (41% of Judgment) | $88,026,158.86 |
| Beus Gilbert Expenses | $2,162,250.50 |
| Kellogg, Hansen Fees and Expenses | $1,612,692.00 |
| Stevens & Lee Fees and Expenses | $4,660,843.42 |
| Trustee's Proposed Commission (3% of Judgment) | $6,440,938.45 |
| **Total Judgment-Related Fees and Expenses** | **$128,406,784.60** |
| **Balance Available for General Unsecured Creditors** | **$86,291,163.84** |

Put more simply, against an estimated ***$86 million*** available for distribution to general unsecured creditors, more than ***$128 million*** has been or is proposed to be allocated to administrative expenses of the Trustee and his counsel in connection with pursuing the judgment. More than $90 million of this amount (*i.e.*, more than the total expected distribution to general unsecured creditors of approximately $86 million) is sought by the Applicants in fees and expenses.

32.    Under the "due proportionality" standard, the Requested Fee – standing alone (at $90 million against $86 million in recoveries) and, more importantly, when viewed as part of the more than $128 million the Trustee intends to surcharge his judgment to pay related administrative expenses – is simply not reasonable. Specifically, "due proportionately" dictates that the Trustee not expend more than half of his judgment (and, *a fortiori*, not more than ***60%***), on related administrative expenses. *See, e.g.*, *Stein*, 2005 U.S. Dist. LEXIS 30278, at *10 (affirming reduction of allowed compensation to 40% of recovery under "due proportionality" standard); *DeGroof*, 2008 WL 4560088, at *5 (affirming bankruptcy court's reduction of allowed compensation to 50% of recovery on finding that anything more "simply violates any concept of proportionality in determining reasonable compensation"); *Mennella*, 2008 WL 222557, at *2 (affirming reduction of allowed compensation to 40% of judgment on finding that "the general unsecured creditors, the intended beneficiaries of any Chapter 7 administration, were being denied any benefit").

33.    Being "guided by . . . common sense and prudence" and using 45% of the Trustee's judgment as a benchmark for "due proportionality" of administrative expenditures – higher than the 40% found reasonable in *Stein* and *Mennella* but less (owing to the size of the judgment) than the 50% approved in *DeGroof* – yields approximately $96.6 million. Assuming payment in full of all other administrative expenses associated with the judgment – *e.g.*, the $25

14

million of the judgment paid to finance interim awards of professional fees, the Trustee's commission at the statutory maximum of 3%,[20] the cost of the Trustee's appellate counsel, the fees and expenses of the Trustee's attorneys at Stevens & Lee, and the Applicants' previously reimbursed expenses – this leaves approximately $56.2 million to compensate the Applicants. This amount (still providing more than a *$41.3 million premium* on the Applicants' hourly rates) will result in "due proportionality" between the recoveries of general unsecured creditors from the judgment and the compensation of professionals working for their benefit – *i.e.*, a 55/45 split of the Trustee's judgment – and is, accordingly, reasonable within the meaning of section 330.

34.    To be clear, the reduction to the Requested Fee necessary to render it reasonable "is not a reflection on the fine quality of [the Applicants'] work." *Mennella*, 2008 WL 222557, at *5; *see also Stein*, 2005 U.S. Dist. LEXIS 30278, at *12 ("In upholding this reduced fee award, the Court notes that the reduction of fees awarded to [the professional] is not a reflection on the quality of its work."). Neither does the reduction fail to grant the Applicants a substantial "risk premium" – more than 3.75 times (or an extra $41.3 million above) "the total value of Beus Gilbert's services" of $14.9 million – for the possibility that they may have failed in the litigation they were hired to bring.

