**Hearing Date and Time: January 23, 2017 at 10:00 a.m.**

Bijan Amini
Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
bamini@storchamini.com
jchubak@storchamini.com

*Attorneys for Applicant Beus Gilbert PLLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| MAGNESIUM CORPORATION OF AMERICA, *et al.*, | Case No. 01-14312-mkv |
| Debtors. | (Jointly Administered) |

**BEUS GILBERT PLLC'S REPLY IN SUPPORT OF FINAL**
<u>**APPLICATION FOR ALLOWANCE OF COMPENSATION**</u>

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I.    THE FEE APPLICATION IS NOT SUBJECT TO REASONABLENESS REVIEW UNDER SECTION 330(a)(3)-(4) ................................................................ 2

    A.    The Retention Order Did Not Remove the Sole Reference to Bankruptcy Code Section 328 in the Text of the Proposed Order ............................................. 4

    B.    Judge Gerber Did Not Give Mere Preliminary Approval to Beus Gilbert's Contingent Fee ........................................................................................................ 5

    C.    Due Proportionality Standard Has No Application ................................................ 7

II.   THE COMPENSATION TERMS WERE NOT IMPROVIDENT IN LIGHT OF DEVELOPMENTS NOT CAPABLE OF BEING ANTICIPATED UNDER SECTION 328(a) ................................................................................................... 10

III.  THE AD HOC CONSORTIUM IS PRECLUDED FROM CHALLENGING BEUS GILBERT'S FEE AWARD ................................................................................ 12

IV.  RENCO GROUP'S OBJECTION IGNORES THAT THE TRUSTEE PRESENTLY OWES BEUS GILBERT THE AMOUNT SOUGHT, AND THAT THE JUDGMENT'S PROCEEDS MUST BE DISTRIBUTED PURSUANT TO SECTION 726(a) ................................................................................................... 13

CONCLUSION ..................................................................................................................... 15

# TABLE OF CONTENTS

Page(s)

**Cases**

*In re Airspect Air, Inc.*,
  385 F.3d 915 (6th Cir. 2004) ................................................................................................ 5

*In re All Island Truck Leasing Corp.*,
  546 B.R. 522 (Bankr. E.D.N.Y. 2016) ................................................................................ 10

*In re B.U.M. Int'l, Inc.*,
  229 F.3d 824 (9th Cir. 2000) ................................................................................................ 5

*In re Fashion Shop of Kentucky, Inc.*,
  350 Fed. App'x 24 (6th Cir. 2009) ....................................................................................... 6

*In re Kohn*,
  421 B.R. 115 (Bankr. S.D.N.Y. 2009) ................................................................................ 10

*In re McDonald Bros. Const.*,
  114 B.R. 989 (Bankr. N.D. Ill. 1990) ................................................................................... 8

*In re Relativity Fashion, LLC*,
  No. 15-11989-mew, 2016 WL 8607005 (Bankr. S.D.N.Y. Dec. 16, 2016) ......................... 7

*In re Smart World Techs., LLC*,
  552 F.3d 228 (2d Cir. 2009) ............................................................................... 2, 3, 4, 5, 6, 7

*In re Texas Securities, Inc.*,
  218 F.3d 443 (5th Cir. 2000) ................................................................................................ 7

*In re The Circle K Corp.*,
  279 F.3d 669 (9th Cir. 2002) ................................................................................................ 5

**Statutes**

11 U.S.C. § 327 ............................................................................................................................ 4

11 U.S.C. § 328 .................................................................................................................... passim

11 U.S.C. § 330 .................................................................................................................... passim

11 U.S.C. § 331 ............................................................................................................. 3, 5, 6, 13

11 U.S.C. § 726 .......................................................................................................................... 14

Beus Gilbert, as litigation counsel to the Trustee, hereby submits this reply in support of its final application for allowance of compensation, filed December 13, 2017 [ECF No. 934] ("Fee Application"), and in response to the Ad Hoc Consortium's and Renco Group's objections, filed January 4, 2018 [ECF Nos. 951, 953] ("Consortium Obj." and "Renco Obj."), and states as follows:[1]

## INTRODUCTION

1. Both the Ad Hoc Consortium and Renco Group challenge Beus Gilbert's right to its contingent fee award under its Court-approved agreement by collaterally attacking now-final judgments entered against them.

