UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
In re:                                    :   Chapter 7
                                          :
MAGNESIUM CORPORATION                     :
OF AMERICA, *et al.*,                     :   Case No. 01-14312 (MKV)
                                          :
                                          :
                    Debtors.              :   Jointly Administered
---------------------------------------------------------x

# MEMORANDUM AND ORDER GRANTING APPLICATION OF BEUS GILBERT PLLC, LITIGATION COUNSEL TO CHAPTER 7 TRUSTEE, FOR ALLOWANCE OF COMPENSATION

This constitutes the Court's ruling on the final application of Beus Gilbert PLLC ("Beus Gilbert"), litigation counsel to the Chapter 7 Trustee, for allowance of compensation (the "Fee Application") [ECF No. 934], which is supported by the Declaration of Leo R. Beus (the "Beus Declaration" or "Beus Decl.") [ECF No. 935]. An *Ad Hoc* Noteholder Consortium[1] (the "Noteholders") filed an objection to the Fee Application (the "Noteholder Objection") [ECF No. 951], and the Renco Group ("Renco") filed a response to the Fee Application (the "Renco Response") [ECF No. 953]. The Office of the United States Trustee (the "United States Trustee") has filed a Statement of No Objection [ECF No. 949] and Beus Gilbert has filed a reply in further support of the Fee Application (the "Beus Gilbert Reply"). [ECF No. 962]

By the Fee Application, Beus Gilbert seeks compensation on a final basis in connection with its successful prosecution of claims on behalf of the Debtors' estates in these jointly administered cases. Beus Gilbert was retained pursuant to an Order of this Court dated October

---

[1] The *Ad Hoc* Consortium consists of Merrill Lynch, Pierce, Fenner & Smith, Incorporated; New Generation Advisorsm, LLC; The Seaport Group LLC Profit Sharing Plan; and Serengeti Asset Management LP. *See Second Amended Verified Statement of Brown Rudnick LLP Pursuant to Federal Rule of Bankruptcy Procedure 2019* [ECF No. 950].

1

31, 2003 (the "Retention Order") [ECF No. 448], granting an application by the then-Chapter 11 Trustee, Lee E. Buchwald (the "Trustee" or "Chapter 11 Trustee"), to retain Beus Gilbert as litigation counsel (the "Retention Application" or "Retention Appl."). The Retention Application [ECF No. 417] was expressly made pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and sought to employ Beus Gilbert on a contingency fee basis as set forth in a heavily negotiated Legal Representation Agreement (the "LRA") that was annexed to the Retention Application as Exhibit A [ECF No. 417-1], and specifically incorporated into the Retention Order.

From July 31, 2003 to February 27, 2015, Beus Gilbert prosecuted various claims, including fraudulent conveyance, breach of fiduciary duty, aiding and abetting fraudulent conveyance and breach of fiduciary duty, negligence/professional malpractice, breach of contract, negligent misrepresentation, civil conspiracy, corporate waste and mismanagement, unjust enrichment, and payment of unlawful dividends against Renco, Ira Rennert ("Mr. Rennert") and others (the "Renco Litigation").[2] At the conclusion of the trial, the jury returned a verdict in the Trustee's favor, consisting of, *inter alia*, a $101 million damages award against Renco and a $16.2 million damages award against Mr. Rennert, representing 99% of the $118.4 million in damages the Trustee had sought to recover on behalf of the estates. On March 16, 2015, Judge Nathan issued a Memorandum & Order awarding the Trustee pre-judgment interest at the rate of 6% *per annum*, not compounded, from the August 2, 2001 petition date. The pre-judgment interest increased the overall judgment to $214,697,948.44 (the "Renco Litigation Judgment"). The judgment was affirmed by the Second Circuit. *Matter of Magnesium Corp. of Am.*, 682 F. App'x 24, 30 (2d Cir. 2017), *cert. denied sub nom. Renco Grp., Inc. v. Buchwald*, 138 S. Ct. 329, 199 L. Ed. 2d 213

---

[2] The Renco Litigation was first brought as an adversary proceeding before the Bankruptcy Court (Adv. Pro. No. 03-6559 (MKV)). On December 11, 2013, the Honorable Robert W. Sweet issued an Order withdrawing reference to the Bankruptcy Court. The Renco Litigation was subsequently assigned to, and presided over, by the Honorable Alison J. Nathan (Case No. 13-cv-7948).