35.    Instead, by allocating a full 45% of the $213 million judgment to cover related administrative expenses – of which the Applicants would receive $56.2 million, against less than $15 million in base fees, in addition to expense reimbursement – the estates' professionals will

---

[20]    For the avoidance of doubt, the Ad Hoc Noteholder Consortium continues to reserve its rights with respect to any final commission sought by the Trustee, on the ground (*inter alia*) that "[s]ection 326 merely sets a maximum limit on the compensation that may be awarded to a trustee; section 330 still limits trustee's compensation to a reasonable amount." *Kohl*, 421 B.R. at 131; *see also In re Brous*, 370 B.R. 563, 571 (Bankr. S.D.N.Y. 2007) ("[T]he knee-jerk allowance of the maximum commission under 326(a) can lead to a windfall. . . . If the trustee's compensation is keyed solely to the amount he or she disburses, rather than the reasonable and necessary services required by the case, the panel trustee program will become a lottery.").

be more than compensated for their work on behalf of creditors, "due proportionality" will be

maintained, and section 330's requirement of reasonableness in compensation awards (as

incorporated in the Retention Order that Judge Gerber signed) will be satisfied.

36.     At the same time, allowing general unsecured creditors to recover more than half

(55%) of the judgment will permit the Court to fulfill its obligation to "protect the estate 'lest

overreaching . . . professionals drain it of wealth which by right should inure to the benefit of

unsecured creditors.'" *Keene*, 205 B.R. at 695 (quoting *Busy Beaver*, 19 F.3d at 844).

## III.    Even Under Section 328's "Improvident" Standard, the Requested Fee Must Be Reduced in Light of Unforeseeable Developments.

37.     The Applicants fail to explain how, given the language added to the Retention

Order, the Requested Fee is insulated from review under Bankruptcy Code section 330's

"reasonable" standard. Assuming, *arguendo*, that the added language – "all compensation of

Beus Gilbert PLLC shall be subject to approval of the Court pursuant to [section] 330" – should

be read out of the Retention Order, and the Requested Fee should be evaluated under section

328's "improvident" standard,[21] a reduction in the Requested Fee is nevertheless warranted.

Under this admittedly "high hurdle to clear," *Smart World*, 552 F.3d at 234-35, one obvious, and

by the Trustee's own admission, wholly unforeseeable development necessitates reducing the

Requested Fee.

38.     Specifically, it could not have been foreseen that the Trustee would incur in

excess of $25 million in administrative expense for what amounted to a one-year advance on the

Trustee's professional fees and his own interim commissions. As the press coverage of the

transaction makes clear – from the litigation funder's own press release ("Litigation Funder

---

[21]     *See* 11 U.S.C. § 328(a) ("the court may allow compensation different from the compensation provided under [retention] terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions").

Burford Poised to Cash in from First-Ever Bankruptcy Deal"[22]), to the Trustee's interviews on the topic ("MagCorp Bankruptcy Trustee on Litigation Finance: 'The Only Limits Are Your Imagination'"[23]), to *Forbes* magazine ("Billionaire Rennert's Loss Is a Quick Double for Litigation-Finance Firm Burford"[24]) – the transaction was a complete novelty when approved by the Court in 2016. It could hardly have been anticipated, in 2003, that the Trustee would take the unprecedented step of selling a substantial portion of his judgment to a third-party litigation funder.

39.     The "quick double" that the Trustee afforded the litigation funder – a 100% return on $25 million of liquidity in barely a year – is precisely the type of "development[ ] not capable of being anticipated" that section 328 contemplates. The analysis under that provision of the Bankruptcy Code is "is foresight-driven, not hindsight-determinative." *In re Argose, Inc.*, 372 B.R. 705, 710 (Bankr. D. Del. 2007); *see also In re High Voltage Eng'g Corp.*, 311 B.R. 320, 331 n.3 (Bankr. D. Mass. 2004) ("Under § 328, an intervening circumstance, in order to render improvident a court's decision to grant a fee application, must be one that ***would have affected the court's decision in the first place***. It must have been relevant to that decision in some way, rendering it untenable or unwise in hindsight.") (emphasis added).