2. The Ad Hoc Consortium "strongly" objected to the Trustee's sale of a partial interest in the judgment entered in the Renco Group Litigation, and took an appeal and unsuccessfully moved the District Court for a stay when its objection was overruled by this Court. It nevertheless now challenges the Fee Application, arguing the "improvident" exception to allowance of contingent fees that were preapproved under Bankruptcy Code section 328(a) has been satisfied because no one could have predicted such sale in 2003. According to the Ad Hoc Consortium, fairness dictates Beus Gilbert "eat" the cost of that transaction, even though it derived no meaningful benefit from the same. The Ad Hoc Consortium offers no reason for this result, save that Beus Gilbert's professional fees are entitled to administrative priority, while noteholders have no priority. While their argument fails on the merits for reasons described below, this Court need not consider the same as it amounts to an attack on this Court's order overruling their prior sale objection.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Fee Application.

1

3. Renco Group goes even farther, and attacks the substance of the underlying judgment entered against it in the Renco Group Litigation. According to Renco Group, the Fee Application is not yet ripe, as it is possible substantially all claims against the Debtors will be disallowed, in which case Beus Gilbert will not have conferred any benefit on the Debtors' estates and should not be paid. This argument is also simply a collateral attack on the judgment entered against Renco Group. That judgment—on fraudulent conveyance claims under New York law—was premised on the Debtors' insolvency, which was a necessary element of the state law claims described in the jury instructions. It was affirmed by the Second Circuit, and Renco Group's petition for certiorari was denied. Renco Group should not now be allowed to relitigate the question of solvency in this contested matter.

4. The objections should be overruled, and the Fee Application should be granted, pursuant to Bankruptcy Code section 330(a)(1).

## ARGUMENT

### I. THE FEE APPLICATION IS NOT SUBJECT TO REASONABLENESS REVIEW UNDER SECTION 330(a)(3)-(4)

5. In its Fee Application, Beus Gilbert argued that each factor considered by the Second Circuit in *In re Smart World Techs., LLC*, 552 F.3d 228, 233 (2d Cir. 2009) to evaluate the totality of the circumstances in determining whether a professional's compensation terms were preapproved under section 328(a) supports a finding that Beus Gilbert's 41% contingency fee under the LRA was preapproved under such section:

- "Whether the debtor's motion for appointment specifically requested fee pre-approval." The Retention Application requested preapproval of Beus Gilbert's contingent fee under section 328(a), and the Ad Hoc Consortium acknowledges as much. (Consortium Obj. ¶¶7.a, 9.)

- "Whether the court's order assessed the reasonableness of the fee." Judge Gerber assessed the reasonableness of the fee, by overruling Renco Group's objection to Beus Gilbert's employment on the ground that its proposed fee was unreasonable.

2

- "Whether either the order or the motion expressly invoked § 328(a)." Both the Retention Application and the Retention Order expressly invoke section 328(a).

(Fee Application ¶55-60.)

6. Beus Gilbert further argued that additional factors not specifically identified by the Second Circuit in *Smart World* support a determination its payment terms were preapproved:

- The 41% contingency fee award which the Ad Hoc Consortium objects to was specifically proposed by the U.S. Trustee, after requiring changes to Beus Gilbert's original proposed agreement, in lieu of the 40% award set forth in the original agreement coupled with Beus Gilbert's standard provision providing for payment of interest on litigation costs the firm advanced. (Beus Decl. ¶¶16-18.)

- Beus Gilbert was first approached to represent noteholders' interests by a senior noteholder (Beus Decl. ¶8) (predecessors to the Ad Hoc Group/Consortium), which approached Beus Gilbert to represent their interests, and the Ad Hoc Group (predecessor to the Ad Hoc Consortium) advocated for, without of course an objection to, the firm's retention (Retention Application ¶¶28-32).