(2017). Certiorari was denied by the United States Supreme Court on October 10, 2017. *Renco Grp., Inc. v. Buchwald*, 138 S. Ct. 329, 199 L. Ed. 2d 213 (2017). Beus Gilbert now seeks compensation of its fees in connection with the Renco Litigation. Specifically, Beus Gilbert seeks approval of its $88,026,158.86 contingency fee (*i.e.*, 41% of the Renco Litigation Judgement) in accordance with paragraph 2.1(a) of the LRA and the Retention Order.

The Noteholders oppose the Fee Application on the grounds that in approving the retention of Beus Gilbert, the Court (the Honorable Robert E. Gerber) did not pre-approve the terms (including the contingency fee structure) of the retention, but rather approved the terms only on a "preliminary basis," thus warranting review of the Fee Application for reasonableness and necessity under section 330 of the Bankruptcy Code, which the Noteholders contend Judge Gerber specifically reserved in the Retention Order. Renco, which is the judgment debtor in connection with the claims prosecuted by Beus Gilbert on behalf of the Trustee in the Renco Litigation, filed the Renco Response to the Fee Application, which it characterizes as a "Limited Objection." Renco requests that the Court defer ruling on the Fee Application until other issues, which are not yet the subject of any motion in these cases, are resolved at some point in the future. In a footnote in its Response, Renco joins the Noteholders in arguing that, pursuant to the Retention Order, the Fee Application must be subjected to full scrutiny and approval under section 330.

The Court held a hearing on the Fee Application on January 23, 2018 (the "Hearing"), at which counsel for Beus Gilbert, the Noteholders, the United States Trustee, Renco and the Trustee appeared and were heard in connection with the Fee Application. At the Hearing, Renco modified its position somewhat, stating that it does not oppose approval at this time of approximately $14.9 million in fees representing compensation at the Beus Gilbert firm's hourly rates, but requests adjournment of the hearing or deferral of ruling on the balance of the Fee Application.

3

The Court sees no reason to defer ruling on the Fee Application and, for the reasons stated herein, overrules the Renco Response and the Noteholder Objection.

The Court has carefully reviewed the Fee Application (including the Beus Declaration), the Noteholder Objection, the Renco Response and the Beus Gilbert Reply and considered the extensive arguments of counsel at the Hearing, the transcript of which is incorporated herein. **Based upon the foregoing and the record of all proceedings in these cases, the Court finds as follows:**

1. Beus Gilbert has proven, and indeed the evidence is uncontroverted that, as a general practice, Beus Gilbert always seeks advance approval from the Bankruptcy Court of the fee arrangement which it intends to enter into with a debtor in possession or a representative of a debtor's estate and will not undertake a representation absent such advance approval. *See* Beus Decl. at ¶ 5.

2. During the early stages of these cases, experienced counsel at the firms of Willkie Farr & Gallagher LLP and Chapman & Cutler LLP, counsel to the Official Committee of Unsecured Creditors, concluded that there did not appear to be a substantial likelihood of viable claims against the Renco Litigation defendants and opted not to pursue such claims. *Id*. at ¶ 11.

3. Mr. Beus was first approached to serve as litigation counsel to the Debtors with respect to the Renco Litigation claims by a senior noteholder of the Debtor in September 2002. *See* Beus Decl. at ¶ 8.

4. At a February 14, 2003 hearing on a motion for the appointment of a Chapter 11 Trustee or to convert the case to Chapter 7, Judge Gerber, who then had been presiding over these cases for over eighteen months, expressed serious reservations about the viability of the

contemplated claims, stating on the record that the action was "not by any means [a] slam dunk[]." [ECF No. 385-1: at 64:3] Further, while Judge Gerber expressed concerns about certain potential conflicts and his views regarding the need for an independent investigation of potential claims on behalf of the Debtors' estates (which led to the appointment of the Chapter 11 Trustee), Judge Gerber expressly stated on the record:

> I must say, by the way, that with respect to any claims that might be asserted, because of my uncertainties, again without prejudging, as to their ultimate strength and because of the liquidity condition of this estate, *I almost certainly will not approve any legal fees for either litigating or even investigating those claims, **unless they are on a contingent fee basis***. . . .