40.     If one assumes, for sake of argument, that the Applicants' fee terms were pre-approved by the Court in 2003, it is difficult to imagine that an additional 11% surcharge on the Trustee's judgment (on top of the Applicants' requested 41% fee) would not have affected the Court's decision. The Trustee's subsequent decision to incur this financing expense accordingly

---

[22]    *Available at* http://www.burfordcapital.com/newsroom/litigation-funder-burford-poised-cash-first-ever-bankruptcy-deal.

[23]    *Available at* http://www.burfordcapital.com/blog/magcorp-interview-buchwald-kajon (the "**Burford Interview**").

[24]    *Available at* https://www.forbes.com/sites/danielfisher/2017/03/08/billionaire-rennerts-loss-is-a-quick-double-for-litigation-finance-firm-burford.

falls in the category of "then-unforeseen circumstances" that, even under section 328, calls for a reduction of the Applicants' Requested Fee. *In re XO Comm'ns, Inc.*, 323 B.R. 330, 339 (Bankr. S.D.N.Y. 2005); *see also Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862 (5th Cir. 1997) (modification of retention terms appropriate under section 328 "only for developments unforeseen when originally approved").

41.     The Trustee may be correct when he states that "[j]ust because no one has done it before doesn't mean you shouldn't try."[25] His counsel may be right (as stated in Stevens & Lee's own press release) that "no transaction such as this one has been done in a pending bankruptcy case."[26] And both may have been deservedly "recognized for ***innovation*** at the Financial Times Innovative Lawyers Awards for North America . . . for ***the unprecedented use of legal finance*** to solve a common problem faced by bankruptcy estates."[27] But something that is "unprecedented," something that "no one has done . . . before," something that is a "first-ever" – this is not a transaction reasonably capable of anticipation under Bankruptcy Code section 328. Rather, it is something that renders the 41% contingency fee sought by the Applicants improvident in light of subsequent developments.

42.     Accordingly, the Trustee's unforeseeable decision to incur an incremental $25 million of administrative expense – surcharging his judgment by 11% in exchange for a 12-month advance on interim professional fees and trustee commissions – necessitates reducing the Requested Fee by the same amount under section 328's "improvident" standard.

---

[25]     Burford Interview; *see also id.* ("It is always refreshing when I work on matters with attorneys who have a similar perspective, and who are not afraid to ***try something new***.") (emphasis added).

[26]     http://www.stevenslee.com/using-litigation-finance-to-monetize-an-illiquid-and-speculative-asset-magcorp-case-study.

[27]     http://www.burfordcapital.com/newsroom/burford-wins-innovation-award-financial-times (emphasis added).

## IV.    The Applicants' Flawed "Estoppel" Arguments Are Irrelevant to the Court's Review of the Requested Fee.

43.    Cognizant of the weakness of their position, the Applicants seek to keep the Ad Hoc Noteholder Consortium from being heard at all with respect to the Fee Application, notwithstanding that it is the single largest creditor constituency in these cases and, thus, the principal beneficiary of the Applicants' fiduciary duties to all general unsecured creditors.

44.    Of course, whether the Ad Hoc Noteholder Consortium – or any other party in interest – opposes the Requested Fee is of no moment, as "the bankruptcy court has . . . a duty to independently review fee applications notwithstanding the absence of objections by the trustee, debtor or creditors." *In re Molycorp, Inc.*, 562 B.R. 67, 81 (Bankr. D. Del. 2017); *see also Poseidon Pools*, 180 B.R. at 728-29 ("[T]he fact that no objections to the reasonableness of the fees requested have been raised in this case, is of consequence only to the extent that we are required to undertake the unperformed obligations which Congress has imposed upon the trustee and upon the U.S. Trustee. Their failure to fulfill their statutory obligation does not excuse us from fulfilling ours."). The Court will conduct its own review of the Fee Application (per the Retention Order and the requirements of Bankruptcy Code section 330, "guided by . . . common sense and prudence") and determine what amount of compensation above the Applicants' base rates (if any) is reasonable, irrespective of the support or objection of any party.[28]