- This Court actually modified two provisions of Beus Gilbert's fee agreement, but expressly stated in the Retention Order that the "application to retain Beus Gilbert PLLC as litigation counsel in accordance with the terms and conditions detailed in the 'Legal Representation Agreement' … is hereby granted." (Emphasis added.)

It the foregoing did not result in preapproval of Beus Gilbert's 41% contingency fee under section 328(a), it would be very difficult to know what "approval" under that section means or how any professional could meet it.

7. The Ad Hoc Consortium's argument is simple. It argues the second *Smart World* factor is not met because Judge Gerber gave mere "preliminary or conditional" approval to Beus Gilbert's contingent fee, and half of the third factor is not met because the Retention Order:

(a) removed "the sole reference to Bankruptcy Code section 328 in the text of the Proposed Order;" and

(b) replaced the phrase "Beus Gilbert shall be compensated in accordance with … the procedures set forth in sections 330 and 331 of the Bankruptcy Code," in the proposed order's second decretal paragraph, with the phrase "all compensation of Beus Gilbert

3

PLLC shall be subject to approval of the Court pursuant to 11 U.S.C. §§ 330 and 331," in the Retention Order's penultimate decretal paragraph. (Consortium Obj. ¶¶9-11.)

8. Putting aside that the Ad Hoc Consortium admits the first *Smart World* factor and half of the third factor (that portion analyzing the Retention Application) are met, and that not all factors need be satisfied for a fee to be preapproved under section 328(a) (*Smart World*, 552 F.3d at 233 ("We agree with the Sixth Circuit and hold that pre-approval of a fee agreement under 11 U.S.C. §328(a) depends on the totality of the circumstances")), and the absence of a response by the Ad Hoc Consortium as to the additional factors which support a preapproval determination (described in ¶6, *supra*), the Ad Hoc Consortium is flat wrong as to the factors which are the subject of its objection.

### A. The Retention Order Did Not Remove the Sole Reference to Bankruptcy Code Section 328 in the Text of the Proposed Order

9. The Ad Hoc Consortium's statement that the Retention Order removed "the sole reference to Bankruptcy Code section 328 in the text of the Proposed Order" is misleading. Reference to section 328 was removed from the sole decretal paragraph referencing that section, which paragraph was deleted in its entirety. However, the Retention Order states it grants Beus Gilbert's "application … praying for authority under section … 328," and further, specifically grants "the Trustee's application to retain Beus Gilbert PLLC as litigation counsel in accordance with the terms and conditions detailed in the 'Legal Representation Agreement' annexed to the application as Exhibit 'A,'" except as modified by the order. Indeed, in a footnote the Ad Hoc Consortium admits "[t]he preamble to both the Proposed Order and the Retention Order do reference that the Trustee … sought to retain [Beus Gilbert] pursuant to … sections 327 and 328." (Consortium Obj. ¶10 n.8.)

4

### B. Judge Gerber Did Not Give Mere Preliminary Approval to Beus Gilbert's Contingent Fee

10. The Ad Hoc Consortium also argues the phrase "all compensation of Beus Gilbert PLLC shall be subject to approval of the Court pursuant to 11 U.S.C. §§ 330 and 331" in the Retention Order renders Judge Gerber's approval of the LRA preliminary and conditional, citing two Ninth Circuit decisions, *In re The Circle K Corp.*, 279 F.3d 669 (9th Cir. 2002) and *In re B.U.M. Int'l, Inc.*, 229 F.3d 824, 829-30 (9th Cir. 2000). (Consortium Obj. ¶¶18-19.)