[ECF 385-1: at 65:24-66:7] (emphasis added)

5. Once appointed, the (then Chapter 11, now Chapter 7) Trustee was unable to secure representation by any firm other than Beus Gilbert to pursue the Renco Litigation. *See e.g.*, Retention Appl.

6. The LRA, including specifically the terms of the contingency fee structure, that was attached to the Retention Application and ultimately approved by Judge Gerber in the Retention Order, was the subject of heavy negotiation among, *inter alia*, the Beus Gilbert firm, the Chapter 11 Trustee and the United States Trustee. *See* Beus Decl. at ¶ 14-17.

7. At the insistence of the United States Trustee, the LRA provided that Beus Gilbert would bear all costs and expenses incurred in connection with the Renco Litigation and that expenses would not be recoverable if the Renco Litigation resulted in no recovery. *Id.* at ¶ 15. In addition, the United States Trustee refused to agree to a provision typically included in retention agreements entered into by Beus Gilbert, which allowed for interest on unpaid fees and expenses if the litigation were to be unsuccessful. *Id*. Ultimately, as a compromise, the Unites States Trustee insisted that the interest provision be removed and in exchange, the contingency fee percentages in the retention agreement be increased by

5

1%. *Id*. at ¶ 16. As a result of these negotiated changes, the United States Trustee did not object to the Retention Application. *Id*. at ¶ 16-17.

8. Once negotiations concluded, the Trustee filed the Retention Application, which was expressly made under sections 327 and 328 of the Bankruptcy Code, and incorporated the LRA. The Trustee attached a proposed retention order to the Retention Application (the "Proposed Order"). [ECF No. 417-4]

9. The then-existing *Ad Hoc* Group of Noteholders,[3] the largest creditor group, supported the engagement of Beus Gilbert on the terms set forth in the LRA, while Renco filed a limited objection. [ECF No. 442] In its objection, Renco argued, *inter alia*, that the LRA's contingency fee structure left open the possibility that Beus Gilbert may reap a windfall at the expense of the Debtors' creditors.

10. Judge Gerber held a hearing on the Retention Application on October 27, 2003, and on October 31, 2003 entered the Retention Order, approving the retention of Beus Gilbert over the objection of Renco. In approving the Retention Application, Judge Gerber made several modifications to the Proposed Order. *Compare* [ECF No. 417-4] (the proposed order), *with* [ECF No. 448] (the Retention Order); *also see* [ECF No. 934, Ex. 1; ECF No. 951, Ex. C] (blackline comparisons).

11. In 2005, Beus Gilbert filed an application seeking interim compensation in connection with a settlement with two of the named defendants in the Renco Litigation, which settlement had been approved by the Judge Gerber. [ECF No. 546] No party objected to that interim fee application or to application of the contingency fee terms and percentages

---

[3] In 2003, the *Ad Hoc* Group of Noteholders was comprised of AIG, Carlyle High Yield Partners, L.P., Carlyle High Yield Partners II, Ltd., Citadel Credit Training Ltd., Citadel Equity Fund Ltd., and RCG Carpathia. *See Verified Statement of Wormser, Kiely, Galef & Jacobs Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure Regarding Representation of Multiple Creditors*. [ECF No. 447]

in the LRA. Judge Gerber approved Beus Gilbert's interim fee application in accordance with the contingency fee structure set forth in the LRA. [ECF No. 554]

12. The Renco Litigation continued against the remaining defendants. It was a hotly contested litigation, lasting well over a decade, and was ultimately successfully litigated by Beus Gilbert on behalf of the Debtors' estates. Pursuant to the terms of the LRA, Beus Gilbert bore all costs and expenses of the Renco Litigation while it was pending. *See e.g.*, *First and Final Application of Beus Gilbert PLLC, Litigation Counsel to Chapter 7 Trustee, for Reimbursement of Expenses* [ECF No. 893].

**Based on the foregoing, the record of the Hearing, and all proceedings in these cases, the Court reaches the following conclusions:**

1. The Retention Order is clear and unambiguous.

2. Applying the "totality of the circumstances" analysis adopted by the Second Circuit in *In re Smart World Technologies., LLC*, 552 F.3d 228, 233 (2d Cir. 2009), the Court concludes that Judge Gerber pre-approved, under section 328(a) of the Bankruptcy Code, Beus Gilbert's retention on the terms of the LRA, including the contingency fee structure set forth in paragraph 2.1(a) thereof. Accordingly, the Court is not required to conduct a reasonableness analysis under section 330(a)(1) and the parties-in-interest are not permitted to challenge the Fee Application on reasonableness grounds.