45.    But it bears noting (briefly) that besides being irrelevant to the Court's review of the Requested Fee, each of the Applicants' "estoppel" arguments fails as a matter of law. For both claim and issue preclusion, an identity of issue must be present. At issue in 2003 was the Trustee's authority to retain the Applicants and Judge Gerber's conditional approval of the

---

[28]    Of course, in the event section 328 governs review of the Fee Application, no theory of estoppel would prevent the Ad Hoc Noteholder Consortium from raising objections based on "developments not capable of being anticipated." *Cf. Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1487 (2d Cir. 1995) ("unforeseeability" of subsequent developments renders estoppel improper).

Applicants' fee terms, subject to a section 330 reasonableness review; at issue today is whether any amount above the Applicants' approximately $15 million in base fees is in fact reasonable. This distinction is the natural result, and the practical significance, of the language **added** to the Retention Order (not "*simply moved*") that "all compensation of Beus Gilbert PLLC shall be subject to approval of the Court pursuant to 11 U.S.C. §§ 330 and 331."

46.     Because Judge Gerber expressly reserved decision on the reasonableness of any compensation ultimately sought by the Applicants, the issue now before the Court was not – indeed, could not have been – presented at the time the Retention Order was entered. No identity of issues thus exists for estoppel purposes. *See, e.g.*, *Evans v. Ottimo*, 469 F.3d 278, 282 (2d Cir. 2006) ("[I]f an issue has not been litigated, there is no identity of issues.") (quoting *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456 (1985)). The reasonableness (*vel non*) of the Requested Fee, on which the Court expressly reserved judgment, is only now being litigated – notwithstanding that the Applicants have determined to make no effort toward meeting their burden of proof. Accordingly, neither claim nor issue preclusion is implicated by the Fee Application.

## CONCLUSION

47.     Judge Gerber's Retention Order approved the Trustee's engagement of the Applicants and granted preliminary approval to their fee terms. In the event the fee was triggered, the Applicants would have the opportunity to carry their burden of demonstrating its reasonableness under Bankruptcy Code section 330.

48.     The Fee Application submitted by the Applicants makes no showing under this standard with respect to the approximately $90 million Requested Fee; only approximately $15 million – "the total value of Beus Gilbert's services" on an hourly basis – has any evidentiary support in the Fee Application.

49.     Even if the Applicants had attempted to carry their burden of proof (or the Court permits them to do so in reply to this objection), reasonableness and "due proportionality" would nevertheless dictate that not more than $56.2 million in compensation be awarded to the Applicants. This is the amount that, together with all other administrative expense incurred in connection with the Trustee's judgment, allocates 55% of the judgment's proceeds to general unsecured creditors – the parties on whose behalf the Applicants were retained.

50.     Finally, if – notwithstanding the language of the Retention Order and the Second Circuit's clear instructions in *Smart World* – a section 328 "improvident" review of the Requested Fee is conducted, developments not capable of being anticipated in 2003 require a reduction of the Requested Fee. The Trustee's "unprecedented" and "innovative" decision to finance interim professional fee awards and his own interim commissions was not foreseeable at the time the Retention Order was entered, renders the proposed fee terms improvident, and necessitates a downward adjustment of at least $25 million.

*     *     *

Dated:  January 4, 2018                    Respectfully submitted,

                                           **BROWN RUDNICK LLP**

                                           /s/ Jeffrey L. Jonas
                                           James W. Stoll
                                           Jeffrey L. Jonas
                                           Brian T. Rice
                                           One Financial Center
                                           Boston, Massachusetts 02111
                                           (617) 856-8200

                                           - and -

                                           Seven Times Square
                                           New York, New York 10036
                                           (212) 209-4800

                                           *Counsel to the*
                                           *Ad Hoc Noteholder Consortium*