11. This argument fails for two reasons. First, the Second Circuit expressly rejected the Ninth Circuit's approach in evaluating if a fee agreement was preapproved under section 328(a). In *Smart World*, the Second Circuit observed "[t]he Ninth Circuit adopted a[n] even stricter approach [than the Third Circuit and] has required that the pre-approval be final, not merely preliminary or conditional." 552 F.3d at 233 (citing *Circle K*, 247 F.3d at 673-74 and *B.U.M.*, 229 F.3d at 830). The Second Circuit further noted that "[t]he Sixth Circuit rejected this approach as being 'too constrictive' and adopted a 'totality of the circumstances' test." *Id.* (citing *In re Airspect Air, Inc.*, 385 F.3d 915, 921-22 (6th Cir. 2004)). In determining which standard to adopt, the Second Circuit went with the latter. *Id.* at 233 ("We agree with the Sixth Circuit and hold that pre-approval of a fee agreement under 11 U.S.C. § 328(a) depends on the totality of the circumstances…").

12. Second, even though the Second Circuit has flatly rejected the Ninth Circuit's approach for determining if employment terms have been preapproved under section 328(a), set forth in *Circle K* and *B.U.M.*, the Retention Order herein meets the Ninth Circuit's far more rigorous standard. That standard was described in *Circle K* as follows:

> Of course, a bankruptcy court is not compelled to accept a professional's employment under § 328 merely because the application cites that statutory provision. The bankruptcy court is free to make clear that it is only conditionally approving the

5

> professional's retention, such that § 330 is applicable. Our point is merely that <u>if a professional's retention application cites § 328 and the bankruptcy court's order otherwise makes clear that the retention has been approved pursuant to § 328, we will consider § 328 to apply even if the retention order does not specifically reference that section</u>.

247 F.3d at 672 n.2 (emphasis added).

13. Beus Gilbert's Retention Application cites section 328, as does the Retention Order. Even had the Retention Order omitted reference to section 328, that would be irrelevant under both the Second Circuit standard (which considers the totality of the circumstances) and Ninth Circuit standard (which treats reference to section 328 as talismanic, as noted above). Beus Gilbert's Retention Order further "makes clear that the retention has been approved pursuant to § 328" under the Sixth Circuit's standard, adopted by the Second Circuit in *Smart World*, by expressly approving the LRA's terms in the first decretal paragraph. *In re Fashion Shop of Kentucky, Inc.*, 350 Fed. App'x 24, 27 (6th Cir. 2009) (clause in retention order employing professional "upon the terms … set forth in the Application" constitutes preapproval under section 328(a)).

14. The "subject to approval of the Court pursuant to 11 U.S.C. §§ 330 and 331" language in the Retention Order does not mandate a reasonableness review under section 330(a)(3)-(4). Rather, that language merely confirms that final approval of Beus Gilbert's fees is subject to approval of this Court under section 330(a)(1), and interim approval is governed by section 331. (Fee Application ¶60.) That is why similar language was included in the proposed order. The Ad Hoc Consortium is unable to articulate any substantive difference between the language in the proposed order and that in the Retention Order (both quoted in ¶7(b), *supra*). Their argument that Cohen & Gresser LLP's retention order in *SunEdison* omitted reference to section 330 (Consortium Obj. ¶21 n.16, Ex. D) is irrelevant. Indeed, the Ad Hoc Consortium's

6

position that a retention order must omit reference to section 330 in order for the professional's compensation terms to be preapproved under section 328(a) is at odds with the Second Circuit's standard in *Smart World*.[2]

C. **Due Proportionality Standard Has No Application**

15.    The Ad Hoc Consortium argues this Court has an independent obligation to determine if "the Requested Fee is 'reasonable' within the meaning of section 330(a)(1)(A)," and that the amount of Beus Gilbert's requested compensation is not reasonable because allowance of the same would result in professional fees being out of proportion to creditor recoveries. (Consortium Obj. ¶27.)