3. The Noteholders' contention that Judge Gerber's modifications to the Proposed Order resulted in a retention of Beus Gilbert other than on a contingency fee basis is unavailing.

4. The Court does not find that, by adding "that all compensation of Beus Gilbert PLLC shall be subject to approval of the Court pursuant to 11 U.S.C. §§ 330 and 331. . . ." to the Retention Order, Judge Gerber denied approval under section 328(a) of the Bankruptcy

Code or withheld final approval pending a review of Beus Gilbert's fees under section 330(a)(1). Rather, Judge Gerber simply made clear that although he was approving the contingency fee arrangement set forth in the LRA, Beus Gilbert – as must all professionals – still needed to apply for allowance of its final fees pursuant to section 330 of the Bankruptcy Code. In this regard, the Court notes that section 330(a) specifically references section 328 and confirms that even when, as here, retention of a professional and the professional fee arrangements are pre-approved under section 328(a), the allowance of fees of bankruptcy professionals remains subject to final approval by the Bankruptcy Court.

5. Judge Gerber's further modifications to the Proposed Order reinforce the Court's conclusion that Judge Gerber pre-approved the contingency fee arrangement pursuant to section 328(a). Specifically, Judge Gerber modified the Proposed Order to specifically incorporate the vast majority of the LRA, including paragraph 2.1(a), which contains the contingency fee percentages and terms, into the Retention Order. Judge Gerber's modifications did not, as the Noteholders contend, negate approval of the LRA under section 328(a). Instead, these three modifications, found in the Retention Order's second and third "ORDERED" paragraphs, address sections 2.2(a), 2.2(b) and 2.6 of the LRA, none of which have anything to do with the contingency fee structure of the retention.

6. Under the circumstances of this case, the Court has little difficulty finding that the Retention Order was pre-approved under section 328(a). The following facts, also present and found significant in *Smart World Techs.*, 552 F.3d at 233, are further indicators that Judge Gerber pre-approved Beus Gilbert's contingency fee arrangement pursuant to section 328(a): (i) the Retention Application unequivocally requested that the Court

authorize the retention of Beus Gilberts pursuant to section 328(a); (ii) the first paragraph of Retention Order makes reference to section 328(a); and (iii) in granting the Retention Application, Judge Gerber overruled Renco's objection to the contingency fee structure.

7. Perhaps the most compelling evidence that Judge Gerber pre-approved Beus Gilbert's contingency fee arrangement as set out in the LRA and pursuant to section 328(a) of the Bankruptcy Code is the fact that, on May 12, 2006, Judge Gerber awarded Beus Gilbert's fees squarely based on the contingency fee structure contained in paragraph 2.1(a) of the LRA. [ECF No. 554] Beus Gilbert's interim fee application did not contain any attorney time records or supporting arguments as to why Beus Gilbert's fees should be allowed. Significantly, in that instance, no party-in-interest argued that the LRA (and the contingency fee terms and percentages) had not been pre-approved in the Retention Order under section 328(a) or otherwise opposed the interim fee application. It is only now that the amount of the fee is large that the Noteholders argue that there was no section 328(a) pre-approval and that Beus Gilbert's fees must be scrutinized and justified under a section 330(a)(1) "reasonable and necessary" analysis.

8. The Court also rejects the Noteholders' argument that the Trustee's sale of an interest in the Renco Litigation Judgment[4] renders the section 328(a) pre-approval of the contingency fee arrangement as improvident in light of developments not capable of being anticipated at the time the Retention Order was entered. There is no basis for disturbing Judge Gerber's pre-approval under section 328(a). To the extent the Noteholders are protesting that 11%

---

[4] After the jury verdict and while the appeal from the Renco Litigation Judgment was pending, on August 24, 2016, the Court granted the motion of the Trustee and, over the objections of Jefferies LLC, and the judgment debtors Renco and Mr. Rennert, entered an Order approving the sale of an interest in the Renco Litigation Judgment (the "Litigation Sale Order"). [ECF No. 745] The Litigation Sale Order was subsequently appealed to the District Court. The Honorable Denise Cote denied a motion to stay the Litigation Sale Order and Judge Nathan issued a decision dismissing the appeal from the Litigation Sale Order. *See In re Magnesium Corp. of Am.*, 571 B.R. 534 (S.D.N.Y. 2017).

of the Renco Litigation Judgment will become unavailable for distribution to creditors as a result of the Litigation Sale Order, the Court finds this argument to be nothing more than an improper collateral attack on the Litigation Sale Order, which was approved over the prior objections of Jefferies LLC and the judgment debtors Renco and Mr. Rennet, and subsequently affirmed by the District Court. *See Magnesium Corp. of Am.,* 571 B.R. 534.