**<u>Exhibit A</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------

| | : | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **MAGNESIUM CORPORATION OF** | : | **01 B 14312 (REG)** |
| **AMERICA, et al.,** | : | |
| | : | **(Jointly Administered)** |
| Debtors. | : | |
| | : | |

-------------------------------------------------------------

## ORDER AUTHORIZING CHAPTER 11 TRUSTEE TO RETAIN
## BEUS GILBERT PLLC AS LITIGATION COUNSEL

Upon the Application dated September 15, 2003 (the "Application") of Lee E. Buchwald, as chapter 11 trustee in the above-captioned debtors (the "Trustee"), for an order pursuant to sections 327(a) and 328(a) of Title 11 of the United States Code (the "Bankruptcy Code"), for authority to retain the law firm of Beus Gilbert PLLC ("Beus Gilbert") as litigation counsel; as more fully set forth in the Application; and upon consideration of the Affidavit of Timothy J. Paris, Esq., a member of Beus Gilbert, sworn to on September 15, 2003 (the "Affidavit"); and the Court being satisfied that, based on the representation made in the Application and the Paris Affidavit that Beus Gilbert does not represent or hold an interest adverse to the Debtors or their estates respecting the matters upon which the firm is to be engaged, and is a disinterested person as that term is used in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Application having been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the official committee of unsecured creditors, (iii) Beus Gilbert, and (iv) those parties entitled to notice pursuant to this Court's order August 8, 2002, establishing certain notice procedures in these cases; and no other or further notice need be provided; and no objections having been received to the relief requested herein;  and the relief requested in the Application being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Application and having heard the statements in support of the relief requested at a hearing before the Court (the "<u>Hearing</u>"); and the Court having determined that the legal and factual bases set forth in the Application ad at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

**ORDERED** that, pursuant to section 327(a) and 328(a) of the Bankruptcy Code, the Trustee's retention of Beus Gilbert as litigation counsel in accordance with the terms and conditions detailed in the "Legal Representation Agreement" annexed to the Application as Exhibit "A" and as set forth in the Paris Affidavit is approved; and it is further

**ORDERED** that Beus Gilbert shall be compensated in accordance with (i) the procedures set forth in sections 330 and 331 of the Bankruptcy Code, (ii) the applicable Federal Rules of Bankruptcy Procedure, (iii) the Local Bankruptcy Rules of the Bankruptcy Court for the Southern District of New York, (iv) the Administrative Orders Re: Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases issued by the Southern District of New York Bankruptcy Judges, (iv) the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under Section 330 and dated January 30, 1996, and (v) such procedures as may be fixed by order of this Court,; and it is further

**ORDERED** that the Application satisfies rule 9013-1(b) of the Local Bankruptcy Rules of the Bankruptcy Court for the Southern District of New York; and it is further

**ORDERED** that this Court shall retain jurisdiction respecting all matters arising from or relating to the implementation of this Order.

Dated: _____, 2003.
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | : |
| In re | : Chapter 7 |
| | : |
| MAGNESIUM CORPORATION OF | : Case No. 01 B 14312 (REG) |
| AMERICA, <u>et al.</u>, | : |
| | : (Jointly Administered) |
| Debtors. | : |
| | : |