16.    This analysis is erroneous in several respects. The reasonableness requirement in section 330(a)(1)(A) is "subject to section … 328," which permits courts to determine reasonableness in advance. *In re Texas Securities, Inc.*, 218 F.3d 443, 447 ("The only part of the agreement that § 328 governs is the 40% contingent fee agreement because the court expressly approved and established that amount in [its] Employment Orders. This arrangement enabled the bankruptcy court to grant its prior approval because the court could evaluate the reasonableness of the specified amount in advance"); *Relativity*, 2016 WL 8607005, at *2 ("Essentially, under Section 328(a), reasonableness is judged in advance, and the issue is not revisited except in the

---

[2] The Ad Hoc Consortium's separate argument that this Court can undertake a reasonableness review under section 330(a)(3)-(4), notwithstanding its preapproval of Beus Gilbert's contingency fee award under section 328, must be rejected. In support of that argument, the Ad Hoc Consortium cites the Blackstone Protocol described in *In re Relativity Fashion, LLC*, No. 15-11989-mew, 2016 WL 8607005, at *6 (Bankr. S.D.N.Y. Dec. 16, 2016), under which investment bankers' retention orders were approved under section 328, subject to the limitation the U.S. Trustee could object to their compensation on section 330(a)(3)-(4) grounds even though no other parties could. Judge Wiles himself rejected this approach, and described this protocol as inconsistent with section 328. *Id*. ("Frankly, it is not at all clear that Congress contemplated this kind of hybrid approach when it enacted Section 328(a) … In *In re Smart World Technologies* the court referred to Sections 328 and 330 as being 'mutually exclusive,' and held that a court may not conduct a Section 330 inquiry if there has been a Section 328(a) approval").

7

very narrow circumstances permitted by the statute"); *see also In re McDonald Bros. Const.*, 114 B.R. 989, 994 n.2 (Bankr. N.D. Ill. 1990) ("Section 330 is subject to Section 328(a), which allows a trustee … to retain professionals … on any reasonable terms, subject to court approval"). Accordingly, although courts have a duty to review fee applications, Judge Gerber already determined the compensation sought by Beus Gilbert is reasonable.

17. In addition, the "due proportionality" analysis sought by the Ad Hoc Consortium has no application where a contingent fee has been preapproved. None of the "due proportionality" decisions cited (in Consortium Obj. ¶¶27-32) involved a professional employed on a contingency fee basis. This makes sense, because where special counsel is employed on a contingency fee basis the allocation of any recovery generated by such counsel between it and the estate is by definition fixed (and hence, proportional).

18. Significantly, the due proportionality decisions the Ad Hoc Consortium cited reduced the relevant professional's recovery to a percentage-recovery similar to or greater than Beus Gilbert's contingency fee award herein. (Consortium Obj. ¶32, citing decisions reducing allowed compensation to 40%-50% of judgment.) The Ad Hoc Consortium is aware that Beus Gilbert's requested compensation is in line with reduced fees awarded to those professionals, and proposed Beus Gilbert be awarded "45% of the Trustee's judgment" under a due proportionality analysis ($96.6 million, or $8.6 million more than what it requested). (Consortium Obj. ¶33.) However, the Ad Hoc Consortium goes on to argue "all other administrative expenses associated with the judgment" should then come out of that $96.6 million award, including "the $25 million of the judgment paid to finance interim awards of professional fees [to the Trustee's other professionals], the Trustee's commission at the statutory maximum of 3%, the cost of the Trustee's appellate counsel, and the fees and expenses of the Trustee's attorneys at Stevens & Lee" (*id.* ¶33), which in turn would reduce Beus Gilbert's recovery by over $40 million. The Ad

8

Hoc Consortium's sole justification for shifting these obligations—which were incurred by the estates and not Beus Gilbert—to Beus Gilbert is that they are administrative expenses. (*Id.* ¶35.)

19. That proposal must be rejected, as it would trigger a default under the Court-approved LRA. The Ad Hoc Consortium's proposal would not result in "a 55/45 split of the Trustee's judgment," as alleged by it (Consortium Obj. ¶33), but rather would result in a 74/26 split between general unsecured and other administrative creditors, on the one hand, and Beus Gilbert, on the other, that would serve to reduce Beus Gilbert's contingent fee award to 26% of the Trustee's gross recovery, even though the LRA provides for a 41% recovery.