9. The Court is unpersuaded by Noteholders' argument that the contingency fee is excessive, in retrospect, and reduces the cash available for distribution to creditors. "[T]he fact that contingency fees may appear excessive in retrospect is not a ground to reduce them because 'early success by counsel is always a possibility capable of being anticipated.'" *Smart World Techs.*, 552 F.3d at 235 (citing *In re Gilbertson*, No. 06-C-610, 2007 WL 433096, at *5 (E.D. Wisc. Feb. 4, 2007)). Moreover, a payment to the estate's professionals always reduces the funds available for creditor distributions. Although the requested contingency fee at issue may seem large, this must be viewed in light of the fact that the Renco Litigation Judgment itself is substantial, due in no small part to the work of Beus Gilbert, the only firm willing, at the time, to be retained to pursue the action on a contingency fee basis. And while the dollar amount of the fees sought is considerable, the amount sought in the Fee Application as a percentage of the Renco Litigation Judgment is precisely what was bargained for in the LRA and approved by Judge Gerber in the Retention Order. Having reaped the benefits of the contingency fee arrangement, including having all expenses borne by Beus Gilbert throughout the Renco Litigation and no fees paid during over a decade of work, and an enormous amount of cash brought into the estate for the benefit of creditors, it would be manifestly unfair to now allow the Noteholders to second guess the

contingency fee arrangement approved by Judge Gerber in 2003 before Beus Gilbert performed its services.

10. If a party-in-interest were able to challenge a legal professional's contingency fee at the end of a litigation (here, nearly 15 years after the Retention Order was entered) on the grounds that, having the benefit of hindsight, it was large or even arguably excessive, it would be practically impossible to attract legal professionals of Beus Gilbert's caliber and reputation to take on large, difficult, and complex cases such as the Renco Litigation on a contingency basis. There can be no doubt, and indeed the Noteholders and Renco acknowledge, that the services provided by Beus Gilbert were exemplary and that its efforts yielded an enormous economic benefit to the Debtors' estates.

Based on the foregoing, it is hereby **ORDERED** that:

Beus Gilbert's Fee Application is **GRANTED** as set forth herein and the fees and expenses are allowed to the extent set forth in the annexed Schedules.

Dated: New York, New York
       January 30, 2018

*s/ Mary Kay Vyskocil*
Honorable Mary Kay Vyskocil
United States Bankruptcy Judge

**CURRENT FEE PERIOD**

CASE NAME: MAGNESIUM CORPORATION OF AMERICA, et al.  Schedule A
CASE NO. 01 B 14312 (MKV)

| Applicant | Application Date and Doc. No. | Interim Fees Requested in Application | Fees Allowed | Fees to be Paid for Current Fee Period | Fees to be Paid for Prior Fee Period(s) | Total Fees to be Paid | Interim Expenses Requested | Interim Expenses to be Paid for Current Fee Period |
|---|---|---|---|---|---|---|---|---|
| Beus Gilbert PLLC | 12/13/17; ECF No. 934 | $88,026,158.86 | $88,026,158.86 | $88,026,158.86 | $0 | $88,026,158.86 | $0 | $0 |

DATE ON WHICH ORDER WAS SIGNED: January 30, 2018          Initials: <u>MKV</u>, USBJ

**FINAL FEE APPLICATION TOTALS**

CASE NAME: MAGNESIUM CORPORATION OF AMERICA, et al.  **Schedule B**
CASE NO. 01 B 14312 (MKV)

| Applicant | Total Fees Requested | Total Fees Paid | Total Expenses Requested | Total Expenses Paid |
|---|---|---|---|---|
| Beus Gilbert PLLC | $88,051,908.61 | $88,051,908.61 | $2,162,250.50 | $2,162,250.50 |

DATE ON WHICH ORDER WAS SIGNED: January 30, 2018             Initials: _MKV_, USBJ