## ORDER AUTHORIZING CHAPTER 7 TRUSTEE TO RETAIN
## BEUS GILBERT PLLC AS LITIGATION COUNSEL

Upon the application, dated September 15, 2003, of Lee E. Buchwald (the "Trustee"), as chapter 11 trustee in the above-captioned debtors (the "Debtors"), praying for authority under sections 327(a) and 328(a) of the Bankruptcy Code to employ and retain Beus Gilbert PLLC as litigation counsel in the Debtor's chapter 11 cases and in adversary proceeding 03-6559 commenced by the Trustee against The Renco Group, Inc., et al. (the "Renco Group Litigation"); and upon the affidavit of Timothy J. Paris, Esq., a member of Beus Gilbert PLLC, sworn to on September 15, 2003 (the "Paris Affidavit"); and it appearing that the members and associates of Beus Gilbert PLLC are disinterested persons within the meaning of section 327(a) of the Bankruptcy Code; and it appearing that the Debtor's cases were converted to cases under chapter 7 of the Bankruptcy Code by order dated September 24, 2003; and thereafter Mr. Buchwald having been appointed chapter 7 trustee of the Debtors' estates; and the Court being satisfied that Beus Gilbert PLLC represents no interest adverse to the Debtors' estates or the estates' creditors in the matters upon which it is to be engaged, and the employment and retention of Beus Gilbert PLLC is necessary and would be in the best interest of the estates; and having heard all objections at a hearing conducted on October 27, 2003; and having determined that the legal and factual bases set forth in the application and at the hearing establish just cause

69125

for the relief granted herein, and after due deliberation and sufficient cause appearing; it is hereby

　　　　**ORDERED** that the Trustee's application to retain Beus Gilbert PLLC as litigation counsel in accordance with the terms and conditions detailed in the "Legal Representation Agreement" annexed to the application as Exhibit "A" (except as modified herein) is hereby granted; and it is further

　　　　**ORDERED** that, notwithstanding section 2.6 of the Legal Representation Agreement, any amounts recovered as a result of the Renco Group Litigation shall be paid directly to the Trustee; and it is further

　　　　**ORDERED** that, notwithstanding sections 2.2(a) and 2.2(b) of the Legal Representation Agreement, the retention of any consultants and/or experts to be retained by Beus Gilbert PLLC in connection with the Renco Group Litigation shall be subject to Bankruptcy Court approval; and it is further

　　　　**ORDERED** that, in its role as litigation counsel Beus Gilbert shall be principally responsible for prosecuting the Renco Group Litigation; and it is further

　　　　**ORDERED** that all compensation of Beus Gilbert PLLC shall be subject to approval of the Court pursuant to 11 U.S.C. §§ 330 and 331; and it is further

　　　　**ORDERED** that this Court shall retain jurisdiction respecting all matters arising from or relating to the implementation of this Order.

Dated: **_October 31_**, 2003
　　　　New York, New York


　　　　　　　　　　　　　　**_S/ Robert E. Gerber_**
　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit C</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re | Chapter ~~11~~7 |
| MAGNESIUM CORPORATION OF AMERICA, et al., | Case No. 01 B 14312 (REG) |
| Debtors. | (Jointly Administered) |

---

## ORDER AUTHORIZING CHAPTER ~~11~~7 TRUSTEE TO RETAIN BEUS GILBERT PLLC AS LITIGATION COUNSEL

Upon the ~~A~~application, dated September 15, 2003 ~~(the "Application")~~, of Lee E. Buchwald ~~,~~(the "Trustee"), as chapter 11 trustee in the above-captioned debtors (the "~~Trustee"), for an order pursuant to~~Debtors"), praying for authority under sections 327(a) and 328(a) of ~~Title 11 of the United States Code (the "~~the Bankruptcy Code ~~"), for authority to~~to employ and retain ~~the law firm of~~Beus Gilbert PLLC ~~("Beus Gilbert")~~ as litigation counsel ~~; as more fully set forth in the Application~~in the Debtor's chapter 11 cases and in adversary proceeding 03-6559 commenced by the Trustee against The Renco Group, Inc., et al. (the "Renco Group Litigation"); and upon ~~consideration of~~ the ~~A~~affidavit of Timothy J. Paris, Esq., a member of Beus Gilbert PLLC, sworn to on September 15, 2003 (the "Paris Affidavit"); and ~~the Court being satisfied that, based on the representation made in the Application and the Paris Affidavit that Beus Gilbert does not represent or hold an interest adverse to the Debtors or their estates respecting the matters upon which the firm is to be engaged, and is a~~it appearing that the members and associates of Beus Gilbert PLLC are disinterested persons ~~as~~ ~~that term is used in~~within the meaning of section ~~101(14) of the Bankruptcy Code, as modified by section 1107(b~~327(a) of the Bankruptcy Code; and ~~the Court having jurisdiction to consider~~