20. The result sought by the Ad Hoc Consortium would also be incredibly unfair, given that Beus Gilbert has no control over other professionals' administrative expenses, and derived no meaningful benefit from the vast majority of these expenses, such as the $25 million in litigation interest sale.[3] The Trustee's other administrative expenses should be paid out of estate property remaining after payment of Beus Gilbert's preapproved contingency fee, and not out of said fee.

21. Finally, the Ad Hoc Consortium's argument that a due proportionality analysis mandates a reduction in Beus Gilbert's fees is based on the false premise that its "professional fees overwhelm" or "dwarf" "creditor recoveries" (Consortium Obj. ¶¶29-30). That is incorrect, as evidenced by the table included in Consortium Obj. ¶31. By the Fee Application, Beus Gilbert seeks allowance of compensation in the amount of $88 million (not $90 million, *id.* ¶32). The Ad Hoc Consortium admits that as a result of the $214.7 million judgment obtained by Beus

---

[3] In seeking approval of that transaction from this Court, the Trustee explained to Beus Gilbert that the sale was done for the benefit of the estates and their creditors, and for the purpose (among others) of protecting creditors against downside risk of a complete reversal of the judgment.

9

Gilbert for the benefit of the Debtors' estates,[4] even after accounting for the Trustee's statutory commission, his other professionals' fees and expenses, and repayment of litigation financing, the "Balance Available for General Unsecured Creditors" is $86.3 million. Beus Gilbert's compensation is just 2% greater than unsecured creditors' total recoveries.

## II. THE COMPENSATION TERMS WERE NOT IMPROVIDENT IN LIGHT OF DEVELOPMENTS NOT CAPABLE OF BEING ANTICIPATED UNDER SECTION 328(a)

22.  As set forth above, the Ad Hoc Consortium's argument that the Fee Application is subject to review under section 330(a)(3)-(4), rather than section 328, is meritless. Recognizing this, the Ad Hoc Consortium makes one argument—and only one argument—under section 328.[5] Their argument is simple: eighteen months after the $213 million judgment was entered, the Trustee moved this Court to sell a portion of the judgment. According to the Ad Hoc Consortium, because that sale reduced the amount of proceeds from the judgment available to creditors by $25 million, Beus Gilbert's fee should be reduced by that amount. (Consortium Obj. ¶42.)

23.  This argument has been made before. In June 2016, the Trustee moved to sell a portion of the judgment [ECF No. 710]. Several entities objected. One was Jefferies LLC, which stated through counsel (specifically, the Ad Hoc Consortium's counsel) "creditors would be harmed—not benefitted—if the Renco Litigation Interest is sold now, with valuable potential

---

[4] The Ad Hoc Consortium suggests that Beus Gilbert "provide[d] no real benefit to the estate," citing *In re All Island Truck Leasing Corp.*, 546 B.R. 522, 535 (Bankr. E.D.N.Y. 2016); *In re Kohn*, 421 B.R. 115, 125 (Bankr. S.D.N.Y. 2009). (Consortium Obj. ¶29.) That is false, and insulting. But for Beus Gilbert's efforts, general unsecured creditors like the Ad Hoc Consortium would not be receiving $86.3 million.

[5] The Ad Hoc Group misstates the standard under section 328; it is not, as the Ad Hoc Consortium claims, that a preapproved fee may be later disapproved if found improvident "in light of unforeseeable developments." (Consortium Obj. ¶37.) Rather, the standard is whether the terms of Beus Gilbert's LRA have proven to be "improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions" (emphasis added).

10

upside leaving these estates" [ECF No. 731, ¶10]. The Ad Hoc Consortium filed an enthusiastic joinder stating [ECF No. 740, ¶4] they "**strongly** opposed the Trustee's attempt to monetize the Renco Litigation Interest, as well as the specific economics of AEM's bid. The supposed 'hedge [of] the Estates' downside exposure' that the Sale would provide would plainly benefit the Trustee and his retained professionals." (*Id.*, emphasis in original.)