1

the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the official committee of unsecured creditors, (iii) Beus Gilbert, and (iv) those parties entitled to notice pursuant to this Court's order August 8, 2002, establishing certain notice procedures in these cases; and no other or further notice need be provided; and no objections having been received to the relief requested herein; and the relief requested in the Application being in the best interests it appearing that the Debtor's cases were converted to cases under chapter 7 of the Bankruptcy Code by order dated September 24, 2003; and thereafter Mr. Buchwald having been appointed chapter 7 trustee of the Debtors and their' estates and creditors; and the Court having reviewed the Application being satisfied that Beus Gilbert PLLC represents no interest adverse to the Debtors' estates or the estates' creditors in the matters upon which it is to be engaged, and the employment and retention of Beus Gilbert PLLC is necessary and would be in the best interest of the estates; and having heard the statements in support of the relief requested all objections at a hearing before the Court (the "Hearing"); and the Court conducted on October 27, 2003; and having determined that the legal and factual bases set forth in the Aapplication and at the Hhearing establish just cause for the relief granted herein;, and after due deliberation and sufficient cause appearing therefor,; it is hereby

**ORDERED** that ~~, pursuant to section 327(a) and 328(a) of the Bankruptcy Code,~~ the Trustee's ~~retention of~~ application to retain Beus Gilbert PLLC as litigation counsel in accordance with the terms and conditions detailed in the "Legal Representation Agreement" annexed to the ~~A~~application as Exhibit "A" ~~and as set forth in the Paris Affidavit is approved~~(except as modified herein) is hereby granted; and it is further

~~**ORDERED** that Beus Gilbert shall be compensated in accordance with (i) the procedures set forth in sections 330 and 331 of the Bankruptcy Code, (ii) the applicable Federal Rules of Bankruptcy Procedure, (iii) the Local Bankruptcy Rules of the Bankruptcy Court for the Southern District of New York, (iv) the Administrative Orders Re: Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases issued by the Southern District of New York Bankruptcy Judges, (iv) the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under Section 330 and dated January 30, 1996, and (v) such procedures as may be fixed by order of this Court,; and it is further~~

~~**ORDERED** that the Application satisfies rule 9013-1(b) of the Local Bankruptcy Rules of the Bankruptcy Court for the Southern District of New York; and it is further~~

**ORDERED** that, notwithstanding section 2.6 of the Legal Representation Agreement, any amounts recovered as a result of the Renco Group Litigation shall be paid directly to the Trustee; and it is further

**ORDERED** that, notwithstanding sections 2.2(a) and 2.2(b) of the Legal Representation Agreement, the retention of any consultants and/or experts to be retained by Beus Gilbert PLLC in connection with the Renco Group Litigation shall be subject to Bankruptcy Court approval; and it is further

**ORDERED** that, in its role as litigation counsel Beus Gilbert shall be principally responsible for prosecuting the Renco Group Litigation; and it is further

**ORDERED** that all compensation of Beus Gilbert PLLC shall be subject to approval of the Court pursuant to 11 U.S.C. §§ 330 and 331; and it is further

**ORDERED** that this Court shall retain jurisdiction respecting all matters arising from or relating to the implementation of this Order.

Dated: _____, 2003.
        Dated: *October 31*, 2003
        New York, New York


                                        *S/ Robert E. Gerber*
                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

62908399 v162909205 v1

4

**<u>Exhibit D</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  | : |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| SUNEDISON, INC., *et al.*, | : | Case No. 16-10992 (SMB) |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |
| _____ | : |  |