24.  This Court overruled these objections, as well as one interposed by Renco Group [ECF No. 732], concluding "[a]pproval of the sale of the Renco Litigation Interest and consummation of the sale of the Renco Litigation Interest at this time are in the best interests of the Debtors, their creditors and respective estates … The terms and conditions of the Sale Agreement are fair and reasonable" [ECF No. 745, p.5 of 9, ¶¶11-12]. This Court expressly held that "The Jefferies Objection, and the Noteholders Ad Hoc Consortium Joinder are overruled on the merits." (*Id*. p.6 of 9, ¶2.) Renco Group's objection was also overruled on the merits. (*Id*. ¶3.) The Ad Hoc Consortium and Renco Group appealed (No. 1:16-cv-6844, No. 1:16-cv-6822), and the sale closed after the District Court denied the Ad Hoc Consortium's motion for a stay pending appeal.

25.  After its "strong" objection on the ground that the sale would reduce the pool of funds available to unsecured creditors from the judgment was overruled, the Ad Hoc Group now makes that same argument again. Its argument is nothing more than a collateral attack on this Court's prior order. This Court should not countenance this repeated argument. Since this is the only basis on which the Ad Hoc Consortium objects under section 328, its entire objection should be overruled and Beus Gilbert's application should be approved.

26.  The argument fails on the merits in any event. According to the Ad hoc Consortium, a reduction in Beus Gilbert's fee is justified under section 328(a)'s "improvident" standard, because "it could not have been foreseen that the Trustee would incur in excess of $25

11

million in administrative expenses for what amounted to a one-year advance on the Trustee's professional fees and his own interim commissions." (Consortium Obj. ¶38.) Section 328(a), however, only permits a court to allow compensation different from preapproved terms and conditions "if <u>such</u> terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." To satisfy this standard the Ad Hoc Consortium had to demonstrate the terms and conditions of Beus Gilbert's employment (*i.e.*, its 41% contingent fee award) proved improvident in light of developments not capable of being anticipated in 2003. It is insufficient to complain some allegedly improvident event occurred, unrelated to the terms of Beus Gilbert's employment, that affected creditor recoveries that could not have been anticipated in 2003, as the Ad Hoc Consortium has done.

### III. THE AD HOC CONSORTIUM IS PRECLUDED FROM CHALLENGING BEUS GILBERT'S FEE AWARD

27. In its Fee Application, Beus Gilbert argued the Ad Hoc Consortium is precluded from challenging its requested compensation under the doctrines of both claim and issue preclusion. (Fee Application ¶¶67-73.) The Ad Hoc Consortium responds that both doctrines are inapplicable because "[f]or both claim and issue preclusion, an identity of issue must be present. At issue in 2003 was the Trustee's authority to retain the Applicants and Judge Gerber's conditional approval of Applicants' fee terms …; at issue today is whether any amount above the Applicants' approximately $15 million in base fees is in fact reasonable." (Consortium Obj. ¶45.)

28. This argument fails. While collateral estoppel requires that identical issue have been raised in a prior proceeding, res judicata does not, and instead requires that the claims asserted in the subsequent proceeding "were or could have been raised" in the prior proceeding. (Fee Application ¶67, citations omitted). The reasonableness of Beus Gilbert's contingent fee

12

percentage not only could have been raised at the retention stage, that issue was raised by Renco Group, whose objection was overruled by this Court. (*Id.* ¶68.) The Ad Hoc Consortium's assertion "[t]he reasonableness … of the Requested Fee … is only now being litigated" is false. (Consortium Obj. ¶46.)