### ORDER PURSUANT TO BANKRUPTCY CODE
### SECTIONS 327(e) AND 328(a), BANKRUPTCY RULE 2014(a),
### AND LOCAL BANKRUPTCY RULE 2014-1 AUTHORIZING THE
### EMPLOYMENT AND RETENTION OF COHEN & GRESSER LLP AS SPECIAL
### COUNSEL TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application (the "Application")[2] of the Debtors for an Order,

pursuant to sections 327(e) and 328(a) of title 11 of the United States Code (the

"Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rule 2014-1 of the Local Bankruptcy Rules for the United

States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax
identification number, are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE
Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio,
LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669);
SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC
(3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC
(5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex
Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC
(5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore
Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub
Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First
Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP
Renewables, LLC (5513); and Hancock Renewables Holdings, LLC (N/A). The address of the
Debtors' corporate headquarters is 13736 Riverport Drive, Maryland Heights, Missouri 63043.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
Application.

Rules") authorizing the employment and retention of Cohen & Gresser LLP ("C&G") as

special counsel to the Debtors *nunc pro tunc* to the Petition Date; and upon the First Day

Declaration, the Cohen Declaration, and the Truong Declaration; and the Court having

reviewed the Application, the First Day Declaration, the Cohen Declaration, and the

Truong Declaration;  and the Court being satisfied with the representations made in the

Application and the Cohen Declaration that C&G represents no interest adverse to the

Debtors or their estates with respect to the matters on which C&G will be employed,

that its employment is necessary and in the best interests of the Debtors' estates,

creditors, and other parties in interest;  and it appearing that the Court has jurisdiction

over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it further appearing that this

matter is a core proceeding pursuant to 28 U.S.C. § 157(b);  and due and sufficient notice

of the Application having been given under the particular circumstances; and it

appearing that no other or further notice need be provided; and upon the record herein;

and after due deliberation thereon, and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.      The Application is GRANTED as set forth herein.

2.      To the extent the Application or any of the Engagement

Agreements are inconsistent with this Order, the terms of this Order shall govern.

3.      Pursuant to Bankruptcy Code sections 327(e) and 328(a), the

Debtors, as debtors and debtors in possession, are authorized to employ and retain

C&G as special counsel under retainers substantially in the form attached to the

Application as an exhibit to the Cohen Declaration effective as of the Petition Date, in

accordance with the Application, the Engagement Agreements, the Cohen Declaration

and this Order, to perform the Services as described in the Application.

4.    C&G shall be compensated in accordance with the applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules,

and any orders entered in these cases governing professional compensation and

reimbursement for services rendered and charges and disbursements incurred.

5.    Prior to applying any increases in its hourly rates beyond the rates

set forth in the Cohen Declaration, C&G shall file with the Court and provide ten days'

notice of any such increases to the Debtors, the United States Trustee, any official

committee appointed in the Chapter 11 Cases, counsel to the Tranche B Lenders (as

defined in the debtor-in-possession credit agreement) and the steering committee of the

second lien creditors, and counsel to the administrative agent under the debtor-in-

possession financing facility.  The United States Trustee retains all rights to object to

such a rate increase, and the Court retains the right to review any rate increase.

6.    Notwithstanding any stay that might be imposed by Bankruptcy

Rule 6004(h) or otherwise, this Order shall be effective and enforceable immediately

upon entry hereof.

7.    Notwithstanding any provisions in the Engagement Agreements

that might be read to the contrary, during the pendency of the Chapter 11 Cases, C&G

will not represent present or future clients of C&G on matters adverse to the Debtors in

these cases.

8.       Notwithstanding any provision in the Engagement Agreements to the contrary, any retainers shall be applied to the payment of fees and costs as they are approved by the Court.

9.       Notwithstanding any provisions in the Engagement Agreements that might be read to the contrary (i) any disputes, including requests for arbitration, between the Debtors and CG must be must be brought to the Bankruptcy Court, and (ii) CG must obtain Court approval in connection with termination of the engagement.

10.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

11.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated:  New York, New York
        July 20th , 2016

                                    /s/ STUART M. BERNSTEIN
                                    UNITED STATES BANKRUPTCY JUDGE