29. An identity of issues also exists because section 328(a) required that Judge Gerber determine in 2003 that Beus Gilbert's contingent fee under the LRA is reasonable before preapproving the same. 11 U.S.C. § 328 (permitting employment of professional "on any reasonable terms and conditions of employment, including … on a contingent fee basis"). The Ad Hoc Consortium admits today's issue likewise concerns whether Beus Gilbert's requested compensation is reasonable. (Consortium Obj. ¶45.) The Ad Hoc Consortium states the 2003 contested matter was not a determination as to reasonableness "[b]ecause Judge Gerber expressly reserved decision on the reasonableness of any compensation ultimately sought by the Applicants." (*Id.* ¶46.) That is false. As set forth above, the language in the Retention Order relied on by the Ad Hoc Consortium for this argument merely confirms final approval of Beus Gilbert's fees are subject to Court approval under section 330(a)(1), and interim approval is governed by section 331.[6]

IV. **RENCO GROUP'S OBJECTION IGNORES THAT THE TRUSTEE PRESENTLY OWES BEUS GILBERT THE AMOUNT SOUGHT, AND THAT THE JUDGMENT'S PROCEEDS MUST BE DISTRIBUTED PURSUANT TO SECTION 726(a)**

Renco Group argues "the Fee Application is not ripe for consideration" principally because "there are serious unresolved questions about whether there are any meaningful claims

---

[6] Had Judge Gerber wished to reserve decision, the operative provision of the Retention Order would have provided "Beus Gilbert shall be compensated in accordance with … the procedures set forth in sections 330(a)**(3)-(4)** and 331." The Retention Order, however, omits the bolded/underlined language, so there is no basis for assuming the reasonableness standard in those subsections applies to review of the Fee Application.

13

against either estate." (Renco Obj. pp.2-3, citing Adv. Pro. No. 16-1073, seeking equitable disallowance of $170 million in note claims.) According to Renco Group, if there are no claims, then Beus Gilbert conferred no benefit on the Debtors' estates and it is therefore not entitled to compensation.

This argument fails. At the outset, the Debtors' insolvency was <u>the</u> key element of the fraudulent transfer and fraudulent conveyance claims asserted against the defendants in the Renco Group Litigation, and Renco Group's position in this contested matter amounts to a collateral attack on the judgment entered against it. Perhaps more significantly, the Trustee's debt to Beus Gilbert has already been incurred, pursuant to the Court-approved LRA. The validity of that indebtedness does not depend on the outcome of Renco Group's adversary proceeding or the claim administration and reconciliation process. The Trustee must distribute estate property (*i.e.*, proceeds of the judgment) in accordance with the priority scheme set forth in Bankruptcy Code section 726. This means paying the estates' administrative expenses, which include Beus Gilbert's professional fees, in full (section 726(a)(1)) before paying unsecured creditors (subsection (a)(2)). If Renco Group is correct, and there are ultimately no allowed claims against either Debtor, proceeds of the judgment will be distributed "to the debtor" (*i.e.*, Renco Group) (subsection (a)(6)). However, this can only happen after satisfaction of administrative liabilities under section 726. No mechanism exists under chapter 7 (or chapter 3) for unwinding a professional's engagement terms and returning proceeds of a judgment it obtained, in the event that claims against the debtor(s) are wiped out, without first paying its Court-approved fees. Thus, there can be little doubt Beus Gilbert's Fee Application is ripe now.

Nor should the Trustee's special counsel have to wait until the Trustee's general bankruptcy counsel is ready to apply for payment (Renco Obj. p.3), so Renco Group can make a determination as to duplication of effort by professionals. Now that Beus Gilbert's Fee

Application, which includes time detail from 2003, has been filed, Renco Group can make a determination as to duplication of effort by Stevens & Lee once its final application for compensation is filed. However, the Debtors' estates would not realize any benefit by forcing Beus Gilbert to wait to have its Fee Application heard, given that it (unlike Stevens & Lee) is compensated on a contingency fee basis, and therefore is not entitled to less compensation if it duplicated services performed by Stevens & Lee.

## CONCLUSION

Beus Gilbert requests that this Court allow grant its Fee Application and such other and further relief as this Court deems just and proper.

Dated: January 19, 2018
      New York, New York

STORCH AMINI PC

/s/ Jeffrey Chubak
Bijan Amini
Jeffrey Chubak
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
bamini@storchamini.com
jchubak@storchamini.com

*Attorneys for Applicant Beus Gilbert PLLC*

15